Philip Green (SBN 092389)
Law Offices of Green & Green
1000 4th Street, Suite 595
San Rafael, CA 94901

(415) 457-8300
phil@iplegal.com

Attorney for Plaintiff Alphaville Design, Inc.



E-filing

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHAVILLE DESIGN, INC., | Case No.: CV 07 5569 MHP |
| Plaintiff, | COMPLAINT FOR DECLARATORY RELIEF FROM ALLEGED VIOLATIONS OF THE LANHAM ACT 15 U.S.C. Sec 1051 et seq. |
| vs. | |
| KNOLL, INC. | DEMAND FOR JURY TRIAL |
| Defendant | |

COMPLAINT FOR DECLARATORY RELIEF

Plaintiff alleges:

## Jurisdiction

1. This is a claim for a declaratory judgment of trademark and trade dress invalidity and non-infringement pursuant to 28 U.S.C. §§ 2201 and 2202. Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1338.

2. This claim presents a Federal Question under the Lanham Act, 15 U.S.C. §1051 et seq. and diversity of citizenship under 28 U.S.C. 1332.

3. Venue is proper in this Judicial district pursuant to 28 U.S.C. § 1391.

Dec. Relief Action Complaint - 1

## The Parties

4. Plaintiff, Alphaville Design, Inc, (hereinafter as Alphaville) is a corporation organized and existing under the laws of the State of Delaware and authorized to do business in the State of California with its principal place of business in this District at Fremont and Berkeley, California.

5. Defendant Knoll, Inc. ("Knoll") is on information and belief, a corporation organized and existing under the laws of the State of Delaware, maintaining a place of business at New York, New York and showrooms in San Francisco, California and which does substantial business in this District and in California.

## FACTS

6. An actual controversy has arisen and now exists between the parties relating to the extent, if any, that Knoll's alleged trademark and trade dress claims might create any obligation of Alphaville to stop manufacturing furniture of the middle 20th century genre, that has not been patented, that there is not copyright available for that is functional and that is not identified by the public with Knoll.

7. Knoll alleges as set forth below that it has the exclusive rights to make certain lines of designer furniture and to exclude Plaintiff from making similar appearing furniture. Alphaville makes all types of furniture including but not limited to leather and steel, tables with glass tops supported by metal cross members, couches with metal frames supporting leather cushions and asserts it has a right, absent patent protection, to make such items and to distribute and sell them worldwide.

8. Alphaville seeks a determination of the legal rights and duties of Plaintiff and Defendant for which Plaintiff desires a declaration of its right to continue to make, sell and distribute the modern styles of furniture that have been in existence for many decades under many manufacturers and brands.

9. Knoll alleges that it has trademarks that amount to trade dress.

10. Knoll's alleged marks are highly descriptive of products, consisting only of drawings of basic furniture designs and registered on the Principal Register.

11. Knoll's registrations of drawing of product plans without any specifications or claim to word mark are not valid to protect the product design, shape, methods of manufacture, look, feel or materials. Knoll alleges it has trade dress in basic furniture designs such as including, but not limited to, "a couch with a metal frame supporting a leather cushion," none of which can be protected, because among other reasons, the designs are not inherently distinctive and Defendant has no secondary meaning.

12. The Knoll registered marks are mere drawings of basic furniture. Knoll now claims these are trade dress and is using them to attempt to prevent all competition in furniture designs of the early and middle 20th Century modern era.

13. As a result of the acts set forth below, an actual justiciable controversy exists between Defendant and Plaintiff with respect to the validity of Defendant's trademark and trade dress claims and Plaintiff's alleged infringement of them.

## COUNT 1

## (For Declaratory Relief)

14. Plaintiff hereby incorporates Paragraphs 1 through 13 as though alleged in full herein.

15. A declaratory judgment is necessary in that Plaintiff contends and Defendants deny the following allegations made by Defendant:

   a. This dispute began when Knoll wrote a letter to Alphaville in August, 2007 that alleged that Knoll had registered in the U.S. Patent and Trademark Office certain trademarks as trade dress for Knoll's line of furniture called, "Barcelona." The letter alleged that Alphaville was making and distributing furniture similar to that made by Knoll, that the furniture manufactured by Alphaville infringes on the Defendant's registrations and demanded that Alphaville cease selling and making such furniture.

   b. The alleged trademarks are registered as mere drawings of designs for furniture. Knoll is attempting to assert that these designs, though not covered by any patents or copyrights, are trade dress.

