Philip Green (CalBN 92389)
Beverly R. Green (CalBN 92388)
Law Offices of Green & Green
1000 4th Street, Suite 595
San Rafael, CA 94901
(415) 457-8300
phil@iplegal.com

Attorneys for Plaintiff Alphaville Design, Inc and
Counterclaim-Defendants
Alphaville Design, Inc.
David Lee and Peggy Lee

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHAVILLE DESIGN, INC. a Delaware corporation , <br><br> Plaintiff, <br><br> vs. <br><br> KNOLL, INC. a Delaware corporation , <br><br> Defendant | Case No.:  07-cv-05569-MHP <br><br> **ANSWER OF ALPHAVILLE DESIGN, INC., DAVID LEE, and PEGGY LEE** <br><br> **TO THE COUNTERCLAIMS OF KNOLL, INC.** <br><br> Judge: Honorable Marilyn H. Patel |
| KNOLL, INC. a Delaware corporation, <br><br> Counterclaim-Plaintiff <br><br> vs. <br><br> ALPHAVILLE DESIGN, INC., DAVID LEE and PEGGY LEE, <br> Counterclaim-Defendants. <br><br> DANRICK COMMERCE GROUP, L.L.C., aka DANNY LOUIE and DOES A-Z, Retailers for Alphaville Design, Inc., <br> (Incorrectly sued as) Third Party Defendant. | Complaint Filed: November 1, 2007 <br><br> Counter Claims filed January 15, 2008 <br><br> Trial Date: Not set |

COME NOW Counterclaim-Defendants ALPHAVILLE DESIGN, INC., DAVID LEE and

PEGGY LEE only (herein as Counterclaim-Defendant(s)), by their attorneys, in Answer to the

Counterclaims of KNOLL, Inc., allege, admit, deny, defend and plead as follows:

50. Responding to Paragraph 50 of the Counterclaims, this being the first paragraph of
counterclaims, Counterclaim-Defendants admit that, on information and belief, Knoll
is a corporation organized under Delaware law. As to the allegations contained in the
remaining parts of paragraph 50 of the Counterclaims, Counterclaim-Defendants
allege that these are mere legal conclusions and statements of law and, based thereon,
lack information or belief as to these allegations.

51. As to the allegations contained in paragraph 51 of the Counterclaims, Counterclaim-
Defendants allege that these are mere legal conclusions and statements of law and,
based thereon, lack information or belief as to these allegations.

52. Counterclaim-Defendants admit that, on information and belief, Counterclaim-
Counterclaim Plaintiff  Knoll, Inc. ("Knoll") is a corporation organized and existing
under the laws of the State of Delaware and denies the remaining allegations of
Paragraph 52 of the Counterclaims.

53. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as
to the allegations of Paragraph 53 of the Counterclaims and accordingly deny the
same.

54. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as
to the allegations of Paragraph 54 of the Counterclaims and accordingly deny the
same.

55. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as
to the allegations of Paragraph 55 of the Counterclaims and accordingly deny the
same.

56. Counterclaim-Defendants admit that defendant David Lee ("D. Lee") is an individual and deny the remaining allegations of Paragraph 56 of the Counterclaims.

57. Counterclaim-Defendants admit that Counterclaim-Defendant Peggy Lee ("P. Lee") is an individual and deny the remaining allegations of Paragraph 57 of the Counterclaims.

58. Counterclaim-Defendants admit that Alphaville Design, Inc. ("Alphaville") is a business organized and existing under the laws of the State of Delaware, maintaining a place of business at 41460 Christy Street, Fremont, California 94538 and that, David Lee is the president of Alphaville and Peggy Lee is the vice-president of Alphaville, and deny the remaining allegations of Paragraph 58 of the Counterclaims.

59. Counterclaim-Defendant Alphaville admits furniture is made in China and Italy and denies the remaining allegations of Paragraph 59 of the Counterclaims.

