MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, PC
KARINEH KHACHATOURIAN (SBN 202634)
Email: kkhachatourian@mintz.com
BRYAN J. SINCLAIR (SBN 205885)
Email: bsinclair@mintz.com
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 251-7700
Facsimile: (650) 251-7739

GOTTLIEB RACKMAN & REISMAN, P.C.
GEORGE GOTTLIEB (admitted *pro hac vice*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (admitted *pro hac vice*)
Email: mmisthal@grr.com
270 Madison Avenue
New York, NY 10016-0601
Telephone: (212) 684-3900
Facsimile: (212) 684-3999

Attorneys for Defendant and Counterclaimant,
KNOLL, INC.

LAW OFFICES OF GREEN & GREEN
PHILIP GREEN (SBN 092389)
Email: phil@iplegal.com
BEVERLY R. GREEN (SBN 92388)
Email: Bev@musiclawyer.com
1000 4th Street, Suite 595
San Rafael, CA 94901
Telephone: (415) 457-8300

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
NEIL A. SMITH, Cal. Bar No. 63777
nsmith@sheppardmullin.com
P. CRAIG CARDON, Cal. Bar No. 168646
ccardon@sheppardmullin.com
NICOLE M. LEE, Cal. Bar No. 222344
nlee@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947

Attorneys for Plaintiff and Counter-Defendant,
Alphaville Designs, Inc. and
Attorneys for Counter-Defendants, David Lee
and Peggy Lee

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHAVILLE DESIGN, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>KNOLL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>_____<br>AND RELATED COUNTERCLAIMS. | Case No. 07-CV-05569 MHP<br><br>**SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) STATEMENT**<br><br>Judge:    Honorable Marilyn H. Patel<br><br>Complaint Filed: November 1, 2007<br>Trial Date:  None set<br><br>Conference Date: July 21, 2008<br>Conference Time: 3:00 p.m. |

Pursuant to the Court's March 20, 2008 Minute Order, Plaintiff and Counter-Defendant Alphaville Design, Inc. ("Alphaville"), Defendant and Counterclaimant Knoll, Inc. ("Knoll") and Counter-Defendants David Lee and Peggy Lee ("the Lees") jointly submit this Case Management Statement.  Unless otherwise noted, the matters set forth herein were discussed and agreed upon by the parties during their initial Rule 26(f) conference or during subsequent meet and confer discussions.  Where one party sets forth a separate statement concerning one of the required topics or indicates a disagreement with the other party's position, the signing of this statement does not constitute a concession or agreement with such a statement or can be construed as an admission.

1.    **Jurisdiction and Venue**

The parties agree that the Court has subject matter jurisdiction over Alphaville's claims and Knoll's counterclaims under 28 U.S.C. §§ 1331, 1338, 1367 (a), in that it is a civil action presenting a Federal question arising under the Lanham Act, 15 U.S.C. § 1051 et seq.  No issues currently exist with respect to personal jurisdiction and venue.  All parties believe that venue in the Northern District of California is proper.  Knoll, Alphaville, and the Lees have appeared and have been served with the Complaint and Counterclaim.

2.    **Facts**

*Knoll's Statement*

Knoll, Inc. ("Knoll") is a leading designer and manufacturer of branded furniture and has been recognized as such since its founding in 1938.  Knoll products are exhibited in major art museums worldwide.

Ludwig Mies van der Rohe ("Mies van der Rohe") was a world-famous architect and one of the most influential architects of the twentieth century.  Mies van der Rohe was the director of the Bauhaus school of design from 1930 to 1933, and moved from Germany to the United States in 1937.

In 1928, Mies van der Rohe was asked to design the German pavilion for the 1929 Barcelona International Exhibition.  In addition to designing the German Pavilion, Mies van der Rohe designed the furniture featured inside the pavilion, including a chair and an ottoman.  These items have come to be known as the Barcelona Chair and the Barcelona Stool, respectively.

-1-

1    In 1930, Mies van der Rohe designed a couch or daybed that later gained fame when he

2  featured it in the Farnsworth House, which he designed in 1948 for Dr. Edith Farnsworth.  This

3  couch came to be known as the Barcelona Couch.

4    In 1928, Mies van der Rohe was commissioned to design a home for Grete and Fritz

5  Tugendhat in Brno, Czech Republic.  Mies van der Rohe also designed much of the furniture used

6  to furnish the Tugendhat House, including a table and a chair.  The table came to be known as the

7  Barcelona Table, and the chair came to be known as the Flat Brno Chair.

8    By an agreement dating from November 1, 1965, Mies van der Rohe assigned all rights,

9  title and interest in and to the design of the Barcelona Chair, the Barcelona Stool, the Barcelona

10  Couch, the Barcelona Table and the Flat Brno Chair (hereinafter collectively referred to as the

11  "Barcelona Collection") to predecessors of Knoll as to the rights herein involved.

