KARINEH KHACHATOURIAN (SBN 202634)
Email: kkhachatourian@mintz.com
BRYAN J. SINCLAIR (SBN 205885)
Email: bsinclair@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
5 Palo Alto Square - 6th Floor
3000 El Camino Real
Palo Alto, California 94306
Telephone: (650) 251-7700
Facsimile: (650) 251-7739

GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY 10016-0601
Telephone: (212) 684-3900
Facsimile: (212) 684-3999

Attorneys for Defendant and Counterclaimant,
KNOLL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALPHAVILLE DESIGN, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KNOLL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 07-CV-05569 MHP<br><br>**KNOLL, INC.'S OPPOSITION TO ALPHAVILLE DESIGN, INC.'S MOTION FOR PROTECTIVE ORDER AND TO STAY RESPONSES TO REQUESTS FOR ADMISSION**<br><br>Date: September 15, 2008<br>Time: 2:00 p.m.<br>Dept: Courtroom 15, 18th Floor<br>Judge: Honorable Marilyn H. Patel<br><br>Complaint filed: November 1, 2007<br>Trial Date: None set |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. LEGAL ARGUMENT..............................................................................................................2

    A. The Plaintiff's Motion Must Be Denied as Plaintiff's Counsel Never Met and Conferred With Defendant's Counsel in Good Faith or in Person in Accordance with This Court's Order Prior to the Filing of This Motion. ....................2

    B. The Plaintiff's Motion Must be Denied Because The Plaintiff Has Not Met its Heavy Burden in Seeking a Stay of the Second Set of RFAs......................................4

    C. The Plaintiff's Motion Should be Denied Because the Defendant is Entitled to Have its Requests for Admissions Answered. ...........................................................6

        1. The Defendant's Requests For Admissions Are Appropriate Under Rule 26(b)(1) Given The Complexity Of This Case...........................................6

        2. The Defendant's Requests For Admissions Are Relevant To The Plaintiff's Claims Of Trademark Invalidity. ..................................................8

        3. Knoll's Second Set of RFAs Are A Direct Result of Alphaville's Refusal to Comply with Its Discovery Obligations. .......................................11

        4. Alphaville Has Consistently Delayed Discovery In This Case. .......................12

    D. This Case Is In Dire Need Of A Special Master...........................................................12

III. CONCLUSION.......................................................................................................................13

1

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Al-Jundi v. Rockefeller*,
  91 F.R.D. 590 (W.D.N.Y.1981)..................................................................................................6

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir.1975) ......................................................................................................4

*Cable &Computer Tech. Inc. v. Lockheed Saunders, Inc.*,
  175 F.R.D. 646 (C.D.Cal.1997) .................................................................................................3

*Diederich v. Dept. of the Army*,
  132 F.R.D. 614 (S.D.N.Y.1990) .............................................................................................6, 7

*Feldman v. Flood*,
  176 F.R.D. 651 (M.D.Fla.1997) .............................................................................................4, 5

*Frazier v. Southeastern Pennsylvania Transp. Authority*,
  161 F.R.D. 309 (E.D.Pa.1995)...................................................................................................3

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D.Ca.1990) ....................................................................................................4

*Henry v. Champlain Enterprises, Inc.*,
  212 F.R.D. 73 (N.D.N.Y2003)...................................................................................................7

*Moscowitz v. Baird*,
  10 F.R.D. 233 (S.D.N.Y. 1950) .................................................................................................7

*O'Neal v. NCO Fin. Sys. Inc.*,
  2006 U.S. Dist. LEXIS 83505 (S.D.Cal.2006) .........................................................................4

*Photon, Inc. v. Harris Intertype, Inc.*,
  28 F.R.D. 327 (D. Mass 1961)...................................................................................................7

*Reno Air Racing Ass'n., Inc. v. McCord*,
  452 F.3d 1126 (9th Cir.2006) ....................................................................................................8

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
  170 F.R.D. 166 (D.Nev.1996)....................................................................................................3

*Skellerup Industries Limited v. City of Los Angeles*,
  163 F.R.D. 598 (C.D.Cal.1995) .................................................................................................5

*U.S. ex rel. England v. Los Angeles County*,
  235 F.R.D. 675 (E.D.Cal.2006) .................................................................................................7

*United States v. Proctor & Gamble*,
  356 U.S. 677 (1958)...................................................................................................................6

