KARINEH KHACHATOURIAN (SBN 202634)
Email: kkhachatourian@mintz.com
JEFFREY M. RATINOFF (SBN 197241)
Email: jratinoff@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
5 Palo Alto Square - 6th Floor
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 251-7700
Facsimile:   (650) 251-7739

GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY  10016-0601
Telephone:  (212) 684-3900
Facsimile:   (212) 684-3999

Attorneys for Defendant and Counterclaimant,
KNOLL, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHAVILLE DESIGN, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KNOLL, INC., a Delaware corporation,<br><br>　　　　　Defendant.<br><br>———————————————————<br><br>AND RELATED COUNTERCLAIMS. | Case No. 07-CV-05569 MHP<br><br>**KNOLL, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   December 15, 2008<br>Time:   2:00 p.m.<br>Judge:  Honorable Marilyn H. Patel<br>Room: Courtroom 15, 18th Floor<br><br>Complaint filed:   November 1, 2007<br>Trial Date:          None set |

TO PLAINTIFF AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 15, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 15, 18th Floor of the Honorable Marilyn H. Patel, located at 450 Golden Gate Avenue, San Francisco, California, Defendant and Counterclaimant Knoll, Inc. ("Knoll") will, and hereby does move this Court pursuant to Federal Rule of Civil Procedure ("FRCP") 56(b) and applicable case law for an Order Granting Partial Summary Judgment that:

(1)      Under a November 1, 1965 Agreement (the "1965 Letter Agreement"), Ludwig Mies van der Rohe ("Mies") assigned all worldwide right, title, and interest in the designs in the Barcelona Chair, the Barcelona Stool, the Barcelona Table, the Barcelona Couch, and the Flat Brno Chair (collectively the "Barcelona Collection") without limitation and the use of Mies' name in connection with the Barcelona Collection to Knoll's predecessor, Knoll Associates, Inc.;

(2)      Through the 1965 Letter Agreement and subsequent good chain of title, at the time Knoll registered its trademarks for the designs in the Barcelona Collection, Knoll owned all rights, title and interest in the those designs;

(3)      Knoll accurately represented its ownership of the Barcelona Collection designs to the United States Patent and Trademark Office ("USPTO") at the time Knoll applied to register the trademarks for the Barcelona Collection;

(4)      Alphaville's Sixth Affirmative Defense (Estoppel) and Seventh Affirmative Defense (Invalidity of Trademarks and Trade Dress; Subject to Cancellation) should be stricken and/or dismissed to the extent that they rely and/or are based upon Knoll allegedly committing fraud on the USPTO when Knoll declared that Mies assigned all rights, title and interest to Knoll Associates, Inc. by the 1965 Letter Agreement; and

(5)      Alphaville's Tenth Affirmative Defense (Fraud and Lack of Examination in Procurement of Trademark Registration) asserted in response to Knoll's Counterclaims should be stricken and/or dismissed in its entirety because it wholly relies upon Knoll allegedly committing fraud on the USPTO by declaring that Mies assigned all rights, title and interest to Knoll Associates, Inc. by the 1965 Letter Agreement.

This Motion is made based on the undisputed facts and/or as a matter of law that : (a) under

- 1 -

1  the 1965 Letter Agreement, Mies assigned all worldwide right, title, and interest in the designs in

2  the Barcelona Collection without limitation and the use of Mies' name in connection with the

3  Barcelona Collection to Knoll's predecessor, Knoll Associates, Inc.; (b) Knoll had good title to the

4  Barcelona Collection at the time Knoll applied to register the trademarks for the Barcelona

5  Collection; (c) Knoll accurately represented its ownership of the Barcelona Collection to the

6  USPTO at the time Knoll applied to register the trademarks at issue; (d) two other courts have found

7  that Knoll owns all worldwide right, title, and interest in the Barcelona Collection designs; (e)

8  Alphaville is collaterally estopped from challenging Knoll's ownership rights in the Barcelona

9  Collection; and (f) Alphaville has not provided any evidence to rebut the federal presumption of

10 ownership.

11       This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and

12 Authorities in support thereof, the Declaration of Karineh Khachatourian in support thereof, the

13 Declaration of Lydia Weaver in support thereof, Knoll's Counterclaims filed in this action,

14 Alphaville's Complaint and Answer, and the pleadings and other papers on file herein, and such

15 other written and oral argument as may be presented to the Court.  Knoll respectfully requests that

16 this Court grant its Motion for Partial Summary Judgment that Title to the Designs of Ludwig Mies

17 van der Rohe Lies With Knoll, Inc. ("Motion").

18

19 Dated:  November 3, 2008          Respectfully submitted,

20                                   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

21                                   /s/ Karineh Khachatourian
                                     By:  KARINEH KHACHATOURIAN
22                                       Attorneys for Defendant and Counterclaimant, KNOLL, INC.

23                                   *OF COUNSEL:*

24                                   GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
                                     MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
                                     GOTTLIEB RACKMAN & REISMAN, P.C.
25                                   270 Madison Avenue
                                     New York, NY  10016-0601
26                                   Telephone:  (212) 684-3900
                                     Facsimile:  (212) 684-3999

27

28

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ....................................................1

III.   RELEVANT FACTS ...............................................................................................2

       A.     Litigation History and Provisions In Alphaville's Answer Related to Title...............2

       B.     Knoll Rightfully Obtains Title To The Barcelona Collection Designs......................4

       C.     The Chain of Title from Knoll Associates, Inc. to Defendant Knoll. .......................7

       D.     Trademark Registrations. .............................................................................8

       E.     Requests to Alphaville for Admissions of Authenticity and for Evidence. ...............9

IV.    LEGAL STANDARDS GOVERNING THIS MOTION. ....................................9

V.     PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE TWO
       OTHER COURTS REVIEWING THE 1965 AGREEMENT HAVE FOUND THAT
       IT GRANTED KNOLL FULL WORLDWIDE RIGHT, TITLE AND INTEREST
       TO THE BARCELONA COLLECTION DESIGNS. ...........................................12

VI.    PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE IT IS
       INDISPUTABLE AS A MATTER OF LAW THAT KNOLL OWNS ALL RIGHTS,
       TITLE AND INTEREST IN THE BARCELONA COLLECTION DESIGNS. .................16

       A.     The Plain Language of the 1965 Letter AgreementTransfers Title from Mies
              to Knoll Associates, Inc. ..........................................................................16

       B.     It is Undisputed that All Rights, Title, and Interest to the Barcelona
              Collection Designs Conveyed By The 1965 Agreement Were Passed From
              Knoll Associates to Defendant Knoll. .........................................................20

VII.   PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE
       ALPHAVILLE HAS NOT PRODUCED ANY EVIDENCE SUPPORTING ITS
       ALLEGATIONS OR TO REBUT THE FEDERAL PRESUMPTION OF
       OWNERSHIP. ..........................................................................................21

VIII.  CONCLUSION.........................................................................................23

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO
Case No. 07-CV-05569 MHP

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

*AWL Industries, Inc. v. Site Remediation Services Corp.*,
   92 F. Supp.2d 132 (E.D.N.Y. 2000) .................................................................19

5

*Acevedo-Garcia v. Monroig*,
   351 F.3d 547 (1st Cir.2003) ...........................................................................14

6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................11

7

8

*Bhan v. NME Hosps., Inc.*,
   929 F.2d 1404 (9th Cir.1991) ........................................................................11

9

*Boston Scientific Corp. v. Cordis Corp.*,
   422 F.Supp.2d 1102 (N.D.Cal. 2006) ...........................................................10

10

11

*Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*,
   433 F.2d 686 (2nd Cir. 1980) ........................................................................13

12

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).....................10, 11, 21

13

14

*Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*,
   347 F.Supp.2d 880 (S.D.Cal. 2004) ..............................................................10

15

*Civic Cent. Drive Apartments Ltd. P'ship v. Sw. Bell Video Services*,
   295 F.Supp.2d 1091 (N.D.Cal. 2003) ...........................................................17

16

17

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001) .......................................................................21

18

*Dictaphone Corp. v. Dictamatic Corp.*,
   199 U.S.P.Q. 437 (D. Or. 1978).....................................................................13

19

20

*Durkin v. Shea & Gould*,
   92 F.3d 1510 (9th Cir.1996) ..........................................................................12

21

*FMC Corp. v. Vendo Co.*,
   196 F.Supp.2d 1023 (E.D.Cal. 2002)............................................................10

22

23

*F.T.C. v. Garvey*,
   383 F.3d 891 (9th Cir.2004) ..........................................................................15

