KARINEH KHACHATOURIAN (SBN 202634)
Email: kkhachatourian@mintz.com
BRYAN J. SINCLAIR (SBN 205885)
Email: bsinclair@mintz.com
JEFFREY M. RATINOFF (SBN 197241)
Email: jratinoff@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
5 Palo Alto Square - 6th Floor
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 251-7700
Facsimile:   (650) 251-7739

GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY  10016-0601
Telephone:  (212) 684-3900
Facsimile:   (212) 684-3999

Attorneys for Defendant and Counterclaimant,
KNOLL, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHAVILLE DESIGN, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>      vs.<br><br>KNOLL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 07-CV-05569 MHP<br><br>**KNOLL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH COURT ORDER RE: TAX RETURNS AND REQUEST FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES INCURRED**<br><br>Date: December 7, 2009<br>Time: 2:00 p.m.<br>Judge: Honorable Marilyn H. Patel<br>Room: Courtroom 15, 18th Floor<br><br>Complaint filed:     November 1, 2007<br>Trial Date:             May 18, 2010 |

KNOLL, INC.'S NOTICE AND MOTION TO COMPEL COMPLIANCE WITH COURT ORDER
RE: TAX RETURNS                                                                                                                    Case No. 07-CV-05569 MHP

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE THAT on **December 7, 2009 at 2:00 p.m.**, or as soon thereafter
3  as counsel may be heard before the Honorable Marilyn H. Patel, Courtroom 15 of the United States
4  District Court of the Northern District of California, located at 450 Golden Gate Avenue, San
5  Francisco, California, Defendant and Counterclaimant Knoll Inc., ("Knoll") will move the Court
6  pursuant to Federal Rules of Civil Procedure 37 and N.D. Civ. Local Rule 37 for an order
7  compelling Plaintiff Alphaville Design, Inc. ("Alphaville") to comply with this Court's September
8  14, 2009 Order requiring Alphaville to produce redacted tax returns and for leave to file a motion for
9  Knoll's reasonable attorneys' fees incurred in seeking Alphaville's compliance with the Court's
10 Order ("the September 14 Order").

11   Knoll makes this Motion on the grounds that: (1) at the September 14, 2009 case
12 management conference and discovery hearing ("CMC") the Court ordered Alphaville to produce
13 portions of its corporate tax returns identified by Knoll's financial expert; (2) Alphaville's corporate
14 tax returns are not privileged; (3) the portions of the returns are highly relevant to Knoll's lost sales
15 and disgorgement damages theories; and (4) Alphaville's tax returns are necessary for Knoll's expert
16 to verify and analyze Alphaville's financial information relating to Alphaville's sales of accused
17 infringing products because the tax returns are verified, submitted under the penalty of perjury, and
18 were created at the time of the sale of the accused infringing products, rather than for the purpose of
19 litigation.  Knoll's request for leave to seek its attorneys fees' incurred is made on the grounds that
20 Alphaville's failure to comply with the Court's September 14 Order is without substantial
21 justification because the grounds for Alphaville's continued non-compliance were already
22 considered and rejected by the Court at the CMC and are contrary to settled case law in the Ninth
23 Circuit.

24   This Motion is based upon this Notice, the Memorandum of Points and Authorities in
25 Support of Motion below, and the Declarations of Jeffrey M. Ratinoff and Suzanne Stuckwisch,
26 submitted herewith, as well as any further materials, evidence or arguments to be presented either at
27 or before the hearing on this Motion, and any other materials or evidence the Court deems proper.
28 / / /

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

## I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This memorandum is submitted by Knoll, Inc. ("Knoll") in support of its motion to compel Plaintiff Alphaville Design, Inc. ("Alphaville") to comply with this Court's order to produce redacted tax returns and its request for leave to file a motion pursuant to N.D. Local Rule 37-3 to obtain sanctions in the form of reasonable attorneys incurred in seeking Alphaville's compliance with the Court's September 14 Order.

## II. FACTS RELEVANT TO THE MOTION

### A. Alphaville Refuses to Produce its Corporate Tax Returns and Comply With the Court's Subsequent Order.

On September 8, 2009 as required by the Court, the parties met and conferred in-person over various discovery disputes, including Alphaville's refusal to produce its tax returns.[1] Declaration of Jeffrey M. Ratinoff in Support of Knoll's Motion to Compel ("Ratinoff Decl."), ¶¶ 3-5. Alphaville insisted that it did not have to produce its corporate tax returns. *Id*.