   c. Alphaville asserts that there are no patents on the designs of Knoll's furniture and the allegations of Defendant accusing Plaintiff of violating the alleged trademarks do not amount to any design or trade dress that would constitute any violation of any of Knoll's alleged rights and not likely to cause confusion, deception or mistake.

   d. Alphaville asserts that the trademark registrations claimed to be owned by Knoll are invalid attempts to circumvent the Patent laws.

e. The "Barcelona" designs are generic and have been produced by many makers over decades so that the designs, consisting of a "tuck & roll" appearance leather, square glass tabletop and chrome or steel looking support members, are not protectable, have come into the public domain and that Knoll's trademarks were and are invalid and should be cancelled.

f. Knoll asserts it has a license from the designer, Mies van der Rohe, who designed an original set of furniture in the 1930s and on information and belief, the designer and Defendant failed to obtain any patent or copyright protection thereon.  Since then and long before any attempts to register the designs as trade dress, many manufacturers have used the same very basic furniture designs to produce a variety of sizes, shapes, colors and versions of the original decades-old designs.

g. Alphaville and the many other makers of these generic designs would experience grave prejudice if they were ordered to cease selling them.  The Alphaville furniture is not being advertised as original Knoll furniture; Alphaville is not using the name "Barcelona" as an advertising element to attract buyers, and does not tell its retailers how to advertise these designer furnishings.

h. Alphaville is a manufacturer and wholesaler only.  It makes, distributes and sells many dozens of types of furniture, made worldwide.

i. Knoll is a manufacturer and wholesaler of many lines of office and home furniture that advertises its lines as Knoll brand furniture.

Alphaville does not use the name Knoll in any of its catalogs or advertising, and is careful to distinguish its lines of furniture from any others.

16. On August 15, 2007, Defendant's attorney wrote a letter to Alphaville directly. The Cease & Desist Letter, in relevant part, demanded that:

   a. "we call upon your company to forthwith cease and desist from any act of trademark infringement and making misleading statements. Specifically, we demand that your company: 1) Immediately *stop* all use, promotion, display, *distribution, offering for sale, sale and/or manufacture* of any version of the Barcelona Chair, Barcelona Stool, Barcelona Couch, Barcelona Table and Flat Brno Chair; and 2) immediately stop making use of the BARCELONA mark 3) Immediately take steps to *recall* the infringing products; and 4) Forward to us documentation reflecting the manufacture and importation of the infringing items,…"

   b. Of great concern, Knoll also wrote to Alphaville that Knoll threatens to stop Alphaville's imports, "Knoll, … expect[s] your assurances, or that of your counsel, …, that the demands set forth … will be met. Please be advised that unless we receive such assurances, Knoll will take such steps as appropriate to protect its valuable trademark and trade dress rights. This Includes, without limitation, notifying U.S. Customs Enforcement of your unauthorized conduct and request that U.S. Customs seize all unauthorized products upon their entry into the country…"

17. Plaintiff's attorney sent a reply letter dated August 28, 2007. This letter cited several cases and *Gilson on Trademarks* for the proposition that "…the Lanham Act will only prevent the copying of nonfunctional product designs…that have acquired secondary meaning…for the manufacturer…"
18. Knoll has sent other such Cease & Desist letters to customers of Plaintiff Alphaville, and has even sued customers of Alphaville, which actions have caused actual losses and contractual issues, including, but not limited to, claims for indemnity that have caused business and other losses for Alphaville.
19. On information and belief, Knoll has had a license to produce a Barcelona line of goods since 1965, and that prior thereto many manufacturers were and still are making, selling and distribution 20th Century design furniture, similar to that of Alphaville and that the designs are functional.
20. Knoll waited forty years until 2004, to bother to register their alleged claims and to confront the entire modern furniture genre industry with them.
21. Manufacture, sales and distribution of 20th Century designer furniture by many others than Knoll has occurred with such frequency and volume that that Knoll does not have the secondary meaning in this furniture.
22. The history of the Knoll trademark registrations available from the US PTO online shows that declarations of Knoll personnel that enabled the registrations of the various trademarks mention the fact that there were many prior makers of such furniture.
23. Knoll versions of these items are advertised by Defendant as "Knoll Barcelona" while other makes of the designer furniture do not say "Knoll", "Barcelona" or use any other Knoll trademark.