60. Counterclaim-Defendant Alphaville admits that Alphaville Design, Inc. uses a website at the Internet Address http://www.alphavilledesign.com, to advertise its business, that Alphaville's website states that it services hundreds of retailers and works "with designers on major hotel, office and residential projects/installations." Counterclaim-Defendants deny that a true and accurate printout of the homepage from Alphaville's website is attached as Exhibit 3 and deny the remaining allegations of Paragraph 60 of the Counterclaims.

61. Counterclaim-Defendant Alphaville admits that it maintained a website at the web address http://alphavilledesign.stores.yahoo.net/ and denies the remaining allegations of Paragraph 61 of the Counterclaims.

62. Counterclaim-Defendant Alphaville admits that it attended one trade show in New York, and alleges that none of Alphaville products at that show represented any of the furniture Knoll alleges in the Counterclaims as having rights to, that it has leased

space in Las Vegas, Nevada, and denies the remaining allegations of Paragraph 62 of the Counterclaims.

63. Counterclaim-Defendant Alphaville admits that Alphaville sells its furniture products throughout many of the United States, alleges that most of such products have nothing to do with the allegations of Counterclaim-Plaintiff and denies the remaining allegations of Paragraph 63 of the Counterclaims.

64.  Counterclaim-Defendant Alphaville Design, Inc. admits that it transacts business within this District. David Lee and Peggy Lee deny that they transact any individual business in this District relevant to the counterclaims, and Counterclaim-Defendants Alphaville Design, Inc., David Lee and Peggy Lee deny all of the remaining allegations contained in paragraph 64 of the Counterclaims.

65. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 65 of the Counterclaims and accordingly deny the same.

66. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 66 of the Counterclaims and accordingly deny the same.

67. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 67 of the Counterclaims and accordingly deny the same.

68. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 68 of the Counterclaims and accordingly deny the same.

69. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 69 of the Counterclaims and accordingly deny the same.

70. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 70 of the Counterclaims and accordingly deny the same.

71. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 71 of the Counterclaims and accordingly deny the same.

72. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 72 of the Counterclaims and accordingly deny the same.

73. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 73 of the Counterclaims and accordingly deny the same.

74. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 74 of the Counterclaims and accordingly deny the same.

75. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 75 of the Counterclaims and accordingly deny the same.

76. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 76 of the Counterclaims and accordingly deny the same.

77. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 77 of the Counterclaims and accordingly deny the same.

78. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 78 of the Counterclaims and accordingly deny the same.

79. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 79 of the Counterclaims and accordingly deny the same.

80. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 80 of the Counterclaims and accordingly deny the same.

81. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 81 of the Counterclaims and accordingly deny the same.

82. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 82 of the Counterclaims and accordingly deny the same.

83. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 83 of the Counterclaims and accordingly deny the same.

84. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 84 of the Counterclaims and accordingly deny the same.

85. Counterclaim-Defendants admit that Knoll maintains an internet website at http://www.knoll.com, which contains information about Knoll's furniture products, and deny the remaining allegations of Paragraph 85 of the Counterclaims.

86. Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 86 of the Counterclaims.

87. Counterclaim-Defendants admit that Knoll's registration for trademark No. 2,893,025, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid and should be cancelled, and deny the remaining allegations of Paragraph 87 of the Counterclaims.

88. Counterclaim-Defendants admit that Knoll's registration for trademark registration No. 2,894,977, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid  and should be cancelled, and deny the remaining allegations of Paragraph 88 of the Counterclaims.

89. Counterclaim-Defendants admit that Knoll's registration for trademark registration No. 2,894,980, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid and should be cancelled, and deny the remaining allegations of Paragraph 89 of the Counterclaims.

90. Counterclaim-Defendants admit that Knoll's registration for trademark registration No. 2,894,979, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid and should be cancelled, and deny the remaining allegations of Paragraph 90 of the Counterclaims.

91. Counterclaim-Defendants admit that Knoll's registration for trademark registration No. 2,894,978, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid and that it should be cancelled, and deny the remaining allegations of Paragraph 91 of the Counterclaims.

92. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 92 of the Counterclaims and accordingly deny the same.

93. Counterclaim-Defendants admit that Knoll is the owner of record of the registration for trademark registration No. 772,313, appears on the Principal Register of the Patent and Trademark Office, and allege that it is invalid and that it should be cancelled, and deny the remaining allegations of Paragraph 93 of the Counterclaims.

94. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 94 of the Counterclaims and accordingly deny the same.

95. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 95 of the Counterclaims and accordingly deny the same.

96. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 96 of the Counterclaims and accordingly deny the same.

97. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 97 of the Counterclaims and accordingly deny the same.

98. Counterclaim-Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 98 of the Counterclaims and accordingly deny the same.

99. Counterclaim-Defendants admit that Alphaville manufactures, imports, and/or distributes furniture products  and deny the remaining allegations of Paragraph 99 of the Counterclaims.

100.    Counterclaim-Defendant Alphaville admits that it is a supplier to Modern
Collections and other retailers across the country of furniture products and deny the
remaining allegations of Paragraph 100 of the Counterclaims.

101.    Counterclaim-Defendant Alphaville admits the allegations of Paragraph 101 of
the Counterclaims.

102.    Counterclaim-Defendants deny all of the allegations contained in paragraph 102
of the Counterclaims.

103.    Counterclaim-Defendants repeat their responses to paragraphs 50-102 as if set
forth in full herein.

104.    Counterclaim-Defendants lack knowledge or information sufficient to form a
belief as to the allegations of Paragraph 104 of the Counterclaims and accordingly
deny the same.

105.    Counterclaim-Defendants and each of them lack knowledge or information
sufficient to form a belief as to the allegations of Paragraph 105 of the Counterclaims
and accordingly deny the same.

106.    Counterclaim-Defendants and each of them deny all of the allegations contained
in paragraph 106 of the Counterclaims.

107.    Counterclaim-Defendants and each of them deny all of the allegations contained
in paragraph 107 of the Counterclaims.

108.    Counterclaim-Defendants and each of them deny all of the allegations contained
in paragraph 108 of the Counterclaims.

109.    Counterclaim-Defendants and each of them deny all of the allegations contained
in paragraph 109 of the Counterclaims.

110.    Counterclaim-Defendants and each of them deny all of the allegations contained
in paragraph 110 of the Counterclaims.

111.    Counterclaim-Defendants repeat their responses to paragraphs 50-110 as if set forth in full herein.

112.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 112 of the Counterclaims.

113.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 113 of the Counterclaims.

114.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 114 of the Counterclaims.

115.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 115 of the Counterclaims.

116.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 116 of the Counterclaims.

117.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 117 of the Counterclaims.

118.    Counterclaim-Defendants repeat their responses to paragraphs 50-117 as if set forth in full herein.

119.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 119 of the Counterclaims.

120.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 120 of the Counterclaims.

121.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 121 of the Counterclaims.

122.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 122 of the Counterclaims.

123.    Counterclaim-Defendants repeat their responses to paragraphs 50-122 as if set forth in full herein.

124.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 124 of the Counterclaims.

125.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 125 of the Counterclaims.

126.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 126 of the Counterclaims.

127.    Counterclaim-Defendants repeat their responses to paragraphs 50-126 as if set forth in full herein.

128.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 128 of the Counterclaims.

129.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 129 of the Counterclaims.

130.    Counterclaim-Defendants and each of them deny all of the allegations contained in paragraph 130 of the Counterclaims.

## **AFFIRMATIVE DEFENSES**

### FIRST DEFENSE

*Failure to State Claims*

1.  The Counterclaims fail to state claims against any of these answering Counterclaim-Defendants upon which relief can be granted.

### SECOND DEFENSE

*Lack of Jurisdiction Over the Person,  F.R.C.P. Rules 8, 12(b)*

2.  Counterclaim-Defendant Alphaville Design, Inc. is an active corporation organized under the laws of Delaware and headquartered in Fremont, California.

3. Counterclaim-Defendants David Lee and Peggy Lee are natural persons who did nothing regarding the allegations of Counterclaim-Plaintiff, and

4. Counterclaim-Defendants David Lee and Peggy Lee have done no acts that constitute any violation of Counterclaim Plaintiff's alleged trade mark or trade dress rights.