12    Knoll and its predecessors in interest as to the rights herein involved have been

13  continuously manufacturing, displaying, promoting and selling the Barcelona Collection since at

14  least as early as January 1, 1954.

15    The various furniture items in the Barcelona Collection have been the subjects of third

16  party commentary in numerous books, newspaper articles and magazine articles, virtually all of

17  which identify Knoll or its predecessors in interest as to the rights herein involved as the source of

18  these items.  Moreover, the various furniture items in the Barcelona Collection are in the

19  collections of numerous museums featuring design around the world, and have been featured in a

20  number of museum exhibitions.  The Barcelona Collection is in the Museum of Modern Art's

21  design collection.  Some of these pieces have been there since the 1950s.  The Museum of Modern

22  Art, as well as other museums, always identify Mies van der Rohe as the designer of the Barcelona

23  Collection, and Knoll as the source and manufacturer of these items.

24    Knoll markets and sells the Barcelona Collection throughout the United States and

25  internationally.  In connection with these efforts, Knoll maintains an internet website at

26  http://www.knoll.com, which contains information about Knoll's furniture products.  Knoll also

27  issues advertising and promotional material relating to the Barcelona Collection, and has done so

28  for many years.  As a result of all of the foregoing sales, manufacturing and promotional efforts,

-2-

1  the Barcelona Chair, the Barcelona Stool, the Barcelona Couch, the Barcelona Table and the Flat

2  Brno Chair have come to be associated with Knoll as their source.

3      In October 2004, the United States Patent and Trademark Office issued trademark

4  registrations for each of the items in the Barcelona Collection (Barcelona Chair, Reg. No.

5  2,893,025; Barcelona Stool, Reg. No. 2,894,977; Barcelona Couch, Reg. No. 2,894,980;

6  Barcelona Table, No. 2,894,979; and Flat Brno Chair, Reg. No. 2,894,978). Knoll is also the

7  owner of U.S. Trademark Registration No. 772,313 for the mark BARCELONA, which issued,

8  after examination, on or about June 30, 1964.

9      Alphaville Designs, Inc. ("Alphaville") is a manufacturer, importer, distributor and

10  wholesaler of furniture made in China. Defendants David Lee and Peggy Lee are principals of

11  Alphaville and control Alphaville and direct its activities, especially with respect to its infringing

12  activities.

13      Alphaville conducts its business over the internet through its website at

14  http://www.alphavilledesign.com, and in the past customers have been able to purchase products

15  directly from Alphaville through its website. Alphaville promotes and sells its furniture products

16  at trade shows, including at trade shows in New York, New York; maintains a 6,000 square foot

17  showroom in Las Vegas, Nevada; and sells its furniture products to retailers throughout the United

18  States, including Danrick Commerce Group, LLC a/k/a Moderncollections.com

19  ("ModernCollections"), LaFlat in New York, H.D. Buttercup in Los Angeles and

20  Homeelement.com in New Jersey.

21      Alphaville manufactures, imports, and/or distributes furniture products that are the subjects

22  of Knoll's aforementioned trademark registrations to customers throughout the United States,

23  including to customers in California. In this regard, Alphaville is the supplier to

24  ModernCollections and other retailers across the country of the furniture products that are the

25  subjects of Knoll's aforementioned trademark registrations.

26      On August 15, 2007, Knoll sent a notice letter to Alphaville demanding that Alphaville

27  cease its infringing activities. Nevertheless, Alphaville has sold and continues to sell products in

28  the form of or derivative of the designs that are the subjects of Knoll's aforementioned trademark

-3-

1   registrations in California and throughout the United States.  In selling its unauthorized

2   reproduction of Knolls' Barcelona Collection, Alphaville refers to the furniture as the Mies

3   Pavillon Lounge Chair or the Exposition chair and describes said collection as the one designed

4   for the German Pavillon at the International Exhibition of 1929 in Barcelona Spain by Mies van

5   der Rohe.

6        ***Alphaville and the Lees' Statement***

7        Alphaville Design, Inc. was incorporated in 2005 to sell furniture.  Among its many lines

8   of furniture are "Mid 20th Century" modern styles. Among these lines are a chair that is a replica

9   of a 1929 Mies van der Rohe chair, an ottoman that is a replica of a 1929 Mies van der Rohe

10  designed couch/ottoman, a table that is a replica of a Mies van der Rohe design table, a stool that

11  is a replica of a 1929 design Mies van der Rohe stool and another chair that is a replica of a Mies

12  van der Rohe early 20th Century "brno chair."