1  *United States v. Marsten Apartments*
       1977 U.S. Dist. LEXIS 14262, at *6 -*7 (E.D. Mich. 1997) ......................................................7
2
   *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
3      529 U.S. 205 (2000) ..................................................................................................................8

4  *Walt Disney Co. v. DeFabilis*,
       168 F.R.D. 281 (C.D.Cal.1996) ................................................................................................3
5
                               **STATE CASES**
6
   *Centillium Communications, Inc. v. Atlantic Mutual Insurance Co.*,
7      2008 WL 728639 (N.D.Cal.March17,2008) ............................................................................3

8  *Duncan v. Santaniello*,
       1996 WL 121730 (D. Mass 1996) ............................................................................................7
9
   *Jadin, D.O. v. County of Kern*,
10     2008 WL 2025093 (E.D.Cal.May 9, 2008) ..............................................................................6

11 *Varsity Gold, Inc. v. Bigham*,
       2007 WL 185089 (W.D.Wash.Jan.19,2007) ............................................................................3
12
   *Williams v. The Art Institute of Atlanta*,
13     2006 WL 3694649 (N.D.Ga.September 1,2006) .....................................................................3

14                             **FEDERAL STATUTES**

15 Federal Rules of Civil Procedure 26 ..............................................................................2, 3, 5, 6

16 Federal Rules of Civil Procedure 27 .............................................................................................3

17 Federal Rules of Civil Procedure 36 .............................................................................................6

18                             **SECONDARY AUTHORITIES**

19 A.W. Tashima & J. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, § 11:88 ....................................1

20 <u>Wright & Miller, Federal Practice and Procedure</u>, § 2035 ...........................................................1

21

22

23

24

25

26

27

28

iii

**I.     INTRODUCTION**

Defendant and Counterclaimant Knoll, Inc. ("Knoll") respectfully submits its opposition to Plaintiff and Counterclaim-Defendants Alphaville Design, Inc. ("Alphaville"), Peggy Lee and David Lee's ("the Lees") (collectively "Alphaville") Motion for Protective Order and to Stay Requests for Admission ("Motion"). Knoll's Second Set of Requests for Admission are directly relevant to Alphaville's validity challenge, and were propounded in response to Alphaville's refusal to either comply with its discovery obligations, or provide consistent statements concerning its validity challenge.

Despite Alphaville's disregard of the Federal Rules of Civil Procedure ("FRCP"), Knoll has recently learned that Alphaville claims to have in its possession Spanish patents concerning the Mies van der Rohe designs at issue in this case, has emails of direct consumer contact discussing the Barcelona Collection, and has paid internet pay per click companies for such search terms as "Knoll" "Barcelona Chair" and "Mies van der Rohe." While documents relating to these issues are directly relevant to Alphaville's anticipated motion for summary judgment, and were requested by Knoll in Document Requests, to date, these documents have not been produced.

Moreover, granting Alphaville's motion will set a dangerous precedent in that any discovery order that Alphaville can possibly interpret as a stay will empower Alphaville to continue to withhold highly relevant documents and otherwise disregard the Federal Rules as to discovery. Furthermore, Alphaville's motion for summary judgment, which it has been talking about for months, has not yet been filed, and it is unclear what exactly Alphaville will be claiming or even if its motion has any merit. Nonetheless, there are six trademark registrations at issue in this case, and the case will continue to trial on some if not all of the trademark registrations. Alphaville has repeatedly dragged its feet in responding to discovery served by Knoll, and the parties will not be ready for trial if discovery is not permitted to continue. Knoll therefore respectfully requests that Alphaville's motion be denied, or in the alternative, that the Court appoint a special master for discovery purposes, whose fees should be paid equally by both parties.

/ / /

/ / /

- 1 -
KNOLL'S OPP'N TO PL.'S MTN FOR PROTECTIVE ORDER AND TO STAY RESP. TO RFA
Case No. 07-CV-05569 MHP

## II.     LEGAL ARGUMENT

### A.     The Plaintiff's Motion Must Be Denied as Plaintiff's Counsel Never Met and Conferred With Defendant's Counsel in Good Faith or in Person in Accordance with This Court's Order Prior to the Filing of This Motion.