24

*Fairbank v. Wunderman Cato Johnson*,
   212 F.3d 528 (9th Cir.2000) ..........................................................................21

25

26

*Federal Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*,
   2005 WL 3325051 (N.D.Cal. Dec 07, 2005)  ................................................21

27

28

*Galli v. Metz,*
   973 F.2d 145 (2d Cir. 1992)..................................................................................19

*Garza v. Marine Transport Lines, Inc.,*
   861 F.2d 23 (2d Cir. 1988)....................................................................................19

*Gasaway v. Northwestern Mut. Life Ins. Co.,*
   26 F.3d 957 (9th Cir.1994) ...................................................................................10

*In re Gault South Bay Litigation,*
   2008 WL 4065843 (N.D.Cal. 2008) .....................................................................10

*Leather Form S.R.L. v. Knoll, Inc.,*
   205 Fed.Appx. 861 (2d Cir. 2006)..............................................................13, 14, 15

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) .......................................11

*Matshushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).........................................11

*Newsguy, Inc. v. Yomtobian,*
   2004 WL 2944051 (N.D.Cal. Dec. 20, 2004) ................................................21, 22

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ........................................................................10, 11

*Omega Importing Corp. v. Petri-Kine Camera Co.,*
   451 F.2d 1190 (2d Cir. 1971)................................................................................13

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)............................................16

*Robi v. Five Platters, Inc.,*
   918 F.2d 1439 (9th Cir. 1990) ........................................................................10, 12

*In re Schimmels,*
   127 F.3d 875 (9th Cir.1997) ...........................................................................12, 14

*Terrell v. DeConna,*
   877 F.2d 1267 (5th Cir.1989) ...............................................................................14

*Tie Tech, Inc. v. Kinedyne Corp.,*
   296 F.3d 778 (9th Cir.2002) .................................................................................21

*Trevino v. Gates,*
   99 F.3d 911 (9th Cir.1996) .............................................................................12, 14

*United States v. King Features Entm't, Inc.,*
   843 F.2d 394 (9th Cir.1988) .................................................................................17

*Werbungs Und Commerz Union Anstalt v. Collectors' Guild, Ltd.,*
   930 F.2d 1021 (2d Cir. 1991)................................................................................19

- iii -

1

**STATE CASES**

*Nichols v. Nichols,*
   306 N.Y. 490, 119 N.E.2d 351 (N.Y. 1954) ..............................................................14

*Petrie v. Trustees of Hamilton College,*
   158 N.Y. 458, 53 N.E. 216 (N.Y. 1899) ...................................................................14

*W.W.W. Associates, Inc. v. Giancontieri,*
   566 N.E.2d 639 (N.Y. 1990) ......................................................................................19

**FEDERAL STATUTES**

15 U.S.C. § 1115 ...........................................................................................................21

15 U.S.C. § 1051 .............................................................................................................2

Fed.R.Civ.P. 56 .................................................................................................... *passim*

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO
Case No. 07-CV-05569 MHP

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.      INTRODUCTION**

3   Defendant and Counterclaim-Plaintiff Knoll, Inc. ("Knoll") has filed its Motion for Partial

4   Summary Judgment to end Alphaville Design Inc.'s ("Alphaville") nuisance allegations and have

5   the Court declare that Knoll owns all world-wide right, title and interest in and to the Barcelona

6   Chair, the Barcelona Stool, the Barcelona Table, the Barcelona Couch, and the Flat Brno Chair

7   (collectively the "Barcelona Collection"), and owns those rights pursuant to an assignment from the

8   architect and designer Ludwig Mies van der Rohe ("Mies") dated November 1, 1965.   Two courts

9   have already reached this conclusion on the same or similar record.  Despite this fact, Alphaville

10  attempts to challenge Knoll's ownership rights to the Barcelona Collection yet again in its Sixth,

11  Seventh, and Tenth Affirmative Defenses.  Alphaville, however, has not provided any evidence to

12  the contrary, nor has it explained how or why two other courts were wrong in reviewing this same

13  issue or why these rulings should not apply in the present case.  Alphaville's absence of evidence,

14  along with the weight of factual and legal authority in Knoll's favor, provides the Court ample

15  reason to grant this motion and have the parties move forward towards adjudicating the more

16  substantive issues in this case.

17  **II.      STATEMENT OF ISSUES TO BE DECIDED**

18  1.      Whether under the November 1, 1965 Agreement (the "1965 Agreement"), Mies

19  assigned all worldwide right, title, and interest in the designs in the Barcelona Collection without

20  limitation and the use of Mies' name in connection with the Barcelona Collection to Knoll's

21  predecessor, Knoll Associates, Inc.

22  2.      Whether Knoll had good title to the Barcelona Collection at the time Knoll applied to

23  register the trademarks for the Barcelona Collection.

24  3.      Whether Knoll accurately represented its ownership of the Barcelona Collection to

25  the United States Patent and Trademark Office ("USPTO") at the time Knoll applied to register the

26  trademarks for the Barcelona Collection.

27  4.      Whether the Court should dismiss Alphaville's Sixth Affirmative Defense (Estoppel)

28  and Seventh Affirmative Defense (Invalidity of Trademarks and Trade Dress; Subject to

1  Cancellation) asserted in response to Knoll's Counterclaims to the extent that they rely and/or are

2  based upon Knoll declaring that Mies assigned all rights, title and interest to Knoll Associates, Inc.

3  by the 1965 Agreement.

4        5.    Whether the Court should dismiss Alphaville's Tenth Affirmative Defense (Fraud

5  and Lack of Examination in Procurement of Trademark Registration) asserted in response to

6  Knoll's Counterclaims because it wholly relies upon Knoll allegedly committing fraud on the

7  USPTO by declaring that Mies assigned all rights, title and interest to Knoll Associates, Inc. by the

8  1965 Agreement.

9        6.    Whether the German and Second Circuit Opinions, which declared that that Knoll

10  owns all world-wide right, title and interest in the Barcelona Collection designs, are binding on the

11  parties to this litigation and this Court.

12  **III.    RELEVANT FACTS**

13        **A.    Litigation History and Provisions In Alphaville's Answer Related to Title.**

14        On November 1, 2007, Plaintiff and Counter-Defendant Alphaville filed this Declaratory

15  Judgment Action seeking Declaratory Relief from Alleged Violations of the Lanham Act, 15 U.S.C.

16  §§ 1051 et seq., against Knoll.  *See* Dkt. No. 1.

17        On January 15, 2008, Knoll filed its Answer and Counterclaims against Alphaville Design,

18  David Lee and Peggy Lee ("the Lees") (collectively "Alphaville") wherein it asserted claims for

19  trademark infringement and false designation of origin under the Lanham Act and unfair compeition

20  and dilution under California law.  *See* Dkt. No. 14.  On February 28, 2008, Alphaville filed its

21  Answer to Knoll's Counterclaims asserting certain affirmative defenses supported by allegations

22  challenging Knoll's title to the designs in the Barcelona Collection and ownership of the trademarks

23  for the Barcelona Collection.  *See, generally,* Dkt. No. 27.

24        Specifically, in support of its Sixth Defense for Estoppel, Alphaville alleges that Knoll is

25  estopped from claiming that any of Alphaville's alleged misconduct violates any of Knoll's rights,

26  in part, because "[Knoll] does not have any license agreement with Mr. van der Rohe that grants

27  Knoll the rights that it alleges in its Counterclaims."   Dkt. No. 27 at ¶¶ 17, 20.

28        In support of its Seventh Affirmative Defense for "Invalidty of Trademarks and Trade

Dress; Subject to Cancellation," Alphaville alleges that Knoll's trademarks in the Barcelona Collection are cancellable by reasons of "misrepresentation and/or fraud." Dkt. No. 27 at ¶¶ 21, 23-24. In support of this defense, Alphaville alleges, in part, that:

> On information and belief, Knoll's applications for the 2004 marks allege that there was a license from Mies van der Rohe to Knoll that included the designs. On information and belief, Counterclaim-Defendants allege that to the extent that these licenses existed, there is strong evidence that Mr. van der Rohe only licensed his name and/or his signature to Knoll to use it on certain furniture, and that Knoll paid Mr. van der Rohe a minimal flat fee for this use. On information and belief, Knoll never had a license for use of the Van der Rohe designs because he did not want to give anyone an exclusive on them and believed they were unprotectible at that time.

Dkt. No. 27 at ¶ 25.