At the September 14, 2009 case management conference and discovery hearing (the "CMC"), Alphaville again argued that its corporate tax returns were privileged and claimed that specific gross and net sales information for the accused infringing products would be forthcoming. Ratinoff Decl., Exh. A and Dkt. No. 263 at 25:9-26:14, 27:5-17. Knoll countered that the tax returns (1) would provide the most reliable backup to the financial and sales information that Alphaville promised to produce since they were submitted to the IRS; (2) constituted credibility and impeachment evidence of Alphaville's financial information; and (3) would allow Knoll to conduct its own independent analysis of Alphaville's revenues generated from the sales of the accused infringing products versus its overall revenues. *Id*. at 27:20-28:21.

After considering the arguments of the parties, the Court recognized that the tax returns were

---

[1] Knoll first sought production of Alphaville's tax returns in its First Request for Production. Alphaville initially withheld production due, in part, to the need for a confidentiality protective order. Once the Court entered such a protective order on July 16, 2009 (Dkt. No.248), Knoll again demanded the production of the returns.

- 1 -
KNOLL, INC.'S NOTICE AND MOTION TO COMPEL COMPLIANCE WITH COURT ORDER
RE: TAX RETURNS                                              Case No. 07-CV-05569 MHP

relevant and would provide Knoll with impeachment evidence with respect to what Alphaville claimed to be the revenues generated from its sales of the accused infringing products. *Id.* at 26:15-17. In ordering the production of the tax returns, the Court further recognized that certain attached schedules and declarations were relevant "in terms of showing actual sales and other kind of relevant financial information." *Id*. at 26:21-27:4. Prior to Alphaville's production of the returns, however, the Court ordered the parties to

> sit down and meet and confer, and if you need to with your experts, for the purpose of determining what from the company's tax returns may be relevant to this, and everything else gets redacted and from which you can tell whether they're being -- you know, whether the numbers make sense.

*Id*. at 28:22- 29:4. In response to the Court's rulings, counsel for Alphaville stated "I understand, your Honor." *Id*. at 29:5. Knoll therefore expected Alphaville to comply by producing the tax returns once Knoll identified the specific portions of the returns that its expert needed.

### B. Despite Knoll's Efforts to Meet and Confer as Required by the Court, Alphaville Repeatedly Refuses to Comply With the Court's September 14 Order.

On September 29, 2009 (a day after it was ordered to do so), Alphaville produced a spreadsheet consisting of gross profit information for the infringing products which was calculated by multiplying the revenue for each item by the gross profit margin of the company as a whole.[2] Ratinoff Decl., ¶ 7; *see also* Declaration of Suzanne Stuckwisch in Support of Knoll's Motion to Compel ("Stuckwisch Decl."), ¶¶ 3-4.

On October 2, 2009, Knoll informed Alphaville that its consultant could not find support for the numbers in the spreadsheet and could not confirm Alphaville's gross profit calculations without seeing reliable back-up information, such as audited financial statements or tax returns that would verify the company-wide revenue data. Ratinoff Decl., ¶ 8, Exh. C; *see also* Stuckwisch Decl., ¶¶ 3-4. Knoll then identified the following portions from Alphaville's tax returns for the years 2003 to the

---

[2] Due to the sensitive nature of the financial summaries produced by Alphaville and the Court's directives in its Order Approving and Modifying Stipulated Protective Order (Dkt. No. 248-1), Knoll is not filing these summaries with its motion. However, Knoll is prepared to provide the summaries for *in camera* review should the Court find it necessary to review them.

present that Knoll's expert needed to validate and analyze the company revenue figures relied upon by Alphaville:

- Tax Form 1120S: 1a, 1b, 2, 3, 4, 5, 6; and
- Tax Form 1120S: all line items and attachments from Schedule A.

Ratinoff Decl., ¶ 8, Exh. C; *see also* Stuckwisch Decl., ¶¶ 3, 10-13.

Instead of producing these portions of the tax returns as required by the Court's September 14 Order, Alphaville repeated the same arguments it made at the parties' prior meet and confer and before the Court at the CMC.  Ratinoff Decl., ¶ 9; Exh. D.  After the parties reiterated their respective positions through an exchange of emails, on October 7 and 9, 2009, the parties participated in two telephonic meet and confer conferences to further discuss their dispute over the production of the tax returns.  *Id.*, ¶ 10.  During those calls, counsel for Alphaville indicated that they did not believe that the Court ordered Alphaville to produce its tax returns, and that Alphaville could produce additional financial information in lieu of doing so.  *Id.*  Alphaville then represented that it would produce additional financial information, which would purportedly show gross sales and profits specific to the accused infringing products that were not derived as a percentage of Alphaville's company-wide revenue.  *Id.*  Alphaville further claimed that this information was "superior" to that which could be found in Alphaville's tax returns.  *Id.*