Dec. Relief Action Complaint - 7

24. The name Barcelona is generic for this genre and line of furniture, based on the place, Barcelona Spain, where the design was first displayed.
25. On information and belief, this mark is also geographically misdescriptive.
26. Plaintiff's position has consistently been that its designer furniture lines do not infringe any valid claim of rights by Defendant. That this is a generic line as are many others such as Marcel Breuer, Mart Stam, Harry Bertoia, Cesca and other such basic designs of furniture.
27. Since August 28, 2007, attorneys for Plaintiff and Defendant have had conversations asserting Plaintiff's position that the claims to the trademarks have no right to stop any other maker of designer furniture from producing similar items to those depicted in the Knoll registrations.
28. Defendant has and continues to assert that the registrations themselves are valid but Plaintiff alleges that such trademarks and trade dress are not valid.
29. Plaintiff asserts that Knoll seeks to stop an entire market in such furniture by preventing any copying, normally the realm of Copyright but here there is no copyright and there cannot be on these functional items which were sold for so long in the past.
30. Plaintiff asserts that Knoll seeks to stop the industry by a design of manufacture, normally the realm of Patents, but there are no patents, in these highly generic and functional items.
31. By virtue of the exchange of telephone calls and letters outlined above, there is a substantial and continuing justiciable controversy between Plaintiff and Defendant as to Defendant's claims of a right to a virtual monopoly covering Plaintiff's designer furniture and as to the validity and scope of the

alleged trademarks, and as to Plaintiff's continuing right to make, inventory, ship, sell, and warranty its designer furniture lines.

32. Plaintiff has a clear and present apprehension of suit and interference with its business, customs seizures, importation and sale of its furniture by Defendant.

33. Alphaville contends that Knoll has no secondary meaning to its lines of furniture including, but not limited to, the Barcelona line, as 20th century designer lines have become generic by common use over many years by many different manufacturers. The items may be known by their common names such as the city where the genre originated, "Barcelona" and not under the Knoll name.

34. Alphaville contends that the Defendant cannot have perpetual protection of designs and that the claims for the trademarks-in-suit and trade dress are not infringed by Plaintiff by the making, using, or selling of any product. Plaintiff has never believed otherwise and manufacturing and selling 20th Century designer furniture is a large business that has been a very common practice among many furniture manufacturers, which is threatened by the threats and allegations of Defendant and its attorneys.

## COUNT 2

## (Invalidity of Trade Dress and Trademarks)

35. Plaintiff hereby incorporates Paragraphs 1 through 34 as though alleged fully herein.

36. On information and belief, Defendant is the owner of and applications in, United States Trademark Nos. 2,893,025; 2,894,977; 2,894,980, 2,894,979,

1    2,894,978 and 772,313. The trademark registrations for the designs were
2    issued in October, 2004 and are not incontestable.  The registration for the
3    mark Barcelona was issued in 1965, at about the time of Knoll's asserted
4    license from Mr. van der Rohe.  This latter mark is extremely weak as it is
5    descriptive of the origin of the mark in this line of goods and Knoll does not
6    have a secondary meaning in the mark.

37.  Knoll has no copyright in the designs of its alleged lines of proprietary furniture since among other things, the trademarks claimed as trade dress are for useful items, are functional and not legally entitled to copyright protection.

38.  Knoll has no patents, design or otherwise, of their alleged lines of furniture based on the declarations Knoll filed with PTO when it applied for its alleged trademarks.

39.  Knoll's use of such designs do not provide Knoll with any secondary meaning among the public. Defendant is advertising its Knoll name to the public as Knoll, while it has not acquired secondary meaning for 20th Century modern furniture as being identified with Knoll.   It has a limited knowledgeable market who know the designs by a name not Knoll, including, but not limited to, its designer, van der Rohe and the name "Barcelona," but not Knoll.

40.  Plaintiff contends that the claims for the trademarks-in-suit are invalid, unenforceable, extremely thin, if valid at all, and are void and should be cancelled for many reasons including, without limitation, the reasons that:

a. The right to make van der Rohe furniture was being used by many makers long before Knoll obtained a license from van der Rohe, since on information and belief, at least 1954.

b. On information and belief, the designs have never been the subject of any patent applied for or issued, including, but not limited to, any design patent.

c. The designs have never been registered as copyrights and cannot be under the doctrine of *Sears-Compco* and cases that follow them.

d. On information and belief, for decades Knoll has allowed many other makes of designer furniture to produce, manufacture, distribute and sell Barcelona look-alike furniture. Without any warnings, notices or other activity other than, in 2004, to register its alleged claims to the trade dress, yet it asserts it has had an alleged license for 40 years prior thereto.