5. Counterclaim-Defendant Alphaville Design, Inc. acted in its own name at all material times alleged herein and as the corporation that it is.

6. There is no unity of interest or ownership between the corporation Alphaville Design, Inc. and the named individual Counterclaim-Counterclaim-Defendants David Lee and Peggy Lee.

7. The separate existence of Alphaville Design, Inc. and David Lee and Peggy Lee is such that no inequitable result will follow from Alphaville Design, Inc. being the only Counterclaim-Defendant.

THIRD DEFENSE

*No Attorney Fees*

8. The Counterclaims do not state any facts upon which a claim of relief or any claims for attorney fees may be maintained against Counterclaim-Defendants and each of them.

FOURTH DEFENSE

9. The injuries complained of, if any, were contributed to by the Counterclaim Plaintiff's own negligence.

FIFTH DEFENSE

*Laches, Acquiescence, Design in Public Domain*

10. Counterclaim Plaintiff is not entitled to maintain this suit or to assert infringement by reason of laches and acquiescence.

11. Counterclaim-Plaintiff's alleged design marks have been, on information and belief, in open, continuous, and extensive use by Counterclaim-Defendants and many other furniture sellers who have relied upon Counterclaim Plaintiff's acquiescence and delay for over 40 years of continuous manufacture of mid 20th Century genre furniture before and after Knoll applied for a trademark under the Lanham Act.

12. Counterclaim Plaintiff's failure to enforce its alleged rights in allowing the alleged design trademark / trade dress to be openly used by the public without enforcement for decades, allowed those relying on that inaction to make agreements with suppliers, invest large sums and establish business and good will, in reliance thereon.

13. Counterclaim-Plaintiff allowed its alleged trade dress designs to fall into, lapse and continue to be a part of, the Public Domain in mid 20th Century genre furniture designs for over 40 years.

14.  Over forty years of *non exclusive* use resulted in an abandonment of any trade dress rights that Counterclaim-Plaintiff might have had in any original designs.

15. On information and belief, Counterclaim-Defendants allege that in or about 1964, Mies van der Rohe himself believed that his designs were be unprotectible, according to the New York Museum of Modern Art.

16. In reliance of the open and notorious use of the designs by many entities, Counterclaim-Defendant Alphaville Design, Inc. spent sums on and would lose, its money invested in, its business, and would lose goodwill and other potential damages if Knoll's anti competitive acts were to continue.

SIXTH DEFENSE

*Estoppel*

17. Counterclaim Plaintiff is estopped to allege that any acts of the Counterclaim-Defendants constitute a violation of any rights of Counterclaim-Plaintiff.

18. Counterclaim Plaintiff represented to the Patent and Trademark Office in its trademark applications that there were no patents that cover alleged designs in the goods at issue in order to obtain its trademark registrations.  On information and belief, however, Counterclaim-Defendants allege that Mies van der Rohe and/or Knoll had at least several German patent registrations in the 1950s on the alleged Knoll trademarks/ trade dress.

19. Counterclaim-Plaintiff does not own any copyrights in the designs of the alleged design marks and furniture sought to be protected through this action, and there can be no valid copyrights thereon.

20. Counterclaim-Plaintiff  does not have any license agreement with Mr. van der Rohe that grants to Knoll the rights it alleges in its Counterclaims.

SEVENTH DEFENSE

*Invalidity of Trademarks and Trade Dress; Subject to Cancellation*

21. Further answering the Counterclaims herein, Counterclaim-Defendants aver that the alleged Trademarks are invalid, cancelable, and void and should be cancelled by the Court.

22. The claims of trade dress and trademark made by Knoll are for designs that are generic and functional and lack secondary meaning. A mere drawing of a functional design cannot become the subject of trade dress in violation of the Lanham Act, the rules and regulations of the United States Patent and Trademark Office and of Federal patent and copyright statutes.

23. The alleged Principal Register registrations of Knoll in 2004 have not become incontestable.  Counterclaim- Defendants assert all legal and equitable defenses and defects therefore, including those set forth in Lanham Act Section 33(b), which might have been asserted if such mark had not been registered.