13       On or about August 7, 2007, Alphaville received a Cease & Desist letter from Knoll, Inc in

14  which Knoll claimed to have exclusive rights to certain furniture designs including, but not limited

15  to, the "Mies van der Rohe" otherwise known as "Barcelona" designs by Mr. van der Rohe.  The

16  letter told Alphaville to stop selling Mies van der Rohe style furniture. On or about August 27,

17  2007 Alphaville by its attorney wrote back to Knoll and stated that Alphaville did not believe

18  Knoll has exclusive rights to the Mies van der Rohe design furniture and offered to remove any

19  trademark (including, but not limited to, "Barcelona") to identify its styles of furniture.  Knoll

20  rejected this offer and sued a local East Bay Alphaville customer, Danrick, *et al.* in New York in a

21  suit which Knoll then dismissed after the New York court said the case should be transferred to

22  this court.  Alphaville is not using the name Barcelona on any of its furniture. On September 6,

23  2007 Knoll filed the action in the Southern District of New York  against Danrick and its

24  employees who were customers of Alphaville.  This was after Knoll rejected Alphaville offer to

25  settle and after Alphaville asked Knoll counsel to notify it if any further action were contemplated.

26  On November 1, 2007 Alphaville filed the instant Declaratory Relief Action.

27

28

-4-

SUPPLEMENTAL JOINT CASE MANAGEMENT
STATEMENT AND RULE 26(F) STATEMENT

**3.** **Legal Issues**

*Knoll's Statement*

Knoll believes the legal issues presented by its case are whether Alphaville and the Lees activities have infringed Knoll's trademarks under both federal and California law and diluted Knoll's trademarks, under California law as well as committed acts of unfair business practices and the damages amount related thereto. Knoll will also raise the validity of Alphaville's and the Lees' affirmative defenses, as a matter of law. To Knoll's knowledge there is no real dispute over infringement. To the contrary, Alphaville's and the Lees' entire defense rises and falls with validity. Knoll responds to Alphaville's and the Lees' challenges to the extent Knoll understands them as follows:

    **(a)** **Is the Knoll Barcelona Collection the Proper Subject Matter for A Trademark?**

The Patent and Trademark Office has issued many trademark registrations for three-dimensional product configurations such as the Coca Cola bottle, the Hershey Kiss, the Eames chair by Herman Miller, and the Tizio Lamp. *See e.g. Wal-Mart Stores, Inc. v. Samara Brothers, Inc.* 520 U.S. 205 (2000). Thus, the issuance of the Knoll trademarks is entirely appropriate.

    **(b)** **Does Knoll have title to all of the items in the Barcelona Collection?**

In January 2005, the German District Court of Hamburg issued a decision in which it found that Mies van der Rohe had transferred all of his rights in the Barcelona Collection to Knoll by virtue of a 1965 agreement. The Second Circuit Court of Appeals, in related litigation, has also stated that the 1965 agreement unambiguously assigned all right, title and interest in the designs without geographic limitation. *See Leather Form S.r.L. v. Knoll, Inc.*, 205 Fed. Appx. 861 (2d Cir. 2006). Despite Alphaville's allegations to the contrary, MoMA does not own the designs to the Barcelona Collection and Knoll does not pay royalties for the use of these designs. Moreover, the 1965 agreement gave Knoll all right, title, and interest to the designs of the Barcelona Collection, and not just the right to use Mies' van der Rohe's name.

1    **(c)    Are Knoll's trademark registrations for the items in the Barcelona Chair**
2    **invalid due to fraud?**

3    Neither Knoll or its attorneys committed fraud on the USPTO during the prosecution of the

4    trademarks at issue.  The crux of Alphaville's and the Lees' arguments are that Knoll filed excerpts

5    of books in support of the applications and if the Trademark Office had read the content of those

6    books instead of excerpts, the Trademark Office would not have granted the registrations.

7    According to Alphaville, the books would have shown (1) that the furniture was functional;

8    (2) that Knoll did not have title to the furniture; and (3) third parties were selling the furniture.

9    On the first point, submitting excerpts of books when they are identified by title and author

10    does not amount to fraud.  The Examining Attorney  had what he needed to track down any of the

11    books for which excerpts were submitted but he was satisfied with what was presented.  On the

12    second point, there are an infinite number of ways to build a chair, and Alphaville has never

13    articulated what in these publications would establish functionality.  On the third point, Alphaville

14    has pointed to various publications that show that other manufacturers were selling the chair but

15    most of this is speculation.

16    Alphaville also argues that Knoll committed fraud on the Patent Office when it said that

17    the furniture designs were not subject to patent protection.  Alphaville points to a German patent

18    that issued in 1929 and has long since expired.  Alphaville's allegation is curious given that on its

19    very own website it states that "Patents for this 1929 design [the Barcelona Chair] were never

20    registered and do not exist today.]  Nonetheless, neither Knoll nor its attorneys were aware of a

21    German patent and even if they were, it was not material.  From what Knoll understands after the

22    fact, the German patent covers a means of utilizing the elasticity of the metal used in a chair frame

23    to obtain an elastic seat and back support, and not the design of the chair.  Moreover, the patent

24    does not even remotely discuss or apply to the entire Barcelona Collection for which Knoll has

25    trademark protection.