In Plaintiff's <u>Notice of Motion And Motion For Protective Order And To Stay Response To Requests For Admission</u> (the "Motion"), Alphaville's Counsel <u>falsely</u> advised this Court that:

> Pursuant to FRCP 26(c) and Local Rule 37-1 the undersigned certifies that Alphaville's counsel conferred in good faith with counsel from Knoll in an attempt to resolve the discovery dispute described herein before filing this Motion. *See* Declaration of Philip Green at ¶¶ 3, 5, 8-11 and Exhibits 2 &3 thereto; Declaration of Neil Smith at ¶¶ 4-5. The Parties were unable to resolve the dispute. Declaration of Neil Smith at ¶¶ 5-6.

<u>Id</u>. at p. 2.

As this Court undoubtedly recalls from the last status conference on July 21, 2008, and as the July 21, 2008 transcript clearly states, this Court ordered that Counsel: "Meet and confer. *Face to Face.*" (emphasis added - see pg. 41, line 22) regarding the Plaintiff's apparent objection to the Defendant's Requests For Admissions.   Notwithstanding Plaintiff's claims to contrary, no meaningful, good faith, face to face, meet and confer ever took place prior to the Plaintiff filing this Motion.  Indeed, as detailed in the Declaration of Marc P. Misthal ("Misthal Decl.") and the Declaration of Karineh Khachatourian ("Khachatourian Decl.") filed concurrently herewith, counsel for the Plaintiff never met and conferred, in good faith and in a meaningful way, with counsel for the Defendant in an effort to resolve this discovery dispute.  To the contrary, even when reminded by Attorney Misthal of this Court's standing order that counsel for both parties had to meet and confer in person prior to the Plaintiff filing a Motion for Protective Order, counsel for the Plaintiff advised that they had tried to discuss the matter with Ms. Khachatourian, and then advised that they would be filing the Motion regardless.  Misthal Decl. at ¶ 9.  What Alphaville has neglected to mention is that Ms. Khachatourian was on a short bereavement leave, and when she returned, Alphaville was not interested in discussing the matter any further.  Khachatourian Decl. Exhs. K - M; <u>Id</u>. at ¶¶ 15 - 17.  Alphaville has similarly refused to meet and confer on the Protective Order, even though ordered to on July 21, and no protective order is currently in place.  Khachatourian

- 2 -

1  Decl. Exh. A; Id. at ¶ 5

2  FRCP 26(c) provides, in relevant part, that a party moving for a protective order certify to
3  the Court " . . . that the movant has in good faith conferred or attempted to confer with other
4  affected parties in an effort to resolve the dispute without court action ...."  In addition, Local Rule
5  ("L.R.") 37-1 instructs that: "The Court will not entertain a request or a motion to resolve a
6  disclosure or discovery dispute unless, pursuant to FRCP 37, counsel have previously conferred for
7  the purpose of attempting to resolve all disputed issues."  L.R. 37-1.  Courts have imposed sanctions
8  for failure to comply with the meet and confer requirement.  See, e.g. Cable &Computer Tech. Inc.
9  v. Lockheed Saunders, Inc., 175 F.R.D. 646, 649-50 (C.D.Cal.1997); Walt Disney Co. v. DeFabilis,
10 168 F.R.D. 281, 285 (C.D.Cal.1996).

11 Here, despite the Court's specific order requiring a "face to face" meeting between counsel
12 regarding this particular discovery dispute, no such good faith "face to face" meeting ever took
13 place.  Khachatourian Decl. at ¶ 3.  Alphaville's discussion with Knoll's lead counsel was
14 perfunctory at best.  Alphaville's only suggestion was to "stay" the responses.  Misthal Decl. at ¶ 9.
15 In fact, Knoll offered several compromises in lieu of responding, including a deposition, a
16 stipulation, or responses in groups or stages.  Khachatourian Decl. Exh. K.  Alphaville was not
17 interested in anything short of a "stay."  The Court should deny the Plaintiff's Motion for this
18 reason alone.  See generally Centillium Communications, Inc. v. Atlantic Mutual Insurance Co.,
19 2008 WL 728639 * 1 (N.D.Cal.March17,2008) (Court struck plaintiff's motion for partial summary
20 judgment on the ground that plaintiff failed to meet and confer prior to filing the motion as
21 mandated by the Court's standing order).[1]