In support of its Tenth Affirmative Defense for "Fraud and Lack of Examination in Procurement of Trademark Registration," Alphaville alleges that Knoll's registrations for the trademarks for the Barcelona Collection "were procured by fraud and by hiding information from the [USPTO] during the registration process." Dkt. No. 27 at ¶ 38. The alleged fraud on the USPTO is that "Knoll alleged, in order to obtain such trademarks, during its trademark registration process that it has a license dated in or about 1965 from Mies van der Rohe for the designs" to the Barcellona Collection. *Id*. at ¶ 41. However, Alphaville alleges that this representation to the USPTO was false and misleading because:

- "On information and belief, in November, 1965 Mr. van der Rohe entered into a contract with Knoll which covered only the right to use Mies van der Rohe's name. None of his designs were covered." *Id*. at ¶ 41a.

- "On further information and belief, Knoll only paid Mies van der Rohe a flat-fee in payments for a ten year period to Knoll's economic advantage based on only having the name license." *Id*. at ¶ 41b.

- "Knoll declared falsely that by an agreement dated November 1, 1965, Mies van der Rohe assigned all rights, title and interest in and to the designs of the Barcelona furniture to Knoll Associates, Inc." *Id*. at ¶ 41d.

Alphaville further alleges on information and belief that Knoll provided the foregoing "incomplete and misleading information to the [USPTO] in its prosecution of the trademarks and trade dress at issue and withheld information that if it had been disclosed would, on information and belief, have lead to a refusal to register the designs." *Id*. at ¶ 41c.

- 3 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO
Case No. 07-CV-05569 MHP

1       In summary, Alphaville asserts in defense of Knoll's counterclaims that Knoll does not now

2  have and did not have good title in Mies' designs at the time Knoll applied to register its trademarks

3  for the Barcelona Collection.  In addition, Alphaville asserts that Knoll committed fraud before the

4  Patent and Trademark Office when Knoll declared that Mies assigned all rights, title and interest to

5  Knoll Associates, Inc. by an agreement dated November 1, 1965.

6         **B.**      **Knoll Rightfully Obtains Title To The Barcelona Collection Designs.**

7       Mies is well-known as a designer and architect.  Dkt. No. 14 at ¶¶ 70-71.  His works have

8  been and continue to be displayed in numerous museums worldwide, including the Museum of

9  Modern Art (MoMA) in New York and the San Francisco Museum of Modern Art (SFMOMA).

10  Among his works are five pieces of furniture which have come to be known as part of the Barcelona

11  Collection.  *See* Dkt. No. 14 at ¶72-79; *see also* Declaration of Lydia Weaver in Support of Knoll's

12  Motion for Partial Summary Judgment that Title to the Designs of Ludwig Mies Van Der Rohe Lies

13  With Knoll, Inc. ("Weaver Decl."), ¶¶ 2, 25-30.  David Lee, Alphaville's Rule 30(b)(6)

14  representative, further conceded that Mies designed the Barcelona Collection.  Declaration of

15  Karineh Khachatourian in Support of Knoll's Motion for Partial Summary Judgment that Title to

16  the Designs of Ludwig Mies Van Der Rohe Lies With Knoll, Inc. ("Khachatourian Decl."), Exh. A

17  at pp. 97-105.

18       Knoll first acquired rights in the designs in the Barcelona Collection from Ludwig Mies van

19  der Rohe in the 1950s.  Weaver Decl., ¶ 5-6.  Since that time, Knoll continuously has been

20  promoting designs in the Barcelona Collection.  *Id.* at ¶¶ 2-4, *and* Exh. 1;

21       In 1953, Mies entered into a written license agreement with Knoll Associates, Inc. (a Knoll

22  predecessor in interest) in which Mies licensed the right to the exclusive manufacture and sale of

23  the Barcelona Chair, the Barcelona Stool and the Barcelona Table to Knoll Associates, Inc. in the

24  U.S., Canada, France, Germany, and Belgium.  Weaver Decl., ¶ 5 *and* Exh. 2.  In 1959, the 1953

25  agreement was amended to include the Brno Chair.  *Id.* at ¶ 6 and Exh. 3.  In 1965, Mies entered

26  into an agreement with Knoll Associates, Inc. (the "1965 Letter Agreement") in the form of a letter

27  dated November 1, 1965 . *Id.* at ¶¶ 7-9 and Exh. 4; *see also* Dkt. No. 1 at ¶ 19;10-11; ¶ 36, 9:24-

28  10:1-4.  The 1965 Letter Agreement was signed by D. R. Jomo on behalf of Knoll Associates, Inc.

- 4 -

1    and was signed by Mies on November 8, 1965, under the notation "Agreed and Accepted."  Weaver

2    Decl., Exh. 4.

3          As relevant here, the 1965 Letter Agreement states in the first paragraph, that Knoll

4    Associates, Inc. is "now producing nine (9) items of furniture to your [Mies] design listed on the

5    attached Exhibit 1."[1]  Weaver Decl., Exh. 4.  The paragraph goes on to state that Mies had seen

6    samples of the products produced by Knoll Associates, Inc. and that he had reviewed their methods

7    of manufacturing for the items identified in Exhibit 1.  *Id.*  Mies then confirms "that these methods

8    produce furniture which conforms in all respects to the standards and specification of your [Mies]

9    designs."  *Id.*

10         The second paragraph of the 1965 Letter Agreement provides as follows:

11                 You hereby sell, assign and convey ***all of your right, title and interest***
                   ***in your designs*** and the exclusive use of your name in connection
12                 with the sale in the United States and elsewhere, of the furniture of
                   your design identified in Exhibit 1.  .[2]
13

14   Weaver Decl., Exh. 4 (emphasis added).  The second paragraph also sets forth an important

15   representation by Mies:

16                 You have represented to us that no other person, firm, corporation or
                   entity (other than you, our company, its subsidiaries, licensees and
17                 sub-licensees) is now expressly authorized by you to sell any furniture
                   of your design (including, ***without limitation***, the items on Exhibit 1)
18                 in ***any part of the world***.

19   Weaver Decl., Exh. 4 (emphasis added).

20         The third paragraph of the 1965 Letter Agreement permitted Knoll Associates, Inc. to

21   advertise the facts set forth in Paragraphs one and two and confirmed that Knoll Associates, Inc.

22   _____

23   [1] Exhibit 1 to the 1965 Letter Agreement identifies the following items: Barcelona Chair; Barcelona
     Stool (cushion seat); Barcelona Table; Barcelona Stool (sling seat); Tugendhat Chair; Brno Chair;
24   MR Dining Chair; MR Lounge Chair; and Couch.  Weaver Decl., Exh. 4.  Exhibit 1 to the 1965
     Letter Agreement also identifies all of these items by their Knoll item numbers.  *Id.*
25
     [2] MoMA does not own the rights to the designs in the Barcelona Collection.  While Mies did
26   bequeath his rights in certain other designs to MoMA, he assigned his rights in the Barcelona
     Collection to Knoll Associates, Inc. <u>prior</u> to his death and thus the rights in the Barcelona Collection
27   did not pass to MoMA.  Accordingly, Knoll does not pay MoMA a royalty on sales of the
     Barcelona Collection.  *See* Weaver Decl., ¶ 33.
28

1  was the "only authorized manufacturer" of furniture designed by Mies.  Weaver Decl., Exh. 4.  In

2  the same paragraph, Knoll Associates, Inc. stated "that you [Mies] will not authorize any one to

3  manufacture furniture of your design or approve the production methods or standards and

4  specifications of any other producer of furniture of your design."  *Id.*

5       In Paragraph 4 of the 1965 Letter Agreement, Mies authorized Knoll Associates, Inc. "to

6  commence, prosecute, and maintain in any jurisdiction such lawsuits and proceedings, in your name

7  and otherwise, as we, in our sole discretion, may deem advisable in order to protect the <u>exclusive</u>

8  <u>world wide rights sole, assigned, and conveyed above</u>."  Weaver Decl., Exh. 4 (emphasis added).

9  Additionally, the paragraph provides that "[a]ny compensatory damages which may be collected

10  shall be retained by us [Knoll Associates, Inc.]" and that '[w]e [Knoll Associates, Inc.] agree to

11  indemnify you [Mies] against and to hold you harmless from any judgment, costs, expenses, or

12  other liability entered or incurred in or in connection with any such suit or proceeding commenced

13  by us or by you at our request."  *Id.*

14       Paragraph 5 of the 1965 Letter Agreement provides that Knoll Associates, Inc. would pay

15  Mies $150,000 over a ten year period "[i]n consideration of the ***sale, assignment and conveyance***

16  ***hereunder of your right, title and interest in your designs*** and the exclusive use of your name in

17  connection with the sale in the United States and elsewhere of the furniture of your design." Weaver

18  Decl., Exh. 4 (emphasis added).

19       Paragraph 6 of the 1965 Letter Agreement provides in relevant part that:

20            [t]his agreement sets forth our entire understanding with you and
21            supersedes all of our prior arrangements with you, including the
             arrangements set forth in the letter agreements between you and our
22            predecessor company dated May 19, 1953 and May 1, 1959.