On October 12, 2009, Alphaville produced a new spreadsheet that contained figures for the gross revenues and profits generated from the sale of the accused items.  Ratinoff Decl., ¶ 11; Exh. E.  However, the methodology used still relied on Alphaville's annual company-wide revenue and costs that were allocated proportionally in calculating the profits generated from the sales, which could be verified by the previously identified portions of Alphaville' tax returns.  *See* Ratinoff Decl., ¶ 12; Stuckwisch Decl. at ¶¶ 5-8, 10-13.  The updated sales and revenue figures, including the number of accused infringing products sold, were also inconsistent with the previous spreadsheet raising additional concerns regarding Alphaville's methodology and the accuracy of its summaries.  *See* Ratinoff Decl., ¶ 12; Stuckwisch Decl. at ¶ 9.  Consequently, Knoll requested that Alphaville produce the previously identified portions of its corporate tax returns so that Knoll could conduct its own analysis.  *See* Ratinoff Decl., ¶ 13.  Alphaville again refused to comply with the Court's

1  September 14 Order, arguing that the information provided "should render tax return data
2  irrelevant." *Id*.  After the parties exchanged several more emails on the issue, it was clear that
3  Alphaville would not comply with the Court's September 14 Order without further judicial
4  intervention.[3]  *Id*.

## III.    ARGUMENT

### A.    Alphaville Must Comply With the Court's September 14 Order.

The Court has already considered Alphaville's repetitive arguments based on privilege and relevancy.  After considering such arguments, the Court made clear at the CMC that it considered portions of Alphaville's tax returns ***to be subject to discovery*** and ruled that Knoll is entitled to those portions of Alphaville's tax returns identified by Knoll's expert as being necessary to evaluate Alphaville's financial and sales information.  *See* Ratinoff Decl., Exh. A and Dkt. No. 263 at 26:15-17, 26:21-27:4, 28:22- 29:4.  Since Knoll's expert identified those portions ***as required by the Court*** and Alphaville has not provided anything from another expert to rebut this identification, Alphaville's continued refusal to produce these portions of its tax returns is without substantial justification.  The fact that Alphaville is willing to disobey the Court's September 14 Order raises the inference that the returns contain damaging information and that Alphaville may have artificially deflated or altered its sales figures in relation to the accused infringing products.[4]  As such, the Court should require Alphaville to immediately comply with the September 14 Order and produce the portions of its tax returns identified by Knoll's expert for the years 2003 to the present.

---

[3] During this dispute, Knoll discovered that Alphaville had produced some personal tax returns and a portion of Alphaville's corporate tax returns in its August 2009 document production.  Ratinoff Decl., ¶ 16.  Knoll promptly sequestered the returns and notified Alphaville that no one beyond outside counsel of record had seen them.  *Id.*, ¶ 17.  Per Alphaville's request, Knoll promptly deleted the personal tax returns.  *Id*.  With respect to Alphaville's corporate tax returns, Knoll invoked its right under FRCP 26(b)(5)(B) to sequester them pending a resolution of the dispute.  *Id*.  In light of the production, Knoll again asked Alphaville to reconsider its position, and Alphaville once again refused.  *Id.*

[4] Knoll has also just learned that Alphaville maintains annual profit and loss statements, balance sheets, income statements, and sales reports, in the ordinary course of business, which have not yet been produced.  Ratinoff Decl., ¶ 15. Despite the existence of these documents and the corporate tax returns, Alphaville continues to prevent Knoll from obtaining ***any*** financial records that were created in the ordinary course of business.  *Id.*

### B. The Court Should Again Reject Alphaville's Arguments Underlying Its Refusal to Produce the Requested Portions of the Tax Returns.

Alphaville's continued resistance to producing its tax returns on the grounds of privilege and relevancy is without substantial justification. The United States Supreme Court and the Ninth Circuit have recognized that tax returns do not enjoy an absolute privilege from discovery. *See St. Regis Paper Co. v. United States*, 368 U.S. 208, 219, 82 S.Ct. 289, 295-296, 7 L.Ed.2d 240 (1961); *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F2d 225, 229 (9th Cir. 1975). In making such a determination, courts will look at the relevancy of the tax returns and whether there is a compelling need for the returns.

Courts in the Ninth Circuit have found a compelling need and ordered the production of tax returns where they are necessary to evaluate a party's revenues or income when they are at issue in a case. *See, e.g., Young v. U.S.*, 149 F.R.D. 199, 204-205 (S.D.Cal. 1993) (requiring production of tax returns where necessary to evaluate plaintiff's claim for lost wages and to verify or contradict assertions made by plaintiff regarding her income). More importantly, courts in this Circuit have held that a trademark plaintiff is entitled to a defendant's tax returns to determine its damages suffered in relation to the defendant's acts of trademark infringement and unfair competition under the Lanham Act. *See, e.g., Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1055-57 (S.D.Cal. 1999) (recognizing that financial information in defendant's tax returns was, at minimum, relevant to establishing defendants' profits generated from its infringement of plaintiff's trademarks, which are subject to disgorgement pursuant to 15 U.S.C. § 1117(a)).