e. Knoll has caused great prejudice to Alphaville and indeed to many other makers of designer furniture that incorporate leather cushions, metallic support members, square glass table tops, knobs and stitching by now alleging an exclusive use for decades before asserting its alleged rights.

f. The alleged designs of the trademarks in suit were made by others in worldwide before Knoll's alleged manufacture of van der Rohe designs that have been on exhibition since the 1930s and for the public to see and buy since on information and belief, since 1954.

g. The trademark and trade dress claims, and each of them, are not directed to patentable combinations or to design patents, but are

1      directed to mere aggregations of elements that were matters of
2      common knowledge since the invention of designer furniture and
3      cannot be the subject of any trademark or trade dress claims.
4    h. Versions of the alleged "original" designs have no copyright and none
5      is alleged. Knoll has no design or other patent and none was ever
6      sought or they would have since expired. Defendant has obtained
7      trademarks in an attempt to claim trade dress and attempt to use
8      trademark law as an indefinite patent claim mechanism to stifle
9      inventiveness in contravention of US Constitution Article I Sec. 8
10     Clause 8.
11   i. All alleged trade dress designs are merely functional furniture designs
12     and not valid trade dress despite their registration for the reasons,
13     among others, that follow:

15 41. The design of the alleged "Barcelona Chair" Reg. No. 2,893,025 for
16     example, has spring legs that act unlike the straight legs of other chairs to
17     make a springing action when a person is seated on it for comfort and less
18     rigidity. This design is primarily functional.
19   a. There is no secondary meaning for Knoll in this line and genre of
20     furniture.
21   b. On information and belief, the design of the cushions in square
22     patterns is designed to function with evenly spread stress points so
23     that the seat is both more comfortable and it will wear more evenly.

    c. On information and belief, the small stitched designs are also functional for manufacturing purposes to make the best use of the available leather.

    d. On information and belief, the legs made of stainless steel will tend to outlast most made of wood and wood cannot be used to make the springing action of metal. Stainless steel will not rust in the kitchen.

    e. These and other features make this a practical chair but not a pure "fanciful design" one. Even if this chair may be on display in museums, along with other functional items in museums including, but not limited to, airplanes and other marvels of modern invention, this does not make the design less functional or prevent copying the functional design.

    f. The Knoll website admits in its advertising of this chair: "the Barcelona chair features the *pure compositional structure* that now epitomizes Modern architecture.[1]" The structure is primarily functional.

42. The design of the alleged "Barcelona Table" No. 2,894,979 is primarily functional.

    a. With an "X" shaped horizontal under support member of an unremarkable simple square glass table top, this design is formed from basic geometric shapes and cannot be the subject of a design patent or trade secret.

---

[1] http://www.knoll.com/products/product.jsp?prod_id=577

b. On information and belief, this type of "X" support is used for strength, something its architect designer would know.

c. On information and belief, there are thousands of glass table tops on similar support members on the market not made or licensed by Knoll or its predecessors or licensors.

d. There is no secondary meaning for Knoll in this line and genre of furniture.

e. On information and belief, the legs made of stainless steel will tend to outlast most made of wood and stainless steel will not rust in the kitchen.

f. These and other features make this a practical table but not a purely "fanciful design" one. Even if this table may be on display in museums, this does not make the design less functional or prevent copying the functional design.

g. Defendant's alleged trademarks are an attempt to claim trade dress and attempt to use trademark law as an indefinite patent claim mechanism to stifle an entire industry. .

h. The Knoll website admits in its advertising of this table: "Mies van der Rohe's Barcelona coffee table displays the *pure compositional structure* that epitomizes modern architecture..[2]" The structure is primarily functional.

---

[2] http://www.knoll.com/products/product.jsp?prod_id=577

43. The design of the <u>Barcelona "Stool" Reg. No. 2,894,977</u> is plain and wholly functional.
    a. Being of a plain rectangular shape with cushions made of patches of leather or similar material.
    b. There are no specifications for the stool in the registration and it might be made of any materials, including, but not limited to, steel legs chrome plated, naugahide® or other synthetic leather, and any color.
    c. The registration for this item describes it as, "The mark consists of a configuration of a stool with a metal frame supporting a leather cushion," with any specs or materials, it might be impossible for any maker to avoid problems with Knoll if they make a stool with metal frame and leather cushion.
    d. The Knoll website admits in its advertising of this stool, "Created by Ludwig Mies van der Rohe for the German Pavilion at the 1929 Barcelona Exposition, the Barcelona chair features the pure compositional structure that now epitomizes Modern architecture." These stools are primarily simple and functional.
44. The <u>"Ottoman" Reg. No. 2,894,980</u> described on the Knoll registration is unremarkable for a claim of trade dress.
    a. The registration describes this item that it"… consists of a configuration of a couch with a metal frame supporting a leather cushion."
    b. There are no specifications, such as what metal the legs are, and no description of the couch. The supplied and registered description is

       plain and generic, and not enforceable as a trademark and as trade dress.