24. The Alleged Principal Register registration of Knoll in Reg. No. 772,313 is cancelable by reason of *inter alia*, misrepresentation and / or fraud.

25. The designs and each of them are in the public domain and have been for decades without policing or any action by Knoll, Inc.  On information and belief,  Knoll's applications for the 2004 marks allege that there was a license from Mies van der Rohe to Knoll that included the designs.  On information and belief, Counterclaim-Defendants allege that to the extent that these licenses existed, there is strong evidence that Mr. van der Rohe only licensed his name and/or his signature to Knoll to use it on certain furniture, and that Knoll paid Mr. van der Rohe a minimal flat fee for this use.  On information and belief,  Knoll never had a license for use of the van der Rohe designs because he did not want to give anyone an exclusive on them and believed they were unprotectible at that time.  On information and belief,  Mr. van der Rohe had German patents on some of the designs that had expired, proving the functional nature of the alleged trade dress or trademarks.

26. Knoll has no secondary meaning in any of the alleged marks.

27. The alleged marks and trade dress are cancelable for, *inter alia*, the following reasons:

   a. The design of the alleged <u>"DESIGN" (chair)</u> Reg. No. 2,893,025 has spring legs that are primarily functional, to make a springing action when a person is seated on it, designed for comfort.  On information and belief, the design of the cushions in square patterns is designed to function with evenly spread stress points so that the seat is both more comfortable and will wear more evenly. On information and belief, the small generic button cushion and back structure is also functional for manufacturing purposes to make optimal use of the available leather.

   b. Even if this chair may be on display in museums, along with other functional items in museums including, but not limited to, airplanes and other marvels of

modern invention, this does not make the design non-functional or turn the functional design into art.  This design is primarily functional.

c.   The design is in the Public Domain.

d.   There is no secondary meaning for Knoll in this line and genre of Mid 20th Century designer furniture.

e.   Under "Description of Mark" contained in the alleged trademark registration for this design, the mark consists of a "*configuration of a chair with a metal frame and leather cushions."* This describes and is evidence that the design is simple, functional and generic.

f.   The Knoll website states in its advertising of this chair: "the Barcelona chair features the *pure compositional structure* that now epitomizes Modern *architecture*," see http://www.knoll.com/products/product.jsp?prod_id=577 . The structure is primarily functional.

28. The design of the alleged "DESIGN" (table) No. 2,894,979 is primarily functional.

a.   With an "X" shaped horizontal under support member of an unremarkable simple square glass table top, this design is formed from basic geometric structural, functional shapes, it is generic, and is not the subject of a design patent and cannot be trade dress.

b.   On information and belief, this type of "X" support is used for strength, something its architect designer would know, making the design primarily functional.

c.    On information and belief, there are thousands of glass table tops on similar metal support members on the market not made or licensed by Knoll or its predecessors or licensors and this is evidence and part of the functional nature of the design.

d. The design is in the Public Domain.

e. These and other features make this a practical and functional design but not a purely fanciful one. Even if this table may be on display in museums, this does not make the design less functional or turn the functional design into art.

f. Under "Description of Mark" The mark consists of a "*configuration of a table with a metal base and a glass top,*" making the design generic.

g. There is no secondary meaning for Knoll in this design and, on information and belief, many makers of 20th Century modern furniture have reproduced this design for over 40 years.

h. Knoll's alleged trademarks are an attempt to claim trade dress and substitute and use trademark law as an indefinite patent claim mechanism to stifle an entire industry and to extend or claim a monopoly in such public domain designs.

i. The Knoll website states in its advertising of this table: "Mies van der Rohe's Barcelona coffee table displays the *pure compositional structure* that epitomizes modern *architecture*." See http://www.knoll.com/products/product.jsp?prod_id=577 . The structure is primarily functional and generic.