26    Alphaville and Knoll even disagree on the applicable legal standard.  Alphaville states that

27    the PTO has found that fraud may be found even when a trademark owner did not specifically

28    intend to defraud the Patent and Trademark Office.  This is simply not the standard in the Ninth

-6-

1   Circuit.  To prove fraud in the Ninth Circuit, Alphaville and the Lees' will need to prove that Knoll

2   knew or believed that it was making false representations to the PTO regarding a material fact, and

3   that Knoll intended the PTO to rely on such false representations.  *See e.g. eCash Technologies,*

4   *Inc. v. Guagliardo*, 210 F. Supp 2d 1138 (C.D. Cal 2000).  Alphaville and the Lees will not be

5   able to meet their heavy burden.

6        **(d)     Are the registrations for the pieces in the Barcelona Collection invalid because**

7            **they are functional?**

8        The pieces in the Barcelona Collection are not functional in the legal sense of the word.

9   An item is legally functional when it is essential to the use of purpose of the device of effects the

10  quality or cost of the device.  To determine if something is functional, the Ninth Circuit looks to

11  four factors (1) whether advertising touts the utilitarian advantages of the design; (2) whether the

12  particular design results from a comparatively simple or inexpensive method of manufacture; (3)

13  whether the design yields a utilitarian advantage and (4) whether alternative designs are available.

14  These factors all fall in Knoll's favor.  Knoll has not advertised that any of the pieces in the

15  Barcelona Collection have some utilitarian advantage.  Further, the design of the pieces in the

16  Barcelona Collection is not the due to a simple or inexpensive manufacturing method.  The pieces

17  in the Barcelona Collection act as furniture (chairs, tables, stools and daybeds), but there are

18  infinite ways of designing such furniture.  Alphaville has also pointed to the German patent as

19  evidence of functionality.  As previously discussed, the German Patent does not claim the

20  Barcelona Stool or Chair and does not and could not cover other attributes such as the cushions,

21  how the cushions attach to the chair, or the strapping behind the cushions.

22       **(e)     Is Alphaville's sale of furniture in the configurations that are subject of the**

23            **Barcelona  Collection registrations a "fair use" of Knoll's trademarks?**

24       The Court in *Herman Miller, Inc. v. A. Studio S.r.L.*, 79 U.S.P.Q.2d 1905 explicitly

25  rejected the argument that the sale of replicas the Herman Miller's registered trademarks was a

26  descriptive use of the chair for the purposes of the fair use defense.  Thus, Alphaville's sales of

27  copies does not describe Knoll's originals in any sense.

28

SUPPLEMENTAL JOINT CASE MANAGEMENT
                                        STATEMENT AND RULE 26(F) STATEMENT

**(f)** **Is Knoll barred by laches, namely undue delay from enforcing its rights against Alphaville?**

Alphaville argues that Knoll unjustifiably delayed in taking action against it. However, to prove laches, Alphaville must show (1) inexcusable delay which; (2) prejudiced Alphaville. *See e.g. Cellularm, Inc. v. Bay Alarm Co.*, 20 U.S.P.Q.2d 1430 (N.D. Cal. 1991). Short delays are insufficient to find laches; courts have found delays of up to six years to be "short." Id. Discovery will establish there was no unjustifiable delay. In any event, the issue of laches relates to damages, and is not dispositive of the lawsuit.

**(g)** **Can Knoll be prohibited from sending notice letters to Alphaville's customers or registering its trademarks with US Customs?**

Knoll has the unfettered right to take action to protect its trademark rights as it sees fit and its right to do so is well established. *See e.g. On Command Video Corp. v. Columbia Pictures Industries, Inc.*, 764 F. Supp. 1372 (N.D. Cal. 1991). Knoll's cease and desist letters have been sent in good faith and any action taken with US Customs is no different from any other trademark holder.

**(h)** **Is Knoll's trademark Barcelona invalid?**

Alphaville has asserted that the mark is geographically descriptive and/or generic in that BARCELONA is where the Barcelona Chair and Barcelona Stool were first shown. This argument was already raised by the USPTO and rejected during the prosecution of the mark.

***Alphaville and the Lees' Statement***

Alphaville and the Lees believe that it is not appropriate to argue the Legal Issues here, so it only lists the issues.

The validity of Knoll's alleged trademarks.

Whether the acts of Alphaville infringe any rights of Knoll.

Whether Knoll has any rights to furniture designs represented by them on the Principal Register as 2,893,025 for "design" (chair) ; 2,894,977 "design" (stool); 2,894,980 "design" (couch; ottoman); 2,894,979 "design" (table); and 2,894,978 "design" (flat Brno chair), and Registration No. 772313 for the word "Barcelona,"

-8-

1    Whether Knoll has exclusive rights to furniture designs represented as above.

2    Whether Alphaville may produce, import, sell, distribute and advertise for sale the

3  furniture designs known as 2,893,025 for "design" (chair)  ; 2,894,977 "design" (stool); 2,894,980

4  "design" (couch; ottoman); 2,894,979 "design" (table); and 2,894,978 "design" (flat Brno chair),

5  and  use the word represented by Knoll Registration No. 772313 for the word "Barcelona,"

6    Whether Alphaville's use of the designs and words are falsely used, nominative fair use

7  and/or descriptive use.