---

[1] *See also* Varsity Gold, Inc. v. Bigham, 2007 WL 185089 * 1-2 (W.D.Wash.Jan.19,2007) (denying defendant's motion for protective order where the "defendants did not confer at all with respect to the subject matter of the dispute."); Williams v. The Art Institute of Atlanta, 2006 WL 3694649 * 11-13 (N.D.Ga.September 1,2006) (Court denied Plaintiff's motion for a protective order on the ground that the parties had not conferred in good faith); Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 172 (D.Nev.1996) (finding party did not confer in good faith where counsel merely sent faxes and counsel "never personally discussed with opposing counsel a reasonable resolution to their discovery dispute"); Frazier v. Southeastern Pennsylvania Transp. Authority, 161 F.R.D. 309, 312-13 (E.D.Pa.1995) (noting that Plaintiff's prior motion for a protective order was denied because the plaintiff "failed to confer with [the defendant] prior to filing her motion in an attempt to resolve it without court action, as the Federal Rules require.").

- 3 -
KNOLL'S OPP'N TO PL.'S MTN FOR PROTECTIVE ORDER AND TO STAY RESP. TO RFA
Case No. 07-CV-05569 MHP

**B.     The Plaintiff's Motion Must be Denied Because The Plaintiff Has Not Met its Heavy Burden in Seeking a Stay of the Second Set of RFAs.**

While the Plaintiff has styled its Motion as one seeking a protective order with respect to Defendant's Requests For Admissions, the Plaintiff, in yet a further attempt to delay discovery, is in actuality requesting an informal stay of discovery from the Court.  In particular, the Plaintiff has requested that: ". . . this Court enter an order (1) staying Knoll, Inc.'s Second Requests for Admissions to Plaintiff Alphaville Design, Inc. until thirty (30) days after the Court's ruling on the parties' motions for summary judgment in this action or, in the alternative, (2) instructing Knoll, Inc. to identify 46 individual requests of the Second Set of Requests for Admissions to Plaintiff Alphaville Design, Inc. to which Alphaville Design, Inc. will provide responses within thirty (30) days of the Court's order on this Motion."  See Motion at p. 8.  Unfortunately, the Plaintiff has not even come close to meeting its heavy burden with respect to a stay of the RFAs.  A party seeking a stay of any type of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).  Generally, such motions are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future.  See O'Neal  v. NCO Fin. Sys. Inc., 2006 U.S. Dist. Lexis 83505 at 5 (S.D.Cal.2006); Feldman v. Flood, 176 F.R.D. 651, 652 (M.D.Fla.1997).  As a result, a request to stay discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case.  Id.  Therefore, the moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements.  See Wright & Miller, Federal Practice and Procedure, § 2035; A.W. Tashima & J. Wagstaffe, Federal Civil Procedure Before Trial, § 11:88;  Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D.Ca.1990) (denying motion for stay pending motion to dismiss).  The Plaintiff's Motion has failed to allege any such "particular and specific need."

In fact, the Plaintiff has not made any "showing", much less a "strong showing", as to why the discovery should be put off.  Rather, the Plaintiff merely urges that compliance with Defendant's discovery requests should be stayed pending this Court's ruling on its Motion for Summary Judgment regarding Knoll's trademark registrations and purported rights in the trademarks at issue.

- 4 -

KNOLL'S OPP'N TO PL.'S MTN FOR PROTECTIVE ORDER AND TO STAY RESP. TO RFA
Case No. 07-CV-05569 MHP

The Plaintiff has not even argued in this Motion that its Motion for Summary Judgment will succeed, what issues its motion will raise or what trademarks will be at issue—it has only argued that the parties should all wait and see what happens with its contemplated Motion, and then if Plaintiff loses, reduce the number of Defendant's Requests For Admissions. This "[i]dle speculation does not satisfy Rule 26(c)'s good cause requirement. Such general arguments could be said to apply to any reasonably large civil litigation. If this court were to adopt [the Plaintiff's] reasoning, it would undercut the Federal Rules' liberal discovery provisions.... Had the Federal Rules contemplated that a motion to dismiss … or [motion for summary judgment] would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." Skellerup Industries Limited v. City of Los Angeles, 163 F.R.D. 598, 600-01 (C.D.Cal.1995).