23  Weaver Decl., Exh. 4.

24       Paragraph 7 of the 1965 Letter Agreement includes a choice of law provision and provides

25  that the "agreement shall be construed in accordance with the laws of the State of New York."

26  Weaver Decl., Exh. 4.

27       In summary, by the 1965 Letter Agreement, Mies conveyed all worldwide right, title, and

28  interest in the designs in the Barcelona Collection without limitation and the use of Mies' name in

- 6 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1  connection with the Barcelona Collection to Knoll Associates, Inc.  The 1965 Letter Agreement on

2  its face is clear and unambiguous.

3      **C.      The Chain of Title from Knoll Associates, Inc. to Defendant Knoll.**

4          At the time of the 1965 Letter Agreement, when Knoll Associates, Inc. had obtained all

5  right, title and interest in the designs of the Barcelona Collection without limitation and the use of

6  Mies' name in connection with the Barcelona Collection, Knoll Associates, Inc. was the 100%

7  owned subsidiary of Art Metal-Knoll Corporation.  Weaver Decl., ¶ 10 *and* Exh. 5.  Knoll

8  Associates, Inc. merged into Art Metal-Knoll Corporation of Philadelphia, Pennsylvania in

9  February 1968.  *Id.* at ¶ 11 *and* Exh. 5.

10         In December 1970, Art Metal-Knoll Corporation amended its Certificate of Incorporation to

11 change its name to Knoll International, Inc.  *Id.* at ¶ 12 *and* Exh. 6.

12         On June 30, 1978, Knoll International, Inc. assigned and conveyed to KII, Inc., a Delaware

13 Corporation, all of its assets, properties and business other than certain real property in Montgomery

14 County, Pennsylvania.  Weaver Decl., ¶ 13 *and* Exh. 7.  In July of 1978, KII, Inc. amended its

15 Certificate of Incorporation to change its name to Knoll International, Inc.  *Id.* at ¶ 14 *and* Exh. 8.

16 On April 16, 1987, Knoll International, Inc. filed a Restated Certificate of Incorporation with the

17 State of Delaware reflecting the name change to Knoll International, Inc. from KII, Inc.  *Id.* at ¶ 15

18 *and* Exh. 9.

19         On July 26, 1990, Westinghouse Electric Corporation and Westinghouse Acquisition

20 Corporation entered into an Asset Purchase Agreement with Knoll International, Inc., Knoll

21 Nevada, Inc. and Knoll International Holdings, Inc. (then called "Sellers"), to purchase from the

22 Sellers assets which included all rights of Sellers in and to the Barcelona Collection.  Weaver Decl.,

23 ¶ 16 *and* Exh. 10.  On August 31, 1990, the Asset Purchase Agreement of July 26, 1990 was

24 amended to have Westinghouse Electric Corporation become the transferee of the mentioned assets.

25 *Id.* at ¶ 17 *and* Exh. 11.

26         On August 31, 1990 the assets of Knoll International, Inc., Knoll Nevada, Inc. and Knoll

27 International Holdings, Inc. were transferred to Westinghouse Electric Corporation.  Weaver Decl.,

28 ¶ 18 *and* Exh. 12.  On August 31, 1990, Westinghouse Acquisition Corporation filed a Certificate of

1  Amendment of Certificate of Incorporation changing its name to Knoll International, Inc. (the

2  "new" Knoll International, Inc.).  *Id.* at ¶ 19 *and* Exh. 13.

3          On October 15, 1990 (the new) Knoll International, Inc. (formerly Westinghouse

4  Acquisition Corporation) received from Westinghouse Electric Corporation, as a capital

5  contribution, all the assets acquired by Westinghouse Electric Corporation from the original Knoll

6  International Inc., Knoll Nevada, Inc. and Knoll International Holdings, Inc.  *Id.* at ¶ 20 *and* Exh.

7  14.  This included all rights in the Barcelona Collection.  *Id.*

8          On January 22, 1992 (the new) Knoll International Inc. (formerly Westinghouse Acquisition

9  Corporation) and a wholly owned subsidiary of Knoll North America, Inc., merged into Knoll North

10  America, Inc.  Weaver Decl., ¶ 21 *and* Exh. 15.  Knoll North America, Inc. acquired all property

11  rights of (the new) Knoll International, Inc. by virtue of the merger.  *Id.*.

12          On February 29, 1996 T.K.G. Acquisition Sub. Inc., The Knoll Group, Inc. and Knoll North

13  America, Inc. agreed to have T.K.G. Acquisition Sub. Inc. and The Knoll Group, Inc. merge into

14  Knoll North America, Inc.  Weaver Decl.,¶ 22 *and* Exh. 16.  On February 29, 1996, Knoll North

15  America, Inc. then changed its name to Knoll, Inc.  The name change from Knoll North America,

16  Inc. to Knoll, Inc. occurred contemporaneously with and pursuant to the Agreement of Merger.  *Id.*

17  at ¶ 23 *and* Exh. 16.

18          In March 1997, Knoll, Inc. merged with and into T.K.G. Acquisition Corp. under the name

19  of Knoll, Inc.  Weaver Decl., ¶ 24 *and* Exh. 17.

20          As a result of the aforementioned agreements between Mies and Knoll Associates, Inc.,

21  Knoll's predecessor-in-interest, and as a result of subsequent assignments and transfers, title to the

22  designs in the Barcelona Collection and the use of Mies' name associated with such commercial

23  activity transferred from Mies to Knoll Associates, Inc. and later passed through assignments and

24  transfers to the present day Knoll.  Knoll remains the holder of said title.  Knoll is the present holder

25  in title to the designs and has been since at least 1997, well before it applied for trademark

26  registrations for the designs.  *See* Weaver Decl. at ¶ 25.

27          **D.      Trademark Registrations.**

28          After decades of continuous use, in 2003, Knoll applied for and, in 2004, was granted

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1   trademark registrations from the United States Patent and Trademark Office for the five designs in

2   the Barcelona Collection: the Barcelona Chair (Registration No. 2,893,025), the Barcelona Stool

3   (Registration No. 2,893,977), the Barcelona Table (Registration No. 2,893,979), the Barcelona

4   Couch (Registration No. 2,893,980), and the Flat Brno Chair (Registration No. 2,893,978).  Weaver

5   Decl., ¶¶ 25-30 *and* Exhs. 18-22; Dkt. No. 1 at ¶ 19;10-11; ¶ 36, 9:24-10:1-4; Dkt. No. 27 at ¶ 87,

6   7:6-7; ¶ 88, 7:10-11; ¶ 89, 7:14-15; ¶ 90, 7:18-19; ¶ 91, 7:22-23.

   **E.      Requests to Alphaville for Admissions of Authenticity and for Evidence.**

8        Alphaville has refused to produce any information supporting its affirmative defenses on

9   this issue yet continues to act willfully blind to the unamiguous record.  For example, in response to

10  Alphaville's Request For Production, Knoll produced copies of the 1953, 1959 and 1965 Letter

11  Agreements on June 13, 2008.  Knoll requested that Alphaville admit the authenticity of these

12  Letter Agreements, but Alphaville refused to do so.  *See e.g.* Khachatourian Decl., Exh. B (Request

13  and Response Nos. 15-20).  Moreover, although Knoll has requested that Alphaville produce all

14  documents demonstrating that Knoll committed fraud on the U.S. Patent and Trademark Office and

15  all documents supporting Alphaville's Tenth Affirmative Defense of fraud and lack of examination

16  in procurement of the trademark registration, Alphaville has not produced any documents in support

17  of its Tenth Affirmative Defense on the ground that such documents are protected by the attorney-

18  client and/or work product privileges.  *See e.g.* Khachatourian Decl., Exh. C (Request and Response

19  No. 110) *and* ¶ 5.

20       In view of Alphaville's statements in its Answer quoted above questioning Knoll's

21  ownership of the Barcelona Collection designs, and in light of its refusal to admit that Knoll has all

22  world wide rights to the designs in the Barcelona Collection, Knoll is making the present motion for

23  Partial Summary Judgment to "quiet title" to confirm ownership of the designs in the Barcelona

24  Collection, and as a result, defeat its Sixth and Seventh Affirmative Defenses in part, and its Tenth

25  Affirmative Defense in its entirety.

26  **IV.    LEGAL STANDARDS GOVERNING THIS MOTION.**

27       Federal Rule of Civil Procedure 56 ("Rule 56") empowers the Court to enter summary

28  judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and

- 9 -

1   inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327, 106

2   S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The Court may also grant partial summary judgment as to any

3   part of a claim or affirmative defense.  *See* Fed.R.Civ.P. 56(a)-(d); *see also In re Gault South Bay*

4   *Litigation*, 2008 WL 4065843 *2 (N.D.Cal. 2008) ("purpose of partial summary judgment 'is to

5   isolate and dispose of factually unsupported claims or defenses'") (quoting *Celotex*, 477 U.S. at

6   323-24).  In that regard, a court may grant partial summary judgment on "clearly defined, distinct

7   issues."  *FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023, 1029 (E.D.Cal. 2002) (citing *Robi v. Five*

8   *Platters, Inc.*, 918 F.2d 1439, 1441-42  (9th Cir. 1990)); *accord Church Mutual Ins. Co. v. U.S.*

9   *Liability Ins. Co.,* 347 F.Supp.2d 880, 882 (S.D.Cal. 2004) (citing same).  In particular, the moving

10  party is entitled to have an affirmative defense determined in its favor as a matter of law.