Similar to the plaintiff in *Playboy Enterprises*, Knoll requires Alphaville's tax returns to determine the extent that Alphaville has wrongfully profited from the sales of products alleged to infringe upon Knoll's Barcelona Collection trademarks. Similarly, Knoll's need for this information in this litigation is compelling for several reasons.

First, the profit and revenue summaries provided by Alphaville were created for the express purpose of this litigation and should therefore be subject to intense scrutiny and independent analysis. Since Alphaville has yet to produce all of the raw data used to generate these numbers or otherwise produce the verified back-up for its company-wide numbers, Knoll has no way to

- 5 -
KNOLL, INC.'S NOTICE AND MOTION TO COMPEL COMPLIANCE WITH COURT ORDER
RE: TAX RETURNS                                                      Case No. 07-CV-05569 MHP

independently analyze and verify the accuracy of these summaries. *See* Stuckwisch Decl. at ¶¶ 3-8.

Second, the itemized spreadsheets Alphaville produced do not obviate the need for the financial information contained in Alphaville's tax returns because the methodology in creating these summaries uses the very information contained in these returns. For example, in the summary produced on September 29, 2009, Alphaville admits that the profit was calculated by multiplying the revenue for each category of accused items sold ***by the gross profit margin of the company as a whole***. *See* Ratinoff Decl., Exh. B; *see also* Stuckwisch Decl., ¶¶ 3-4. In several of the financial summaries and spreadsheets produced on October 12, 2009, Alphaville still relies upon its annual company-wide gross revenue and costs of goods sold in calculating the profits generated from the sales of the individual accused products. *See* Stuckwisch Decl., ¶¶ 5-8; *see also* Ratinoff Decl., ¶ 12. As a result, Knoll still needs a reliable source to verify Alphaville's yearly company-wide gross revenue and costs of goods sold and the methodology used by Alphaville to derive its itemized profits from that financial information. *See* Stuckwisch Decl., ¶¶ 11-13. Because Alphaville is not a publicly traded company that does not appear to maintain independently audited financial statements, the most reliable source for this information is Alphaville's tax returns. *Id.*

Third, Alphaville has not provided a single substantive reason from an independent expert as to why this information is ***not*** necessary to vet the summaries it has produced. Instead, Alphaville has merely put forth vague and generalized attorney arguments which were already considered and overruled by the Court. Conversely, Knoll's expert has expressed an uncontested need for the tax returns to test Alphaville's reported revenue and costs for the accused products against the total revenue and cost data for reasonableness and other analytic purposes, which should be supported by reliable financial documents. Stuckwisch Decl., ¶ 10.

Finally, the most recent summaries provided by Alphaville on October 12, 2009 are inconsistent with the original spreadsheet produced on September 29, 2009. For example, in the September 29 spreadsheet, Alphaville reports that the number of accused goods sold in 2003 is approximately ***fifty percent (50%) higher*** than the number given for the same category and year in the spreadsheet provided by Alphaville on October 12, 2009. Stuckwisch Decl., ¶ 9. In light of this significant discrepancy, it is imperative that Knoll has access to the portions of the tax returns

- 6 -

identified by its expert to determine the extent to which Alphaville profited from the illicit sales of the accused infringing products.  *See id.* at ¶¶ 11-13.

### C. The Court Should Grant Knoll Leave to Seek Its Reasonable Attorneys' Fees Incurred in Obtaining Alphaville's Compliance With the Court's Order.

As discussed above, Knoll has gone to great lengths to obtain Alphaville's compliance with the September 14 Order through meet and confer.  In doing so, Knoll incurred significant costs in the form of attorneys' fees.  Knoll has also incurred attorneys' fees and expert fees in preparing this motion.  Since the record makes clear that Alphaville's non-compliance with the Court's September 14 Order was willful and without substantial justification, Knoll respectfully requests that the Court grant it leave to file a separate motion pursuant to F.R.Civ.P. 37 and N.D. Civ. L.R. 37-3, which will enumerate these costs and request that Alphaville subsequently reimburse Knoll.

## IV. CONCLUSION

For the foregoing reasons, Knoll respectfully requests that the Court grant Knoll's Motion in its entirety.

Dated:  October 23, 2009

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

/s/ Jeffrey M. Ratinoff
By:   JEFFREY M. RATINOFF
        Attorneys for Defendant and Counterclaimant,
        KNOLL, INC.

*OF COUNSEL:*
GEORGE GOTTLIEB (ADMITTED *PRO HAC VICE*)
Email: ggottlieb@grr.com
MARC P. MISTHAL (ADMITTED *PRO HAC VICE*)
Email: mmisthal@grr.com
GOTTLIEB RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, NY  10016-0601
Telephone:  (212) 684-3900
Facsimile:   (212) 684-3999

4741674v.4