   c. The Knoll website admits of this item, "Designed in 1930 to accompany the Barcelona collection, the Barcelona couch features the hand-buffed frame and hand-pieced leatherwork of traditional craftsmanship." Which shows it is primarily a functional item.

45. The U-Shaped spring "Chair" Reg. No. 2,894,978 is an old standard design of a springing chair.

   a. It is described as "the mark consists of a configuration of a chair with a flat metal frame supporting a cushion." This could describe any chair by any maker for any cushion on a flat metal frame.

   b. On information and belief, this type of chair has been made for decades by many makers of outdoor furniture and in the mid 20th Century genre is a very common design.

   c. The "U" shaped spring the cushion is supported by is designed to give it rocking chair motion when sat on, and as such the spring is on information and belief, primarily functional.

   d. On Knolls website they shows seven different variations of such chairs with the spring shape, including, but not limited to, the unregistered 'Cesca' chair that is identical to the Knoll registration illustration. The Knoll website says this design is, "the industrial-age aesthetic of cantilevered tubular steel," and thus makes of it a generic design.

46. The name Barcelona claimed as Reg No 772,313 is weak as a mark as it is including, but not limited to, descriptive of the genre of furniture that has its

origins in the city of Barcelona . Names of cities as marks have been claimed by many cities and Plaintiff asserts that this mark is now weaker than it was due to this fact. The trademark application of Defendant swore that no other person or entity had the right to use this name but this is not the case.

47. The claims of the trade dress and trademark made by Knoll are for designs that are generic and functional, and a mere drawing of a functional design cannot become the subject of trade dress in violation of the provisions of Title 15, United States Code, and the rules and regulations of the United States Patent and Trademark Office and of Federal Patent or Trademark law.

   a. Other than a mere drawing of furniture the registration must describe the mark. This is only described as "a configuration for a couch", not what might have been claimed carefully stated elements of the designs, if they were claimed; but they were not.

   b. The alleged couch is also merely and even plainer, generic, and a purely functional type, with a round cushion at one end, also not described in the registration.

## PRAYER

Plaintiff requests:

1. Entry of Judgment providing:

   a. That Defendant is without a right or authority to threaten or to maintain suit against Plaintiff for alleged infringement of trademarks Nos. 2,893,025, 2,894,977, 2,894,980, 2,894,979, 2,894,978 and 772,313.

    b. That the trademarks and trade dress claims are invalid, unenforceable, and void in law;

    c. That the court cancel the trademark registrations of Knoll;

    d. That the alleged trademarks and trade dress are not infringed by Plaintiff because of the making, selling, or using of any of designer furniture by Plaintiff;

    e. That Defendant has engaged in acts of unfair competition against Plaintiff;

    f. For the costs, expenses, and reasonable attorney's fees incurred by Plaintiff.

2. Entry of a preliminary and permanent injunction enjoining Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it who receive actual notice of the injunction from:

    a. Initiating infringement litigation or threatening Plaintiff or any of its customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers, or users of Plaintiff's designer furniture, with infringement litigation, or charging any of them either verbally or in writing with infringement trademarks Nos. 2,893,025, 2,894,977, 2,894,980, 2,894,979, 2,894,978 and 772,313, because of the manufacture, use, sale, or offering for sale of designer furniture made by Plaintiff;

    b. That Knoll Cease engaging in acts of antitrust and other anticompetitive practices.

    c. That Knoll be ordered to lift and reverse any referrals to Customs Service and similar seizure processes if any made or filed against Plaintiff.

3. For damages for acts that have occurred due to Knoll's threats and allegations, and

4. All other relief that the Court may deem appropriate.

Dated: October 30, 2007

*[signature]*

Philip Green Attorney
for Plaintiff Alphaville Design, Inc.

Dec. Relief Action Complaint - 19