29. The design of the "DESIGN" (stool) Reg. No. 2,894,977 is plain and primarily functional.

a. Being of a plain rectangular shape with cushions made of patches of leather or similar material, the design is primarily functional and generic.

b. There are no specifications for the stool in the registration and it might be made of any materials, including, but not limited to, steel legs chrome plated, synthetic leather, and any color.

c. The registration for this item describes it as, "The mark consists of a configuration of *a stool with a metal frame supporting a leather cushion*," without any

specifications so that on information and belief,  it is impossible for any maker of stools to avoid issues with Knoll if they make a stool with metal frame and leather cushion. The alleged mark and design are functional and generic.

d. These and other features make this a practical and functional design but not a purely fanciful one. Even if this stool may be on display in museums, this does not make the design less functional or turn the functional design into art.

e. The design is in the Public Domain.

f. The Knoll website states in its advertising of this stool, "Created by Ludwig Mies van der Rohe for the German Pavilion at the 1929 Barcelona Exposition, the Barcelona chair features the pure compositional structure that now epitomizes Modern architecture." These designs are primarily simple and functional.

30. The "DESIGN" (ottoman) Reg. No. 2,894,980  described on the Knoll registration is unremarkable and primarily functional and cannot form a claim of trade dress.

a. The registration describes this item that it "*consists of a configuration of a couch with a metal frame supporting a leather cushion.*" This describes many designs of ottoman style couches and sofas.

b. These and other features make this a practical and functional design but not a purely fanciful one. Even if this ottoman or sofa may be on display in museums, this does not make the design less functional or turn the functional design into art.

c. There are no specifications, such as what metal the legs are, and no description of the couch. The description supplied by Knoll is plain and generic, and not enforceable as a trademark or trade dress.

d. The Knoll website states of this item, "Designed in 1930 to accompany the Barcelona collection, the Barcelona couch features the hand-buffed frame and

hand-pieced leatherwork of traditional craftsmanship." Which shows it is primarily a functional item and is generic.

    e.   The design is in the Public Domain.

31.  The C-Shaped spring <u>"Design" (Chair) Reg. No. 2,894,978</u> is an old standard design of a springing chair, has no secondary meaning, and is primarily functional.

    a.   It is described as "the mark consists of a configuration of a *chair with a flat metal frame supporting a cushion.*" This could describe any chair by any maker for any cushion supported by a flat metal frame.

    b.   These and other features make this a practical and functional design but not a purely fanciful one. Even if this chair may be on display in museums, this does not make the design less functional or turn the functional design into art.

    c.   On information and belief, this type of chair has been made for decades by many makers of outdoor furniture and in the mid 20th Century genre it is a very common design.

    d.   The "C" shaped spring and cushion are functional, supported by a spring it is designed to give it rocking chair motion when sat on, and as such the spring is primarily functional and generic.

    e.   On Knoll's website they show seven different variations of such chairs with the spring shape, including, but not limited to, the unregistered 'Cesca' chair that is identical to the Knoll registration design illustration. The Knoll website says this design is, "the industrial-age aesthetic of cantilevered tubular steel," and thus makes of it a generic and primarily functional design.

    f.   The design is in the Public Domain.

32. <u>The name "Barcelona" claimed as Reg No 772,313</u> is weak as a mark as it is inter alia, descriptive of a genre of furniture that has its origins in the city of Barcelona, Spain since approximately, on information and belief, the 1920s.

    a.  Names of cities as marks have been claimed by many cities. This mark is weak. Counterclaim-Plaintiff Knoll swore in its applications under penalty of perjury that no other person or entity had the right to use this name, but this is not true.

    b.  On information and belief, use of the name Barcelona is primarily geographically descriptive under 15 U.S.C. §1052(e)(2), or misdescriptive for the alleged furniture designs.

EIGHTH DEFENSE

*Unclean Hands and Trademark Misuse*

33. The acts of Counterclaim Plaintiff are either illegal, inequitable, or unfair. The enforcement of the alleged marks under such facts is trademark misuse in violation of the antitrust laws of the United States causing damage to Counterclaim-Defendants and each of them, and are causing damage to business, reputation, goodwill and other such damage in an amount according to proof.

NINTH DEFENSE

*Fair Use; Unprotectible Designs*

34. The alleged uses by Counterclaim-Defendants of names, terms, designs or devices charged to be in violation of the alleged rights of Counterclaim-Plaintiff are uses, other than as a mark, of a term or device which is descriptive of and to describe the goods of Counterclaim-Defendant, used fairly and in good faith to describe their geographical or design origin.