8    Whether Knoll may stop any person or firm from manufacture, design, advertising or sale

9  of the furniture designs.

10    Whether Knoll received any license from Mies van der Rohe that give it an ongoing

11  exclusive right to manufacture the designs at issue, and to stop others from using such designs.

12    Whether the design trade dress registrations are invalid for the following reasons:

13    a.    They were obtained by fraud on the Patent and Trademark Office.

14    b.    Whether Knoll knew or should have known at time it submitted misleading

15        statements to the Patent and Trademark Office

16    c.    Whether the Statement made by Mr. Carl Magnusson, a VP of Knoll who declared

17        to the Patent and Trademark Office with the Knoll applications, that there were no

18        patents on the designs was false or misleading.

19    d.    Whether Knoll or Magnusson, or their attorneys knew or should have known of the

20        Mies van der Rohe patents on these designs.

21    e.    Whether the Statement made by Mr. Terence Riley to the Patent and Trademark

22        Office that attached pages from a book, but left out pages from the same book that

23        disclosed issues with "title" to designs, several mentions of patents on them and

24        history that on information and belief, was false or misleading and fraud on the

25        Patent and Trademark Office.

26    f.    Whether the Mies van der Rohe agreement with Knoll is more than a quit-claim.

27    g.    Whether Mies van der Rohe assigned any right, title and interest to Knoll in such

28        designs or whether all he had to assign or believed he could assign was his name.

-9-

h.      Whether Knoll's use of the U.S. Customs to interdict, delay, and seize Alphaville's furniture, pending the outcome of a Motion to Invalidate is unfair competition.

i.      Whether the designs sought to be trademarked are primarily functional and thus unprotectable.

j.      Whether the designs have secondary meaning as being associated with Knoll.

**4.      Motions**

*Knoll's Statement*

Knoll's motion to strike Alphaville's affirmative defenses is currently on calendar.  The parties still have not been able to agree to a Protective Order and Knoll may seek the court's assistance if this cannot be resolved prior to the Case Management Conference.

Knoll contemplates making a motion for partial summary judgment with respect to defendants' liability for infringement of Knoll's federally registered trademarks and a declaration that Knoll owns all title rights and interest in the Barcelona Collection.  Knoll also anticipates motion practice challenging Alphaville's and the Lees' affirmative defenses and seeking a declaration of validity for its trademarks.

*Alphaville and the Lees' Statement*

Alphaville contemplates a Motion for Summary Judgment regarding the invalidity and cancellation of Knoll's alleged trademark and trade dress claims, and a declaration that Alphaville can make, sell, and import its furniture.

Alphaville contemplates a Motion for Injunctive relief to prevent Knoll's threats of suits to Alphaville customers, causing irreparable injury and grave loss of current and future business, and against Knoll's use of Customs to stop and slow the importation of, and cause damage to, Alphaville goods, resulting in losing Alphaville current and prospective business, interfering with agreements with Alphaville and its customers, and causing great injury to Alphaville's reputation.

Alphaville may bring a motion for a protective order against what it believes is discovery excess.  For example, at this early stage of the case, with no trial date set, Knoll has served 575 Request for Admission.

-10-

**5.**    **Amendment of Pleadings**

*Knoll's Statement*

After conducting discovery, Knoll may amend its counterclaims to include claims for trademark infringement against Alphaville's suppliers and customers.

*Alphaville and the Lees' Statement*

Alphaville reserves the right to amend its Declaratory Relief Action complaint to conform to proof.  Alphaville intends to amend its Answer to Knoll Counterclaims, and negotiations are underway regarding the extent of this.

**6.**    **Evidence Preservation**

Alphaville asserts that it has taken reasonable steps to preserve potentially relevant evidence, including hard copy and electronic documents, and has ceased any applicable document retention policies that may result in the destruction or erasure of such evidence.

Knoll asserts that it has taken reasonable steps to preserve potentially relevant evidence, including hard copy and electronic documents, and has ceased any applicable document retention policies that may result in the destruction or erasure of such evidence.

The Lees assert that they have taken reasonable steps to preserve potentially relevant evidence, including hard copy and electronic documents, and ceased any applicable document retention policies that may result in the destruction or erasure of such evidence.

**7.**    **Disclosures**

*Knoll's Statement*

The parties have served their initial disclosures.