Further, in its wide discretion in controlling discovery, the Court should balance the harm of staying discovery against the benefit of allowing it to proceed. Along with balancing the harms of staying discovery, the Court should also ". . . take a preliminary peek at the merits of the alleged dispositive motion to see if on its face there appears to be an *immediate and clear possibility* that it will be granted." Feldman, 176 F.R.D. 286 (M.D.Fla.1997). In doing so, ". . . the moving party bears the burden of showing [*immediate and clear possibility*] [emphasis added] and reasonableness." Id. (quoting Howard v. Galesi, 107 F.R.D. 348 (S.D.N.Y.1985)).

Here, Alphaville **has not yet even filed its motion**. To the contrary, Knoll has been waiting to adjudicate this validity challenge *for months and further, has specifically asked Alphaville for the basis of its validity challenge and evidence in support, and has received nothing less than evasive, sometimes contradictorary responses*. Khachatourian Decl. Exhs. O - P and S (See e.g. Alphaville's written refusal to provide documents in support of its defenses based on privilege.) Nor has Alphaville even begun to produce documents directly relevant to its defenses even after Alphaville's principal admitted that they are available at Alphaville. *See generally* Khachatourian Decl. Exh. Q. At this point, it is more certain than not that some if not all of Knoll's registered trademarks will be at issue in this case even after the court rules on the Plaintiff's motion for summary judgment. Thereafter, this action will proceed to trial, and any restriction now placed on

- 5 -

KNOLL'S OPP'N TO PL.'S MTN FOR PROTECTIVE ORDER AND TO STAY RESP. TO RFA
Case No. 07-CV-05569 MHP

discovery will impede the parties' ability to be ready for a prompt trial.  In this case, the balancing of harms clearly favors denying the Motion as it is not "immediate and clear" that Plaintiff will prevail on its Motion for Summary Judgment.

**C.  The Plaintiff's Motion Should be Denied Because the Defendant is Entitled to Have its Requests for Admissions Answered.**

**1.  The Defendant's Requests For Admissions Are Appropriate Under Rule 26(b)(1) Given The Complexity Of This Case.**

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party . . ."  Indeed, "[t]he purpose of discovery is to make trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible,'" Jadin, D.O. v. County of Kern, 2008 WL 2025093 * 1 (E.D.Cal.May 9, 2008) (citing United States v. Proctor & Gamble, 356 U.S. 677,683 (1958)), "and to narrow and clarify the issues in dispute." Id. (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

The Requests for Admissions that the Defendant served on July 8, 2008 are appropriately tailored towards narrowing issues for trial and preserving resources that would otherwise have to be spent unnecessarily to prove certain facts at trial.  Given the large number of potential issues in this case, a relatively large number of Requests For Admissions is appropriate and may operate to eliminate issues and narrow the focus of this case to those issues that are truly in dispute, which is exactly what the Requests For Admissions should do.  See Diederich v. Dept. of the Army, 132 F.R.D. 614, 616 (S.D.N.Y.1990) (encouraging use of requests for admission to facilitate "the expeditious resolution of factual issues ... an important consideration in the equitable and efficient administration of justice, particularly for backlogged federal courts.").  Moreover, because "Rule 36 admission requests serve the highly desirable purpose of eliminating the need for proof issues upon trial, there is a strong disincentive to finding an undue burden where the requested party can make the necessary inquiries without extraordinary expense and effort." Al-Jundi v. Rockefeller, 91 F.R.D. 590, 594 (W.D.N.Y.1981).

In this case, which involves numerous products, as well as facts and allegations of trademark infringement and validity that span several decades, a large number of Requests For Admissions is

- 6 -

particularly appropriate. In fact, in complex cases, relatively large numbers of requests for admission are often served, and often allowed. See, e.g., Duncan v. Santaniello, 1996 WL 121730 at *3 (D. Mass 1996) (denying motion for protective order re: 292 requests); Photon, Inc. v. Harris Intertype, Inc., 28 F.R.D. 327, 328 (D. Mass 1961) (case in which requests for admission requiring hundreds of separate answers were allowed); Moscowitz v. Baird, 10 F.R.D. 233, 234 (S.D.N.Y. 1950) (denying motion to strike 265 items noticed in party's requests for admission). Moreover, courts have noted that serving extensive requests for admission "is not inappropriate, since the purpose of Requests for Admission is not necessarily to obtain information but to narrow issues for trial." Diederich v. Dept. of the Army, 132 F.R.D. 614, 616 (S.D.N.Y. 1990). That point is especially true here where the Defendant took great lengths to insure that its Requests for Admissions were not confusing or compound and only covered very specific topics related to the allegations made in the Complaint. See U.S. ex rel. England v. Los Angeles County, 235 F.R.D. 675, 684 (E.D.Cal.2006) (holding that requests for admission should not contain "compound, conjunctive or disjunctive statements."), and Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y2003) (holding that requests for admissions should be "singularly, specifically, and carefully detailed.").