11  Fed.R.Civ.P. 56(c)(d); *Celotex*, 477 U.S. at 323-24 (legal sufficiency of an affirmative defense, on

12  which defendant bears burden of proof at trial, may be challenged on motion for summary judgment

13  by plaintiff demonstrating there is an absence of evidence to support an essential element of

14  defendant's theory); *accord Boston Scientific Corp. v. Cordis Corp.*, 422 F.Supp.2d 1102, 1106-

15  1107 (N.D.Cal. 2006) (granting partial summary judgment striking, in part, affirmative defenses of

16  invalidity and priority of inventorship).

17        On a motion for summary judgment, a moving party without the ultimate burden of

18  persuasion at trial has both the initial burden of production and the ultimate burden of persuasion.

19  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, (9th Cir. 2000).  "In

20  order to carry its burden of production, the moving party must either produce evidence negating an

21  essential element of the nonmoving party's claim or defense or show that the nonmoving party does

22  not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

23  *Nissan*, 210 F.3d at 1102; *see also Celotex*, 477 U.S. at 319-20, 326-27.  However, mere allegations

24  or unsubstantiated denials do not, without more, generate a genuine issue of material fact.  *Gasaway*

25  *v. Northwestern Mut. Life Ins. Co*., 26 F.3d 957, 959-60 (9th Cir.1994).

26        In order to carry its ultimate burden of persuasion on the motion, Knoll as the moving party

27  must persuade the court that there is no genuine issue of material fact.  *Nissan*, 210 F.3d at 1102.  In

28  that regard, summary judgment is appropriate "if the pleadings, depositions, answers to

- 10 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

2   genuine issue as to any material fact and that the moving party is entitled to summary judgment as a

3   matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is genuinely in dispute only if it reasonably

4   can be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106

5   S.Ct. 2505, 91 L.Ed.2d 202, (1986).  "Where the record, taken as a whole, could not lead a rational

6   trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matshushita Elec.*

7   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8          Knoll discharges its burden by negating an essential element of the non-moving party's

9   claim or defense, by producing affirmative evidence of such negation.  *Nissan*, 210 F.3d at 1105.

10  Once Knoll satisfies this initial hurdle, the burden then shifts to Alphaville to "go beyond the

11  pleadings, and by her own affidavits, or by the 'depositions, answers to interrogatories, and

12  admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." '

13  *Celotex*, 477 U.S. at 324 (citations omitted); *Nissan*, 210 F.3d at 110.

14         Where the moving party discharges its burden by showing an absence of evidence to support

15  an essential element of a claim or defense, however, it is not required to produce evidence showing

16  the absence of a material fact on such issues, or to support its motion with evidence negating the

17  non-moving party's claim.  *Nissan*, 210 F.3d at 1106; *see also Lujan v. Nat'l Wildlife Fed'n*, 497

18  U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

19  1409 (9th Cir.1991).  Once Knoll shows an absence of evidence, the burden then shifts to

20  Alphaville produce "specific evidence, through affidavits or admissible discovery material, to show

21  that the dispute exists." *Bhan*, 929 F.2d at 1409.

22         Here, Alphaville has the burden of proving, as part of its Sixth, Seventh and Tenth

23  Affirmative Defenses.  As set forth below, Alphaville has not, and cannot, disclose the existence of

24  any significant probative evidence tending to support its allegations relating to Knoll's alleged lack

25  ownership of the Barcelona Collection designs.  Accordingly, there is no genuine issue of material

26  fact and the entry of partial summary judgment on Alphaville's the Sixth, Seventh and Tenth

27  Affirmative Defenses and the issues related to Knoll's ownership is appropriate.

28  / / /

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

**V.    PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE TWO OTHER COURTS REVIEWING THE 1965 AGREEMENT HAVE FOUND THAT IT GRANTED KNOLL FULL WORLDWIDE RIGHT, TITLE AND INTEREST TO THE BARCELONA COLLECTION DESIGNS.**

Alphaville attempts to base its Sixth, Seventh and Tenth Affirmative Defenses on allegations that the 1965 Letter Agreement did not convey all worldwide right, title and interest to the Barcelona Collection to Knoll Associates, Inc., Knoll's predecessor in interest.  *See* Dkt. No. 27 at ¶¶ 17, 20, 21, 23-25, 38-41.  Alphaville's attempt to do so is barred by the doctrine of collateral estoppel because two courts have already interpreted the clear and unambiguous language of the 1965 Letter Agreement to have granted Knoll's predecessor in interest full ownership of the Barcelona Collection.  *See* Weaver Decl., ¶¶ 31-32 *and* Exhs. 24-25.

A partial summary judgment motion brought pursuant to Rule 56(c) is a proper way to establish collateral estoppel, or issue preclusion, even where such a ruling would not necessarily dispose of an entire claim or defense.  *Robi v. Five Platters, Inc.*, 918 F.2d at 1441-42.  In that regard, collateral estoppel bars re-litigation of issues adjudicated in an earlier proceeding if three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be re-litigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.  *Durkin v. Shea & Gould*, 92 F.3d 1510, 1516 (9th Cir.1996).   In this and other circuits, complete identity of parties in the two suits is ***not*** required and, collateral estoppel may be asserted against a non-party by a party to a prior suit, under the theory of non-mutual collateral estoppel.  *See Trevino v. Gates*, 99 F.3d 911, 923-24 (9th Cir.1996); *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1997)

The first element of collateral estoppel is easily met here because the fundamental issue - whether the 1965 Letter Agreement constituted an unambiguous assignment of all rights, title and interest to the Barcelona collection from Mies to Knoll - has already been decided by two other courts and is identical to the issue which Alphaville seeks to re-litigate.  Likewise, the second element -- final disposition on the merits - is also easily met as both proceedings ended with a final adjudication of the issue on the merits in favor of Knoll.

- 12 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1   In *Knoll International Sp.A. v. La Nuova Casa Mobelhandes GmbH & Co. KG*, Case No.

2   308 O 462/03, pronounced on 21 January, 2004 ("the German Action"), the District Court of

3   Hamburg, Germany determined that Mies, by the 1965 Letter Agreement, conveyed all right, title

4   and interest to the Barcelona Collection to Knoll Associates, Inc., Knoll's predecessor in interest.[3]

5   Weaver Decl., ¶ 31 *and* Exhs. 23, 24.  The Hamburg court itemized the various agreements and

6   transfers, as set out above, and concluded that Knoll's predecessor-in-interest, Knoll Associates,

7   Inc., was granted all exclusive world wide right, title and interest to the designs and that title

8   properly passed to Knoll.  *See* Weaver Decl., Exh. 24 at pp. 21-30.  In summary, the Hamburg court

9   found that the 1965 Letter Agreement transferred all rights, title and interest in the designs to

10  Knoll's predecessor in interest and that Knoll is the exclusive holder of title to the designs in the

11  Barcelona Collection.  *Id.*  In addition, and in contrast to Alphaville's assertion in Paragraphs 25

12  and 41(a) of its Answer, the German court found no indication that any agreement was aimed solely

13  at regulating the use of the Mies name.[4]  *Id.*

14       The second court to conclude that the 1965 Letter Agreement was an unambiguous

15  assignment from Mies to Knoll was the Second Circuit Court of Appeals in *Leather Form S.R.L. v.*

16  *Knoll, Inc.*, 205 Fed.Appx. 861 (2d Cir. 2006).  *See* Weaver Decl., Exh. 25.  In that case, an Italian

17  furniture manufacturer sought a declaratory judgment interpreting the 1965 Letter Agreement

18  (which is governed by New York law) because the Italian manufacturer was involved in litigation

19  with Knoll in Germany and did not want the German court to interpret the 1965 Letter Agreement.