35. The alleged mark designs were on information and belief, in common use since in or about 1929 by many manufacturers and are in the public domain.

36. On information and belief, Knoll allowed others to make reproductions without complaint for decades.

37. Fair use, including a nominative or descriptive fair use in connection with advertising or promotion that permits consumers to compare goods or services.

TENTH DEFENSE

*Fraud and Lack of Examination in Procurement of Trademark Registrations*

38. Counterclaim-Defendants allege that the Knoll's registrations were procured by fraud and by hiding information from the Patent and Trademark Office during the registration process.

39. In the examination of Counterclaim-Plaintiff's alleged design registrations, the Patent and Trademark Office relied upon the representations and claims made by applicant Knoll, before it.  These alleged trademarks were procured without sufficient evidence, in reliance upon Knoll's submissions for examination.

40. The alleged incontestable right to use the alleged mark Barcelona was obtained fraudulently. Counterclaim Plaintiff fraudulently procured registration of the allegedly incontestable mark "Barcelona" and for this reason among others, Counterclaim Defendants contend that the alleged registration is invalid.

41. Knoll alleged, in order to obtain such trademarks, during its trademark registration process that it has a license dated in or about 1965 from Mies van der Rohe for the designs.

    a.   On information and belief, in November, 1965 Mr. van der Rohe entered into a contract with Knoll which covered only the right to use Mies van der Rohe's name. None of his designs were covered.

b.   On further information and belief, Knoll only paid Mies van der Rohe a flat-fee in payments for a ten year period to Knoll's economic advantage based on only having the name license.

c.   On information and belief,  Knoll provided incomplete and misleading information to the PTO in its prosecution of the trademarks and trade dress at issue and withheld information that if it had been disclosed would, on information and belief,  have lead to a refusal to register the designs.

d.   Knoll declared falsely that by an agreement dated November 1, 1965, Mies van der Rohe assigned all rights, title and interest in and to the designs of the Barcelona furniture to Knoll Associates, Inc.

ELEVENTH DEFENSE

*No Likelihood of Confusion*

42. There no likelihood of confusion created by any acts of Counterclaim-Defendants because, *inter alia*, :

a.   The alleged marks themselves are not trademarks and are not confusingly similar,

b.   Counterclaim Plaintiff's alleged marks are not inherently distinctive, and

c.   Knoll's alleged marks have not attained secondary meaning as to Knoll, in that purchasers do not associate the marks with Knoll alone.

d.   All the alleged Knoll marks require proof of secondary meaning,

e.   All the alleged Knoll marks are descriptive of the goods they seek to identify

f.   All the alleged Knoll non-word (design) marks are common and usual and primarily functional shapes or motifs.

TWELFTH DEFENSE

*Marks Not Famous*

43.  Counterclaim-Defendants allege that the alleged marks and each of them are not

famous and are not subject to tarnishment, nor to blurring or any form of dilution.

<u>PRAYER</u>

Wherefore, Counterclaim-Defendants Alphaville Design, Inc. and David Lee and Peggy Lee

pray that:

1.  The Counterclaim Plaintiff take nothing by reason of the Counterclaims and that the

    Counterclaim-Defendants be awarded their costs of suit, attorney fees, and such other and

    further relief as this Court deems just and proper.

2.  David Lee and Peggy Lee should be dismissed with prejudice as there is no valid claim

    over them as individual Counterclaim-Defendants.

3.  That this Court declare the trademark registrations of Knoll, Inc. are invalid, void and of

    no force and effect such that they are denied to protect any designs of furniture.

4.  That this Court declares the trademark registrations of Knoll should be cancelled.

5.  That Counterclaim-Defendants herein be awarded reasonable attorney fees and costs and

6.  Such other and further relief as this Court deems just under the circumstances.


Dated:  February 22, 2008

*Philip R. Green*

_____
Philip Green, attorney for Alphaville Design, Inc.,
David Lee and Peggy Lee.