**8.**    **Discovery**

**(a)**    **Discovery Taken To Date.**

*Knoll's Statement*

Both Knoll and Alphaville have propounded extensive written discovery.  No depositions have yet been taken, but Knoll contemplates scheduling depositions in the August/September timeframe.  Knoll has produced over 30,000 pages of documents, Alphaville has produced 750

-11-

1    pages of documents.  Alphaville has agreed to allow Knoll's counsel to inspect records at

2    Alphaville's office on July 22 and July 23.

3              **(b)        Scope of Anticipated Discovery.**

4              The lists of topics provided below are in no way meant to be limiting.  The parties retain

5    the right to pursue discovery on any topic to which it is entitled to discovery under the Federal

6    Rules of Civil Procedure, the Local Rules for the Northern District of California, and the

7    Discovery Orders entered by this Court.

8              ***Knoll's Statement***

9              Knoll has or intends to propound document requests, interrogatories and requests for

10   admission, and to take depositions relating to the following subjects:

11             (1)      The manufacture, sale, distribution and promotion of the infringing products;

12             (2)      Alphaville's sales of the infringing products;

13             (3)      Alphaville's knowledge of Knoll's rights in the infringing products;

14             (4)      Alphaville's customers for the infringing products;

15             (5)      The Lees' knowledge of Knoll's rights in the infringing products;

16             (6)      The Lees' involvement in Alphaville's decision to distribute and sell the infringing

17   products;

18             (7)      The allegations in the Complaint; and

19             (8)      The affirmative defenses asserted by Alphaville and The Lees.

20             (9)      Subpoenas to Alphaville's insurance carrier and third-party customers concerning

21   statements made about Knoll and its rights to produce the Barcelona collection.

22             (10)     Authentication Requests for Admissions.

23             Knoll objects to many of the discovery items listed by Alphaville and the Lees, and in

24   particular the deposition of Marc Misthal (Mr. Misthal did not sign the trademark applications

25   filed by Knoll), for among other reasons relevance, burden, and necessity.

26             (9)      Subpoenas to Alphaville's insurance carrier and third party customers concerning

27   statements made about Knoll and its rights to produce the Barcelona collection.

28

SUPPLEMENTAL JOINT CASE MANAGEMENT
                                                    STATEMENT AND RULE 26(F) STATEMENT

1      ***Alphaville's Statement***

2      Alphaville has propounded a set of Requests for Production of Documents, a set of

3 Interrogatories, and plans to request Inspection of things (furniture), Requests for Admission and

4 to take the depositions of Knoll officers, persons who had contact with Mies van der Rohe

5 regarding the following:

6      (1)      The alleged license Knoll states it has from Mies van der Rohe from 1965 and the

7 history thereof, and documents relating or referring to van der Rohe.

8      (2)      Item and declarations mentioned in Knoll's alleged trademark applications.

9      (3)      All issues regarding the allegations of Knoll in its Counterclaims.

10      (4)      Persons involved in declarations and evidence of Knoll's trademark registrations.

11      (5)      Specifically:

12      a.      Deposition of Marc Misthal, Esq., author and signor of the Knoll trademark

13 applications.

14      b.      Deposition of Carl G. Magnusson on his Declaration in support of the Knoll

15 trademark applications.

16      c.      Deposition of Terence Riley (witness) on his Declaration filed in support of

17 the Knoll trademark applications.

18      d.      Examination of all books referring to Mies van der Rohe, referred to in

19 Knoll's trademark applications and declarations, and in Knoll's knowledge and possession.

20      e.      Evidence if any of claimed confusion with Alphaville products.

21      f.      Subpoenas to third parties to obtain settlement information on those

22 companies that Knoll allows to produce the designs in question after settlement of litigation, or

23 disputes, as Knoll refuses to produce documents regarding such entities.

24      g.      Other discovery as needed.

25      ***The Lees' Statement***

26      David Lee and Peggy Lee intend to conduct depositions, make Requests for Production of

27 Documents, Interrogatories based on the allegations made against them in the counterclaims of

28 Knoll, Inc.

-13-

1    **(c)    Limitations Or Modifications Of The Discovery Rules.**

2    Unless otherwise noted below, the parties agree that discovery will not be conducted in

3    phases or be limited to or focused upon any particular issues.  The parties further agree that

4    discovery will be conducted generally as provided by the Federal Rules of Civil Procedure.

5    *Knoll's Statement*

6    Except as otherwise set forth herein, Knoll does not believe that any modification or

7    limitation of the discovery rules is necessary.  Knoll also objects to Alphaville's request for

8    modification, when the parties already had an agreement that no modification is necessary.  In

9    fact, Alphaville has historically been the party to ask for an increase, rather than a decrease in the

10    discovery limits.

11    *Alphaville's Statement*

12    Alphaville believes that certain limitations or modifications of the Discovery Rules are

13    necessary at this time, in order to prevent discovery excess.  Each party should be limited to 200

14    document requests and 100 requests for admission, without further court permission.  Knoll now

15    has already served 575 requests for admissions to burden Alphaville at this time.

16    *The Lees' Statement*

17    David Lee and Peggy Lee do not believe that any modification or limitation of the

18    discovery rules is necessary except as noted above by Alphaville, for orders on limits on Requests

19    for Admission, and additional time to respond.