Furthermore, Courts have made clear that objecting to the sheer number of Requests for Admissions alone does not form a sufficient basis for a protective order. The court in United States v. Marsten Apartments, for example, held that the fact that requests for admission are numerous "is insufficient to establish undue burden where, as here, the requests are relatively straightforward, the case is somewhat complex, and defendants' responses may help narrow issues for trial." 1977 U.S. Dist. LEXIS 14262, at *6 -*7 (E.D. Mich. 1997). Because the defendants in that case offered only conclusory assertions that responding to numerous requests would be unduly burdensome, the court found that undue burden had not been established. Id. Similarly, the Plaintiff here relies on nothing but conclusory assertions that the number of requests served is unduly burdensome. Knoll finds Alphaville's protests particularly intriguing, given that it would have been easier to respond to the requests than file this motion, and Alphaville has two law firms defending it, including the Sheppard Mullin firm. Moreover, there has been no particularized showing as to why these

- 7 -

1  Requests for Admissions are unduly burdensome, only that they have been served early in the case
2  and at a time when the Plaintiff contemplates filing a Motion for Summary Judgment on Invalidity.
3  Such conclusory statements are wholly insufficient, especially when the Plaintiff's responses to the
4  Defendant's Requests For Admissions will be utilized to narrow the issues for trial and, perhaps
5  equally important, will narrow the future discovery to be served on the Plaintiff and will drastically
6  reduce the amount of time both parties will have to spend in relation to that discovery.

## 2. The Defendant's Requests For Admissions Are Relevant To The Plaintiff's Claims Of Trademark Invalidity.

9   Notwithstanding the Plaintiff's claims to the contrary, each of the Defendant's Requests For
10  Admissions is targeted to narrow issues concerning the prima facie elements of trademark
11  invalidity, as well as trademark infringement - the primary issues in this case. In its Declaratory
12  Judgment Complaint, it appears, although it is not entirely clear, that the Plaintiffs primarily alleges
13  that although they admittedly sell the furniture covered by the Defendant's trademarks, the
14  Defendant's trademarks are invalid because the designs are in the public domain, were procured by
15  fraud, are functional, are generic, descriptive or lacks secondary meaning. See generally Plaintiff's
16  Declaratory Judgment Complaint. Knoll has not received any further details of significance in
17  support of these boilerplate defenses.
18      As this Court is well aware, to establish secondary meaning for a three dimensional
19  registered trademark, the list of factors a court looks to include (1) consumer testimony of actual
20  confusion and (2) evidence of intentional copying. Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529
21  U.S. 205, 211 (2000). Further, "[r]egistered marks are endowed with a strong presumption of
22  validity" against genericness and the defendant has the burden of overcoming this presumption to
23  prove the mark's genericness. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1135 (9th
24  Cir.2006).
25      A careful review of Defendant's Requests for Admissions reveals that they deal directly
26  with the issues relating to the validity of Knoll's trademarks, and in particular, the source of the
27  original designs, the validity and enforceability of the Knoll's trademarks, the Plaintiff's intentional
28  copying of the Mies van der Rohe designs as well as the Knoll's ownership rights to those

- 8 -

trademarks.[2] For example,

**REQ. FOR ADMISSION 82:**
Admit that Plaintiff offers for sale reproductions of chairs that were intended to copy the look of the Barcelona Chair sold by Knoll.

**REQ. FOR ADMISSION 86:**
Admit that Plaintiff sells reproductions of stools that were intended to copy the look of the Barcelona Stool sold by Knoll.

**REQ. FOR ADMISSION 90:**
Admit that Plaintiff imports reproductions of couches that were intended to copy the look of the Barcelona Couch sold by Knoll.

**REQ. FOR ADMISSION 96:**
Admit that Plaintiff advertises reproductions of tables that were intended to copy the look of the Barcelona Table sold by Knoll.