20  *Id.*  It wanted a New York court to interpret the 1965 Letter Agreement.  The District Court in New

21  York declined to accept jurisdiction and the Italian manufacturer appealed.  Weaver Decl., Exh. 25.

22  On appeal, the Second Circuit analyzed the 1965 Letter Agreement:

23  _____

24  [3] The German Action was brought by Knoll International Sp.A., a subsidiary of Knoll.  *See* Weaver
    Decl., Exh. 24 at p. 4.  La Nuova Casa was a retailer selling infringing products in its stores in
25  Germany.

26  [4] A federal court may apply collateral estoppel in relation to an issue previously litigated in the
    German legal system.  *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2d
27  Cir. 1971); *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2nd Cir. 1980); *see also*
    *Dictaphone Corp. v. Dictamatic Corp.*, 199 U.S.P.Q. 437 (D. Or. 1978).

28

> Under well-established New York law, where a contract is unambiguous on its face, extrinsic evidence is not admissible to challenge its meaning. *Nichols v. Nichols*, 306 N.Y. 490, 496, 119 N.E.2d 351 (N.Y. 1954).  A "latent ambiguity is where you show the words apply equally to two different things or subject-matters, and then evidence is admissible to show which of them was the thing or subject-matter intended." *Petrie v. Trustees of Hamilton College*, 158 N.Y. 458, 464, 53 N.E. 216 (N.Y. 1899). There is no ambiguity in the 1965 Agreement, latent or otherwise, as to the geographic scope of the transfer of rights. The 1965 Agreement plainly transfers "*all . . . right, title and interest*" in the designs, without geographic limitation; moreover, the 1965 Agreement explicitly states that it "sold, assigned and conveyed . . . exclusive *world wide* rights."

*Leather Form*, 205 Fed. Appx. at 864, fn. 1 (original emphasis retained).  Thus, the Second Circuit determined that the 1965 Letter Agreement unambiguously granted Knoll's predecessor in interest all worldwide right, title and interest to the designs of the Barcelona Collection.

The final element of collateral estoppel, that Alphaville was in privity to the original parties challenging the legal effect of the 1965 Letter Agreement, is also met here.  In this and other circuits, complete identity of parties in the two suits is *not* required and, collateral estoppel may be asserted against a non-party by a party to a prior suit.  *See Trevino s*, 99 F.3d at 923-24 (9th Cir.1996); *In re Schimmels*, 127 F.3d at 881; *see also Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir.1989) (recognizing that issue preclusion defense may in limited instances, against a non-party by a party to a prior suit); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 574 (1st Cir.2003) (recognizing that a defendant may rely upon non-mutual defensive collateral estoppel to bar plaintiffs from re-litigating an issue previously decided in defendant's favor in a suit involving other plaintiffs).  The Ninth Circuit has found that "privity" for the purposes of applying the doctrine of res judicata and collateral estoppel "is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d at 881; *Trevino*, 99 F.3d at 923-24.  The Ninth Circuit has further noted that privity is a "flexible concept" and can be found, among other circumstances, where: (1) the non-party's interests were adequately represented by a party in the original suit; or (2) the interests of the non-party and the party are so closely aligned as to be virtually representative.  *In re Schimmels*, 127 F.3d at 881; *Trevino*, 99 F.3d at 923-24; *see also*

- 14 -

1   *F.T.C. v. Garvey*, 383 F.3d 891, 897 fn 5 (9th Cir.2004).  In the present case, both of these

2   circumstances are applicable to Alphaville.

3          Although Alphaville was not a party to either of the cases discussed above, Alphaville's

4   interests were more than adequately represented by the parties to the two above-referenced actions

5   who sought interpretation of the language of the 1965 Agreement and ultimately raised the identical

6   challenge to Knoll's ownership of the designs in the Barcelona Collection.  The respective courts in

7   the prior actions addressed the same discrete issue of what was the legal effect of the 1965

8   Agreement (i.e. the interpretation of the contract) and the material facts (i.e. the existence and the

9   subject matter of the 1965 Letter Agreement and that Knoll's predecessor was a signatory thereto as

10  the assignee/transferee/licensee) and reached the identical conclusion that the 1965 Agreement

11  conveyed all right, title and interest to the Barcelona Collection to Knoll Associates, Inc., Knoll's

12  predecessor.  Further, because both prior parties had similar reasons as Alphaville to contest the

13  language of the 1965 Agreement and did so vigorously, it cannot be said that Alphaville will be

14  prejudiced in any manner by not having a further opportunity to what is effectively a third bite at

15  the same apple.

16         Likewise, Alphaville's interests are also closely aligned to that of the two parties

17  challenging the effect of the 1965 Agreement as to be virtually representative.  The plaintiff in

18  *Leather Form S.R.L. v. Knoll, Inc.* was similarly situated in that it was defending itself against

19  Knoll's allegations of infringement of the Barcelona Collection designs, and in support of that

20  defense, proactively sought a declaratory judgment that the 1965 Agreement did not grant Knoll all

21  worldwide right, title and interest to the Barcelona Collection.  *See* Weaver Decl., Exh. 25.

22  Similarly, the defendants in the German Action were defending themselves against Knoll's

23  allegations that they infringed the Barcelona Collection designs.  The defendants in the German

24  Action made identical arguments that Alphaville is now making in defense of Knoll's allegations of

25  infringement that the 1965 Agreement "did not lead to an exclusive, irrevocable and everlasting

26  transfer of worldwide rights of use" of the Barcelona Collection designs and further challenged the

27  subsequent chain of title.  *See* Weaver Decl., Exh. 24 at pp. 13-14.

28         Finally, the application of collateral estoppel in this instance is in furtherance of the purpose

- 15 -

1   of the doctrine to promote judicial economy, conserve the resources of Knoll and to protect Knoll

2   from having to litigate the same issue for a third time.  *See Parklane Hosiery Co. v. Shore*, 439 U.S.

3   322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) ("Collateral estoppel, like the related doctrine

4   of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an

5   identical issue with the same party or his privy and of promoting judicial economy by preventing

6   needless litigation.").  Accordingly, the Court should enter partial summary judgment and order

7   that: (a) the 1965 Letter Agreement conveyed all worldwide right, title and interest to the Barcelona

8   Collection to Knoll Associates, Inc., Knoll's predecessor in interest; and (b) Alphaville is

9   collaterally estopped and precluded from alleging and re-litigating a contrary interpretation of the

10  1965 Agreement in support of its Sixth, Seventh and Tenth Affirmative Defenses, as well as in any

11  other manner in this litigation.

12  **VI.   PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE IT IS**
        **INDISPUTABLE AS A MATTER OF LAW THAT KNOLL OWNS ALL RIGHTS,**
13      **TITLE AND INTEREST IN THE BARCELONA COLLECTION DESIGNS.**

14          Even without applying collateral estoppel, as discussed below, it is conclusive as a matter of

15  law that the 1965 Letter Agreement assigned all worldwide right, title, and interest in the Barcelona

16  Collection designs without limitation and the use of Mies' name in connection with the Barcelona

17  Collection to Knoll's predecessor, Knoll Associates, Inc.  Further, it is undisputed that through the

18  1965 Letter Agreement and subsequent good chain of title, at the time Knoll registered its

19  trademarks for the designs of, Knoll owned all rights, title and interest in the Barcelona Collection.

20  As a result, it is indisputable that Knoll owns the designs in the Barcelona Collection and that it did

21  not falsely represent its right to such designs when it registered the trademarks for the Barcelona

22  Collection.  Partial summary judgment is therefore appropriate establishing these facts, and striking

23  Alphaville's Sixth and Seventh Affirmative Defenses to the extent they rely upon allegations to the

24  contrary and its Tenth Affirmative Defense in its entirety.