20    **(d)    Electronically Stored Information.**

21    The parties anticipate that some relevant documents will include electronically stored

22    information, such as emails.  The parties however, have not yet reached an agreement on how such

23    information will be produced but will work together to reach a cost-effective e-discovery model

24    that includes producing documents in OCR searchable PDF or TIFF format.  The parties further

25    agree that they will not be obligated to produce native files.

26    **(e)    Other Orders That Should Be Entered Under Rule 26(c).**

27    Due to the sensitive nature of some of the materials subject to discovery, which may

28    include personal and private information of third parties, Alphaville, Knoll and The Lees believe

-14-

1  that is necessary for the parties to enter into a stipulated protective order governing confidentiality

2  to ensure that the disclosure of such materials is limited and will preserve their right to privacy and

3  trade secrets.  Further, during the course of discovery, the parties anticipate filing documents and

4  things under seal, particularly those items relating to financial information, trade secret

5  information, and other business confidential information.

6        **(f)**     **Proposed Discovery Plan.**

7        See proposed case management schedule below.

8  **9.**    **Class Actions**

9        This case is not a class action suit.

10  **10.**    **Related Cases**

11        Knoll has filed a separate action against Danrick Commerce Group LLC ("Danrick") and

12  Danny Louie ("Louie") who are retailers for Alphaville, and its owner, Case No. CV 08 0778,

13  which has been deemed related pursuant to the Court's February 27, 2008 Order.  Pursuant to

14  Stipulation and Court Order, that case is currently stayed pending the outcome of the Alphaville

15  matter.

16  **11.**    **Relief**

17        *Knoll's Statement*

18        Knoll seeks the following relief:

19        (1)     An injunction permanently enjoining and restraining counterclaim-defendants, their

20  directors, officers, agents, servants, employees, successors, assigns, subsidiaries, related

21  companies, parent companies, licensees, assigns, and all persons in active concert or participation

22  with them:

23            a.     From importing, marketing, advertising, distributing or selling furniture in

24  the form of the designs that are the subject of Knoll's trademark registrations;

25            b.     From passing off or otherwise representing to architects, the furniture trade

26  or public in any way that any product sold by counterclaim-defendants emanates from, is related in

27  source or sponsorship to, or is in any way related to Knoll;

28

-15-

1          c.      From injuring Knoll's business reputation by diluting the distinctive quality

2    of Knoll's products; and

3          d.      From engaging in deceptive trade practices or acts in the conduct of

4    counterclaim-defendants' business by means of selling products embodying Knoll's trademarked

5    designs;

6    (2)    An order directing counterclaim-defendants to deliver to Knoll or to destroy all

7    furniture in their possession that is in the form of the designs that are the subject of Knoll's

8    trademark registrations;

9    (3)    An order directing counterclaim-defendants to immediately recall and destroy all of

10   their catalogs showing, advertising or promoting furniture that is in the form of the designs that are

11   the subject of Knoll's trademark registrations;

12   (4)    An order directing counterclaim-defendants to remove all references to or images

13   of furniture that are in the form of the designs that are the subject of Knoll's trademark

14   registrations from counterclaim-defendants' internet websites;

15   (5)    An order directing counterclaim-defendants to account to Knoll for all profits

16   resulting from counterclaim-defendants' infringing activities;

17   (6)    An award to Knoll of its damages from counterclaim-defendants' wrongful acts.

18   Knoll believes that its damages are in excess of $1,000,000 but cannot calculate its damages

19   because this action is in its infancy;

20   (7)    An award to Knoll of three times the amount of its damages or counterclaim-

21   defendants' profits, whichever is greater;

22   (8)    An award to Knoll of the cost of this action, as well as reasonable attorneys' fees;

23   and

24   (9)    An award to Knoll of punitive damages as a result of counterclaim-defendants'

25   wrongful acts.

26   (10)    An order declaring Knoll's trademarks valid and enforceable.

27   ***Alphaville and the Lees' Statement***

28   1.    Entry of Judgment providing:

-16-

1         a.       That Defendant is without a right or authority to threaten or to maintain suit

2 against Plaintiff for alleged infringement of trademarks Nos. 2,893,025, 2,894,977, 2,894,980,

3 2,894,979, 2,894,978 and 772,313.

4         b.       That the trademarks and trade dress claims are invalid, unenforceable, and

5 void in law;

6         c.       That the court cancel the trademark registrations of Knoll;

7         d.       That the alleged trademarks and trade dress are not infringed by Plaintiff

8 through the making, selling, or using of any of designer furniture by Plaintiff;

9         e.       That Defendant has engaged in acts of unfair competition against Plaintiff;

10         f.       For the costs, expenses, and reasonable attorney's fees incurred by Plaintiff.

11     2.       Entry of a preliminary and permanent injunction enjoining Defendant from:

12         a.       Initiating infringement litigation or threatening Plaintiff or any of its

13 customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers,

14 or users of Plaintiff's designer furniture, with infringement litigation, or charging any of them

15 either verbally or in writing with infringement trademarks Nos. 2,893,025, 2,894,977, 2,894,980,

16 2,894,979, 2,894,978 and 772,313, because of the manufacture, use, sale, or offering for sale of

17 designer furniture made by Plaintiff;

18         b.       That Knoll Cease engaging in acts of antitrust and other anticompetitive

19 practices.