**REQ. FOR ADMISSION 104:**
Admit that Plaintiff distributes reproductions of chairs that were intended to copy the look of the Flat Brno Chair sold by Knoll.

---

[2] For the Court's ease of reference, Knoll has categorized the RFAs attached to Phil Green's Declaration as Exhibit 1, by subject matter as follows:

RFA 55 - 79: Admissions regarding Alphaville's sales, distribution, imports and advertising of each individual item of the Barcelona Collection;

RFA 80 - 104; 267 - 296; 321 - 537: Admissions regarding Alphaville's intentional copying of each individual item of the Barcelona Collection;

RFA 104 - 144: Admissions regarding the advertising, production and sale of the infringing products.

RFA 145 - 150: Admissions by Alphaville that it was never authorized by Knoll to sell the infringing products.

RFA 151 - 160: Admissions by Alphaville concerning its intentional infringement.

RFA 161 - 225: Admissions by Alphaville regarding actual and likelihood of confusion between Knoll's Barcelona Collection and the infringing products.

RFA 226 - 266: Admissions concerning Knoll's rights and continuous use in the Mies van der Rohe designs.

RFA 297 - 321: Admissions by Alphaville concerning willful intentional infringement;

RFA 539 - 547: Authentication of Alphaville website statements.

**REQ. FOR ADMISSION 267:**
Admit that Plaintiff has imported furniture that was intentionally designed and manufactured to copy the look of the Barcelona Chair as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,893,025.

**REQ. FOR ADMISSION 273:**
Admit that Plaintiff has sold furniture that was intentionally designed and manufactured to copy the look of the Barcelona Stool as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,894,977.

**REQ. FOR ADMISSION 279:**
Admit that Plaintiff has offered furniture for sale that was intentionally designed and manufactured to copy the look of the Barcelona Couch as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,894,980.

**REQ. FOR ADMISSION 285:**
Admit that Plaintiff has advertised furniture that was intentionally designed and manufactured to copy the look of the Barcelona Table as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,894,979.

**REQ. FOR ADMISSION 291:**
Admit that Plaintiff has distributed furniture that was intentionally designed and manufactured to copy the look of the Barcelona Flat Brno Chair as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,894,978.

**REQ. FOR ADMISSION 292:**
Admit that Plaintiff has imported furniture that intentionally copied the name which was identified by the mark that is the subject of Knoll's Trademark Registration 772,313.

**REQ. FOR ADMISSION 293:**
Admit that Plaintiff has sold furniture that intentionally copied the name which was identified by the mark that is the subject of Knoll's Trademark Registration 772,313.

**REQ. FOR ADMISSION 294:**
Admit that Plaintiff has offered furniture for sale that intentionally copied the name which was identified by the mark that is the subject of Knoll's Trademark Registration 772,313.

**REQ. FOR ADMISSION 295:**
Admit that Plaintiff has advertised furniture that intentionally copied the name which was identified by the mark that is the subject of Knoll's Trademark Registration 772,313.

**REQ. FOR ADMISSION 296:**
Admit that Plaintiff has distributed furniture that intentionally copied the name which was identified by the mark that is the subject of Knoll's Trademark Registration 772,313.

**REQ. FOR ADMISSION 321:**
Admit that following receipt of a notice letter from defendant Knoll, Plaintiff advertised furniture that was intentionally designed and manufactured to copy the look of the Barcelona Table as depicted in the configuration shown in the picture within Knoll's Trademark Registration 2,894,979.

**REQ. FOR ADMISSION 546:**
Admit that the text "The above chair is Alphaville Design's Exposition Chair. It is not the "Barcelona chair"® by Knoll. We are not affiliated with Knoll Inc. Patents for this 1929 design were never registered and do not exist today." was placed on the website at www.alphavilledesign.com/details_details_details by Plaintiff or Plaintiff's agent.

**REQ. FOR ADMISSION 547:**
Admit that the text described in RFA 492 .was on said website during 2007 and 2008.

Green Decl. Exh. 1.

What Knoll has learned to date is that Alphaville has intentionally copied the products sold by Knoll to associate themselves with the reputation and marketability of the "original Knoll Barcelona Collection." Khachatourian Decl. Exh. Q, p.95, 141, 239. Through these RFAs, Knoll simply seeks to reconcile Alphaville's inconsistent statements in its pleadings, discovery and to this court in time to defend against Alphaville's motion for summary judgment on invalidity. As a result, the Plaintiff's Motion should be denied.