25          **A.    The Plain Language of the 1965 Letter AgreementTransfers Title from Mies to**
                    **Knoll Associates, Inc.**
26

27          In support of it Sixth, Seventh and Tenth Affirmative Defenses, Alphaville contends that the

28  1965 Letter Agreement purportedly only licensed to Knoll the right to use Mies' name, and did not

- 16 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1  assign or license Knoll the Barcelona Collection designs.  *See* Dkt. No. 27 at ¶¶ 17, 20, 25, 41.  It is

2  well established in the Ninth Circuit that interpretation of a contract is a matter of law.  *United*

3  *States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir.1988) (citation omitted); *accord*

4  *Civic Cent. Drive Apartments Ltd. P'ship v. Sw. Bell Video Services*, 295 F.Supp.2d 1091, 1101

5  (N.D.Cal. 2003) (citing same).  Thus, "[s]ummary judgment is appropriate when the contract terms

6  are clear and unambiguous, even if the parties disagree as to their meaning."  *Id*.  Here, the plain

7  and unambiguous language of the 1965 Agreement makes clear that Alphaville defenses fail as a

8  matter of law.

9       As described above, the 1965 Letter Agreement was a conveyance from Mies to Knoll

10  Associates, Inc. of all of his right, title and interest in and to the designs identified in its Exhibit 1,

11  including a) the Barcelona Chair, b) the Barcelona Stool, c) the Barcelona Table, d) the Barcelona

12  Couch, and e) the Flat Brno Chair, as well as all right, title and interest in and to the exclusive use

13  of the name "Mies van der Rohe" in connection with the world wide sale of furniture embodying

14  the designs.  As indicated by the text of the 1965 Letter Agreement, the scope of the rights to the

15  designs and the rights to the name acquired by Knoll Associates, Inc. were the same.  In other

16  words, while the 1965 Letter Agreement separately identifies the two rights, it conveys exclusive

17  rights to both the designs and the name.

18       The 1965 Letter Agreement between Mies and Knoll Associates, Inc. is an assignment, not a

19  non-exclusive license as alleged by Alphaville.  The plain language  of the 1965 Letter Agreement

20  itself, in paragraph five, provides that Knoll Associates, Inc. would pay Mies $150,000 in exchange

21  for his "sale, assignment and conveyance" to Knoll Associates, Inc. for his right, title and interest to

22  the designs identified in Exhibit 1 to the letter agreement.  Weaver Decl., Exh. 4.

23       The parties also characterized the transaction memorialized by the 1965 Letter Agreement as

24  an "assignment" in paragraph five.  Weaver Decl., Exh. 4.  Had they intended that the transaction

25  was to be a "non-exclusive license," they would have called it a "non-exclusive license" or at least a

26  "license."  As noted, the 1965 Letter Agreement states that it supersedes two prior agreements.  *Id*.

27  In particular, it superseded the 1953 letter agreement and a 1959 amendment to the 1953 letter

28  agreement.

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

1      The 1965 Letter Agreement was a significant departure from the 1953 letter agreement, as

2  amended.  *Compare* Weaver Decl., Exh. 2 *and* Exh. 4.  Pursuant to the 1953 letter agreement, Mies

3  named Knoll Associates, Inc. as the exclusive manufacturer and wholesaler of the Barcelona Chair,

4  Barcelona Stool and Barcelona Table in the United States, Canada, France, Germany and Belgium.

5  *Id*. at Exh. 2.  In return, Knoll Associates, Inc. agreed to pay Mies a percentage of the wholesale

6  price as a royalty.  *Id.*  Furthermore, the 1953 letter agreement did not give Knoll Associates, Inc.

7  the right to sue infringers.  *Id.*  In contrast, under the 1965 Letter Agreement Mies sold Knoll

8  Associates, Inc. all right, title and interest in certain designs for a fixed amount payable over time,

9  and granted Knoll Associates, Inc. the right to take action to protect the rights in those designs.  *Id*.

10 at Exh. 4.  Additionally, Mies made representations that he had not authorized any other parties to

11 sell or manufacture furniture in the form of the designs he sold to Knoll Associates, Inc.  *Id.*

12     Had the parties intended to maintain the relationship established in the 1953 letter

13 agreement, in which Mies granted Knoll Associates, Inc. a license, there would have been no need

14 for them to enter into the significantly different 1965 Letter Agreement.  Instead, they could have

15 maintained their relationship in accordance with the 1953 letter agreement, as amended, and, if

16 necessary, they could have amended that agreement as they did in 1959.  Therefore, in view of the

17 different terms found as between the 1953 letter agreement and the 1965 Letter Agreement, the

18 parties clearly intended each of the two agreements to memorialize different types of relationships,

19 with the 1953 letter agreement embodying a license arrangement and the 1965 Letter Agreement

20 memorializing the assignment of rights in certain designs from Mies to Knoll Associates, Inc.

21     Interpreting the 1965 Letter Agreement between Mies and Knoll Associates, Inc. as a non-

22 exclusive license with respect to the nine referenced designs renders certain provisions of that

23 agreement meaningless.  For example, paragraph two of the 1965 Letter Agreement transferred all

24 right, title, and interest in and to the designs identified in Exhibit 1 to the 1965 Letter Agreement

25 from Mies to Knoll Associates, Inc., and the fact that the agreement mentions that conveyance three

26 separate times confirms that the parties intended such a conveyance.  Weaver Decl., Exh. 4.

27 Reading the 1965 Letter Agreement as a "non-exclusive license" would mean that Mies retained

28 some rights to the designs identified in Exhibit 1, a result contrary to the express intent of the

- 18 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

1   parties.  *See Werbungs Und Commerz Union Anstalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1025

2   (2d Cir. 1991) (where a contract states transfer of "right, title and interest" it "unambiguously

3   establishes that [the party] transferred all of its rights and interest").  *See also W.W.W. Associates,*

4   *Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("when parties set down their agreement in a

5   clear, complete document, their writing should as a rule be enforced according to its terms").

6   Therefore, reading the 1965 Letter Agreement as a "non-exclusive license" would not only be

7   contrary to the plain language of that agreement, but it would also render that transfer in paragraph

8   two meaningless, a result that is to be avoided under New York law, which governs the 1965 letter

9   agreement.  *See AWL Industries, Inc. v. Site Remediation Services Corp.*, 92 F. Supp.2d 132, 136

10   (E.D.N.Y. 2000).  ("A contract should be interpreted to give meaning to all language used").  *See*

11   *also Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (quoting *Garza v. Marine Transport Lines,*

12   *Inc.*, 861 F.2d 23, 27 (2d Cir. 1988).  ("Under New York law an interpretation of a contract that has

13   'the effect of rendering at least one clause superfluous or meaningless … is not preferred and will

14   be avoided if possible.'")

15        Alphaville's assertion that the 1965 Letter Agreement was only a license to use Mies' name

16   is belied by the plain and clear text of the 1965 Letter Agreement.   The 1965 Letter Agreement

17   unambiguously conveyed Mies' rights in the Barcelona Collection to Knoll Associates, Inc.  Thus,

18   there is no basis for Alphaville's allegations in Alphaville's Answer to the Counterclaims whereby

19   Alphaville alleges that any agreement was merely a license and that it did not cover the designs.

20   *See* Dkt. No. 27 at ¶¶ 17, 20, 25, 41 .  Alphaville has not and cannot come forward with any

21   evidence supporting that allegation, particularly in view of its refusal to produce such evidence in

22   response to document requests and the text of the 1965 Letter Agreement.

23        Further, in paragraph 41(d) of its Answer, Alphaville asserts that "Knoll declared falsely that

24   by an agreement dated November 1, 1965, Mies van der Rohe assigned all rights, title and interest

25   in and to the designs of the Barcelona furniture to Knoll Associates, Inc. (Answer of Alphaville to

26   Knoll's Counterclaims, paragraph 41(d)) and that "Knoll alleged, in order to obtain such

27   trademarks, during its trademark registration process that it had a license dated in or about 1965

28   from Mies van der Rohe for the designs."  Dkt. No. 27 at ¶ 41.  As discussed above, and as can be

- 19 -

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO

Case No. 07-CV-05569 MHP

seen from its plain and unambiguous language, the 1965 Letter Agreement conveyed all worldwide rights, title and interest in and to the Barcelona Collection to Knoll's predecessor in interest, Knoll Associates, Inc.