20         c.       That Knoll be ordered to lift and reverse any referrals to Customs Service

21 and other seizure processes if any made or filed against Plaintiff.

22     3.       For damages for acts that have occurred due to Knoll's threats and allegations, and

23     4.       All other relief that the Court may deem appropriate.

24     ***David Lee and Peggy Lee's Statement:***

25     1.       The Counterclaim Plaintiff take nothing by reason of the Counterclaims and that

26 the Counterclaim-Defendants be awarded their costs of suit, attorney fees, and such other and

27 further relief as this Court deems just and proper.

28

2.      David Lee and Peggy Lee should be dismissed with prejudice as there is no valid claim over them as individual Counterclaim-Defendants.

3.      That this Court declare the trademark registrations of Knoll, Inc. are invalid, void and of no force and effect such that they are denied to protect any designs of furniture.

4.      That this Court declares the trademark registrations of Knoll should be cancelled.

5.      That Counterclaim-Defendants herein be awarded reasonable attorney fees and costs and

6.      Such other and further relief as this Court deems just under the circumstances.

**12.    Settlement and ADR**

The parties had some initial settlement discussions before the filing of this action, but those discussions were not fruitful.  On July 1, 2008, the parties participated in non-binding mediation with Judge Chen.  The parties did not reach a settlement.

**13.    Consent to Magistrate Judge For All Purposes**

The parties do not agree to consent to a Magistrate Judge for all purposes.

**14.    Other References**

The parties agree that this case is not suitable for reference to binding arbitration, or the Judicial Panel on Multidistrict Litigation.  The parties disagree on whether a special master should be appointed for discovery purposes.

**15.    Narrowing of Issues**

Where appropriate, the parties agree to narrow factual issues by stipulation and/or through requests for admission.  In addition, the parties will streamline the presentation of evidence at trial by stipulating to the authenticity of certain documents and exhibits.

**16.    Expedited Schedule**

At this time, the parties do not believe that this case may be handled on an expedited basis with streamline procedures.

**17.    Scheduling**

The Court has currently scheduled motions for summary judgment on validity to be heard no later than October 20, 2008.  The parties have agreed to an extension because Knoll's lead

-18-

1  counsel in New York is scheduled for a trip to Israel during the briefing period and respectfully

2  requests a two week extension and to accommodate plaintiff's counsel's schedule.

3      ***The Parties' Proposed Schedule***

4      MSJ on Invalidity                                       November 10, 2008

5      Fact Discovery Cut-Off for Trial:                  January 30, 2008

6      Expert Witness Disclosures:                      February 30, 2009

7      Rebuttal Expert Reports:                           March 27, 2009

8      Expert Deposition Deadline:                     April 30, 2009

9      Dispositive Motions (hearing deadline):       May 20, 2009

10      Pre-Trial Conference:                             June 30, 2009

11      Trial                                               TBD

12  **18.**    **Trial**

13      This case will be tried by a jury to the extent a jury may decide issues associated with the

14  case.  All other issues will be decided by the Court.  The parties estimate that the trial will take

15  approximately 5-8 days.

16  **19.**    **Disclosure of Non-Party Interested Entities or Persons**

17      Alphaville and Knoll have filed their respective "Certification of Interested Entities or

18  Persons" as required by Civil L.R. 3-16.

19  **20.**    **Other Matters**

20      There are no other matters that the parties need to bring to the Court's attention with

21  respect to facilitating the just, speedy and inexpensive disposition of this matter.

22  Dated:  July 16, 2008

23                          MINTZ LEVIN COHN FERRIS GLOVSKY AND
                         POPEO, PC

24

25                           /s/ Karineh Khachatourian

26                    By:    KARINEH KHACHATOURIAN

27                           Attorneys for Defendant and Counterclaimant,
                         KNOLL, INC.

28

-19-

SUPPLEMENTAL JOINT CASE MANAGEMENT
STATEMENT AND RULE 26(F) STATEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*OF COUNSEL:*

GEORGE GOTTLIEB (ADMITTED PRO HAC VICE)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED PRO HAC VICE)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY 10016-0601
Telephone: (212) 684-3900
Facsimile: (212) 684-3999

Dated: July 16, 2008          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By       /s/ Neil A. Smith
         _____
         NEIL A. SMITH

         Attorneys for Plaintiff and Counter-Defendant,
         ALPHAVILLE DESIGNS, INC., and

         Attorneys for Counter-Defendants,
         DAVID LEE AND PEGGY LEE

#4381909-v1

W02-WEST:5NAS1\400938301.4                     SUPPLEMENTAL JOINT CASE MANAGEMENT
Case No. 07-CV-05569 MHP                       STATEMENT AND RULE 26(F) STATEMENT