### 3. Knoll's Second Set of RFAs Are A Direct Result of Alphaville's Refusal to Comply with Its Discovery Obligations.

Knoll's Second Set of RFAs are a direct result of Alphaville's refusal to respond to Knoll's discovery requests in a straightforward manner or in accordance with the FRCP. Alphaville has consistently refused to take a clear position on its invalidity defenses or to produce information it claims supports those positions. A cursory review of Alphaville's discovery responses indicate that Alphaville has refused to produce documents in support of its affirmative defenses on claims of "privilege" and has not produced critical evidence of direct consumer testimony concerning the Barcelona Collection. Khachatourian Decl. Exh. O - P and S. Alphaville has also stated in open

court that various German and Spanish patents may exist concerning the Mies van der Rohe designs at issue in this case *but have not yet produced these so called patents despite the fact that Knoll called for the production of these documents in March.*  Khachatourian Decl. Exh. Q, p. 157 - 158. Alphaville has also claimed in open court that the trademarks at issue do not enjoy secondary meaning, yet Alphaville has admitted that it intentionally copied Knoll's Original Barcelona Chair and paid certain internet pay per click companies for the search terms such as "Barcelona Chair" and "Mies van der Rohe".  Khachatourian Decl. Exh. Q, p. 83 - 84, 196.  Knoll also has reason to believe that Alphaville paid for the search term "Knoll" on the internet to direct sales traffic to its website.  Khachatourian Decl. Exh. Q.  Knoll propounded these RFAs to simply "pin" Alphaville down on its never ending positions.  Accordingly, Alphaville's motion should be denied.

### 4.  Alphaville Has Consistently Delayed Discovery In This Case.

Alphaville has consistently delayed discovery in this case by requesting an extension for almost every action scheduled in this case.  Since filing this action in 2007, Alphaville has requested at least nine extensions, from extending Alphaville's response deadline to Knoll's counterclaims because Alphaville's counsel was attending the Grammys, to responding to discovery because either Alphaville's principals or Alphaville's attorneys were on vacation or traveling, and requesting a delay in motion practice for the same reasons.  Khachatourian Decl. at ¶ 4.  Similarly, Knoll's document requests have been pending since March of this year, and Alphaville just began making documents available for inspection on July 22, 2008.  Alphaville's request for a stay of Knoll's RFAs falls fairly within Alphaville's strategy to delay, and therefore its motion should be denied.

### D.  This Case Is In Dire Need Of A Special Master.

Given the sheer volume of discovery disputes between the parties, and the number of motions currently filed involving discovery, Knoll urges the Court to exercise its discretion and order the parties to meet and confer to provide the Court with three potential candidates for a special master for discovery purposes.  Knoll has consistently asked Alphaville to stipulate to a special master, but Alphaville has refused.  Khachatourian Decl. Exh. R.  Current discovery disputes include:  (1) Alphaville's refusal to meet and confer regarding the protective order even though

ordered to do so at the July 21 hearing; (2) Alphaville's refusal to produce relevant documents it intends to rely on in support of its invalidity defenses such as the purported German and Spanish patents; (3) Alphaville's placing of unreasonable restrictions on Knoll's document review at Alphaville's facility, which has caused a delay in production and encourages Alphaville's staff to disrupt the documents inspected, remove and add to what has already been reviewed, and ultimately to place into question the completeness of the documents reviewed; and (4) Alphaville's refusal to pay for certain copying charges even though it agreed to at the July 21 hearing. As the Court can see, this case is in need of judicial supervision with respect to discovery to ensure that the parties will be ready for a prompt trial.

### III.   CONCLUSION

For the foregoing reasons, Knoll respectively requests that the Court deny Alphaville's Motion or in the alternative, order the parties to agree to a special master for discovery purposes.

Dated: August 25, 2008                    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

/s/ Karineh Khachatourian
By:   KARINEH KHACHATOURIAN
        Attorneys for Defendant and Counterclaimant,
        KNOLL, INC.

*OF COUNSEL:*
GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY 10016-0601
Telephone: (212) 684-3900
Facsimile: (212) 684-3999

4412349v.3