> **B.      It is Undisputed that All Rights, Title, and Interest to the Barcelona Collection Designs Conveyed By The 1965 Agreement Were Passed From Knoll Associates to Defendant Knoll.**

Alphaville's apparent challenge to Knoll's ownership through its Sixth, Seventh and Tenth Affirmative defenses appears to focus exclusively on the 1965 Agreement.  *See* Dkt. No. 27 at ¶¶ 17, 20, 25, 41.  Alphaville does not challenge the subsequent chain of title leading up to Knoll's applications to register the USPTO as described in Section III.C.  Thus, there is no genuine disputed issue of material fact to preclude the Court from ruling as a matter of law that there was at the time Knoll registered the marks for the Barcelona collection and continues to be a good chain of title between Knoll Associates and Defendant Knoll for the Barcelona Collection designs.[5]

In light of the foregoing, the Court should enter partial summary judgment as to the fact that Knoll accurately represented its ownership of the Barcelona Collection to the USPTO at the time Knoll applied to register the trademarks for the Barcelona Collection.  Further, the Court should (a) dismiss and/or strike Alphaville's Sixth and Seventh Affirmative Defenses asserted in response to Knoll's Counterclaims to the extent that they are based upon Knoll allegedly committing fraud on the USPTO when Knoll declared that Mies assigned all rights, title and interest to Knoll Associates, Inc. by the 1965 Letter Agreement, and (b) dismiss and/or strike Alphaville's Tenth Affirmative Defense in its entirety because it wholly and relies upon Knoll allegedly committing fraud on the USPTO by declaring that Mies assigned all rights, title and interest to Knoll Associates, Inc. by the 1965 Letter Agreement.

/ / /

---

[5] Should Alphaville make a belated challenge to the chain of title, the Court should invoke the doctrine of collateral estoppel to bar Alphaville from re-litigating the issue.  Similar to the issue concerning the interpretation of the 1965 Agreement, the issue concerning the chain of title between Knoll Associates and Defendant Knoll was thoroughly litigated in the German Action where the court analyzed and determined that this chain of title was good.  *See* Weaver Decl., Exh. 24 at pp. 21-30.

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO
Case No. 07-CV-05569 MHP

**VII.   PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE ALPHAVILLE HAS NOT PRODUCED ANY EVIDENCE SUPPORTING ITS ALLEGATIONS OR TO REBUT THE FEDERAL PRESUMPTION OF OWNERSHIP.**

Partial summary judgment is appropriate because Alphaville has not produced any evidence supporting the allegation that Knoll does not own all right, title and interest in the Barcelona Collection designs.  A valid federal trademark registration constitutes prima facie evidence that the holder owns the mark, and has the exclusive right to use the mark in commerce in connection with the goods or services specified in the registration.  15 U.S.C. § 1115(a).  In the present case, Knoll has demonstrated that it holds the federal trademark registrations to the Barcelona Collection and has therefore made a prima facie showing that it owns the trademarks to the five designs in the Barcelona Collection. Weaver Decl., ¶¶ 25-30 *and* Exhs. 18-22; Dkt. No. 1 at ¶ 19;10-11; ¶ 36, 9:24-10:1-4; Dkt. No. 27 at ¶ 87, 7:6-7; ¶ 88, 7:10-11; ¶ 89, 7:14-15; ¶ 90, 7:18-19; ¶ 91, 7:22-23. Where the trademark owner presents such a registration, an accused infringer bears the burden of overcoming the presumption that the mark is not owned by the holder of the registration or was otherwise fraudulently obtained.  *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir.2002) ("In trademark terms, the registration is not absolute but is subject to rebuttal.... [T]he plaintiff in an infringement action with a registered mark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise..."); *accord Newsguy, Inc. v. Yomtobian*, 2004 WL 2944051, *3 (N.D.Cal. Dec. 20, 2004) (citing same).  Accordingly, Alphaville has the burden of proof and production to ***disprove*** Knoll's ownership of the trademarks for the Barcelona Collection.

As discussed above, summary judgment is appropriate where the party with the burden of proof on a claim or defense has not and cannot produce evidence to support an element of such a claim or defense.  Under *Celotex*, the moving party may point to the absence of evidence supporting an element of a claim or defense of a non-moving party by argument alone.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument-the absence of evidence to support plaintiff's claim"); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing same); *Federal Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.*, 2005 WL 3325051, *25 (N.D.Cal. Dec 07, 2005)

- 21 -

1    (citing same).  Here, Alphaville has not and cannot produce any admissible evidence rebutting the

2    presumption that Knoll owns all right, title and interest in the Barcelona Collection and therefore

3    Knoll is entitled to partial summary judgment on the issue of ownership of the trademarks to the

4    Barcelona Collection.  *See Newsguy*, 2004 WL 2944051, *3.

5         In particular, other than making bare allegations that Knoll is not in possession now and was

6    not in possession in 2004 of rights to furniture in the Barcelona Collection, Alphaville has not

7    provided ***any*** evidence supporting such allegations, even though requested to do so in discovery.

8    *See, e.g.,* Khachatourian Decl., Exh. C (Request and Response No. 110) and ¶ 5.  The parties agree

9    that Mies originated the designs.  *See, e.g.,* Dkt. No. 14 at ¶¶ 72-79; *see also* Weaver Decl."), ¶¶ 2,

10   25-30; Khachatourian Decl., Exh. A at pp. 97-105.  As discussed in detail above, Knoll has

11   established that in 1965 and by virtue of the 1965 Letter Agreement, Mies granted Knoll's

12   predecessor in interest all worldwide right, including the right to manufacture and sell the various

13   pieces in the Barcelona Collection.  The 1965 Letter Agreement is clear and unambiguous on its

14   face.  The 1965 Letter Agreement was not merely a license and was not limited to only the rights in

15   Mies' name.  Knoll has also established that those rights were transferred to it by establishing the

16   chain of title associated with the subject matter of the 1965 Letter Agreement.

17        Further, Alphaville has not provided any evidence as to its allegation that Knoll falsely

18   declared that Mies assigned all right, title and interest in and to the designs of the Barcelona

19   furniture to Knoll Associates, Inc.  *See, e.g.,* Khachatourian Decl., Exh. C (Request and Response

20   No. 110) and ¶ 5.  Alphaville's allegation is belied by the 1965 Letter Agreement.  The 1965 Letter

21   Agreement is clear on its face that all right, title and interest in the designs were transferred, and has

22   been interpreted as such by at least two courts of competent jurisdiction.

23        In addition, despite being asked in discovery, Alphaville has not provided a scintilla of

24   evidence supporting its allegation that Mies licensed only his name to Knoll's predecessor in

25   interest.  *See, e.g.,* Khachatourian Decl., Exh. C (Request and Response No. 110) and ¶ 5.  This

26   allegation is also belied by the 1965 Letter Agreement as well.

27        Alphaville similarly has not provided any evidence supporting its allegation that in Knoll's

28   application to the United States Patent and Trademark Office for registration of the marks, Knoll

- 22 -

1 alleged that it had a license from Mies. Knoll did not assert it has a license; instead, Knoll

2 maintained it had rights to the designs. *See, e.g.* Weaver Decl., ¶¶ 31-32; Dkt. No. 14 at ¶¶ 80-81,

3 87-92.

4 **VIII.   CONCLUSION**

5        For all of the foregoing reasons, Knoll respectfully requests that the Court enter a partial

6 summary judgment that:

7        (1)     Under the 1965 Letter Agreement, Mies assigned all worldwide right, title, and

8 interest in the designs in the Barcelona Collection without limitation and the use of Mies' name in

9 connection with the Barcelona Collection to Knoll's predecessor, Knoll Associates, Inc.;

10        (2)     Through the 1965 Letter Agreement and subsequent good chain of title, at the time

11 Knoll registered its trademarks for the designs in the Barcelona Collection, Knoll owned all rights,

12 title and interest in those designs;

13        (3)     Knoll accurately represented its ownership of the Barcelona Collection to the

14 USPTO at the time Knoll applied to register the trademarks for the Barcelona Collection;

15        (4)     Alphaville's Sixth and Seventh Affirmative Defenses asserted in response to Knoll's

16 Counterclaims be stricken and/or dismissed to the extent that they rely and/or are based upon Knoll

17 allegedly committing fraud on the USPTO when Knoll declared that Mies assigned all rights, title

18 and interest to Knoll Associates, Inc. by the 1965 Letter Agreement; and

19        (5)     Alphaville's Tenth Affirmative Defenses asserted in response to Knoll's

20 Counterclaims be stricken and/or dismissed in its entirety because it wholly and relies upon Knoll

21 allegedly committing fraud on the USPTO by declaring that Mies assigned all rights, title and

22 interest to Knoll Associates, Inc. by the 1965 Letter Agreement.

23 Dated: November 3, 2008              Respectfully submitted,

24                                      MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

25                                      /s/ Karineh Khachatourian

26                                      By:  KARINEH KHACHATOURIAN
                                            Attorneys for Defendant and Counterclaimant, KNOLL, INC.

27                                      *OF COUNSEL:*
                                        GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
28                                      MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
                                        GOTTLIEB RACKMAN & REISMAN, P.C.

KNOLL'S MTN FOR PARTIAL SUMMARY JUDGMENT; MPA ISO